APP — 8

IN THE UNITED STATES COURT
OF APPEALS
FOR THE FIFTH CIRCUIT


UNITED STATES OF AMERICA

vs.

SHERMAN LAMONT FIELDS

CIVIL No. W-09-CV-009

CRIMINAL No. W-01-CR-164

* THIS IS A CAPITAL CASE
(DEATH PENALTY)


SHERMAN FIELD'S POST CONVICTION MOTION FOR
DISCOVERY PRODUCTION; AND INSPECTION OF EVIDENCE.


TO THE HONORABLE JUDGE
OF SAID COURT:


SHERMAN LAMONT FIELDS, "Defendant" herein, pursuant to the authority of the Federal Rules of Criminal Procedure, files this motion and would show the following:

1). In April 2002, following a March 2002 Indictment for Capital Murder Fields' Attorney filed a Motion for Discovery.

2). In April 2002, the government, by and through the United States Attorney for the Western District of Texas responded to the defense Motion stating that they would provide Open file discovery to defense Counsel to the extent that it will comply with Rule 16, Federal Rules of Criminal Procedure, the Jencks Act (18 U.S.C. 3500), and the dictates of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

3). During trial in January / February 2004 several issues were disclosed and/or touched upon that triggered Brady v. Maryland's duty to disclose pursuant to Rule 16, in that the government either purposely, knowingly, Intentionally with malice aforethought, withheld, hid and/or destroyed evidence that would have (1) Rebutted what's alleged to be the merits of the government(s) case; (2) would have verified Fields' argument that the governments attorney(s) were and did suborn perjury and that their "witnesses" were and did commit perjury in their pursuit to frame Fields

1

for the crime: And (3) The evidence would have undoubtedly changed the outcome of the trial.

4). The government purposefully, knowingly and Intentionally, with malice aforethought withheld, hid and/or destroyed Forensic photographs that would have (1) Rebutted what's alleged to be the merits of the government(s) case; (2) Would have verified Fields' argument that the government Attorney(s) did suborn perjury and that their "witnesses" did commit perjury in their pursuit to frame Fields for the crime: And (3) Disclosure of the photographs would have undoubtedly changed the outcome of the trial.

The evidence is as follows: Fields pled not guilty to the governments superseding indictment and the charges alleged within said indictment and maintained his innocence All the way throughout the investigative process, the trial, and post convictional. Fields has always maintained that he didn't kill the victim, Suncerey "Shining Star" Coleman, A romantic rival, Shalaykea "Lakie" Scroggins killed her, along with an accomplice, Edward Lee "Treyboy" Outley.

On the night of the murder Sherman Fields was driving a two door Red Pontiac Grand Am, bearing Texas LP# FO2KRT. Shalaykea "Lakie" Scroggins said that Fields confessed to her that he killed Coleman and got her blood in the car that he was driving. And when she and Fields arrived at a motel room later that night she witnessed blood on Fields' clothes and shoes. Also crime scene investigators testified that the crime scene was riddled with one or two inch long very sharp thorns that would have undoubtedly cut whomever drug the victim's body to where it was found. Yet Fields' blood nor the victim's blood was found in the Grand Am.

On the other end of the spectrum Shalaykea "Lakie" Scroggins and her accomplice, Edward Lee "Treyboy" Outley gave several different alibi(s) for the time of the murder; Shalaykea "Lakie" Scroggins and Edward Lee "Treyboy" Outley gave several different versions of how, when and where Fields supposedly "confessed" to them; Four months prior to the murder Shalaykea "Lakie" Scroggins wrote a letter threatening to kill the victim; The day before the murder the victim, Suncerey "Shining Star" Coleman and the defendant, Sherman Lamont Fields called the phone company together and got Shalaykea "Lakie" Scroggins phone cut off after Scroggins got a phone cut on in Fields' name and it was alleged that Scroggins was calling Coleman threatening her; The evidence also proves that Shalaykea "Lakie" Scroggins and Edward Lee "Treyboy" Outley was recruiting inmates to lie and say that

2

Fields confessed to them; But most importantly, Shalayhea "Lakie" Scroggins And Edward Lee "Treyboy" Outley was in a GOLD Jaguar on the night of the murder, but in order to thwart investigators from finding their blood in the vehicle where the thorns at the crime scene undoubtedly cut them, intertwined with the blood from the victims wounds. Outley and Scroggins conspired to hide the Jaguar, telling investigators that the Jaguar was BLUE.

The government attorney(s) knew that Scroggins and Outley were lying and that they were the real culprit(s) of the crime, but they'd adopted an "I'll show you" attitude towards Fields which led to the government attorney(s) aiding Scroggins and Outley's conspiracy to frame Fields. First the government attorney(s) argued to the Jury that Outley and Scroggins was indeed in a BLUE Jaguar that the government attorney(s) knew didn't even exist at the time of the murder; The government attorney(s) knew all along that Scroggins and Outley were conspiring to hide the Jaguar and the Jaguar was GOLD like Fields said that it was because three months prior to trial the government had located the owner of the Jaguar whom told them that the car is indeed GOLD.

But to further circumvent Fields' defense the government attorney(s) continued to aid Outley and Scroggins' conspiracy by defrauding the Jury, telling them that the reason they didn't find blood in the Grand Am that Fields was driving on the night of the murder is because "Fields could have switched cars" (although that isn't the case and there is no evidence of that); The government further alleged that Fields could have Just put his feet on the floor mats and then threw the mats away (although that isn't the case and there is no evidence of that). And their own forensic expert whom Fields had to call to the stand because the government refused to do so, admitted that the floor mats were indeed in the car; So the government attorney(s), in desperation chose to commit the criminal act of, suborning perjury, the government attorney(s) called Sheriff detective Morris "Bubba" Colyer to the witness stand to lie and say that the Grand Am that Fields was driving on the night of the murder had been detailed; This was a blatant, intentional, deliberate and purposeful fabrication derived from criminal intent

3

with malice aforethought. First and foremost there is no way that the car was detailed on November 6, 2001, the night of the murder, and it was still "clean" on November 14, 2001, when investigators located and took possession of the Grand Am, because (1) The owner of the Grand Am was a drug addict that rented his car out daily to different people for crack cocaine; And (2) The owner of the car had a dirty Job, he worked construction, and the car was located at a construction site. (Second) The forensic lab report shows that the car wasn't "clean" like Detective Colyer misled the Jury to believe; First the car was tested for blood; Then the car was fingerprinted, A total of 15 print cards were obtained; Trace lifts were done; They vacuumed the car retrieving a canister of Trace Evidence; They took carpet from the floor board and the trunk; They took dirt from the fender wells; And 35 mm photographs were taken of the inside and outside of the vehicle; And (Third) The governments forensic expert admitted that even if the car had been "detailed" the forensic testing still would have found blood in the Grand Am from the victim and from Fields where the thorns would have cut him if he was the one that killed Coleman.

5). The 35 mm film that the government is supposed to have in their possession and which is the subject of this Discovery Motion would have undoubtedly changed the course of the trial if the government attorney(s) would have honored the pre trial Discovery motion, pursuant to Rule 16, thus allowing the defense to not only show that the Grand Am was not "clean" and/or "detailed", but it would have allowed the defense to prove to the Jury that the government investigators were committing perjury, and the government attorney(s) were suborning that criminal act.

In the interest of Justice Fields asks that this Court order and/or propel the prosecution to relinquish the aforementioned photos pursuant to <u>Brady v. Maryland.</u>

4

6). The government purposefully, knowingly and Intentionally, with malice aforethought withheld, hid and/or destroyed at least one statement from inmate Jerry Keith Reed that could have possibly (1) Rebutted what's alleged to be the merits of the government(s) case; (2) would have verified Fields' argument that the government Attorney(s) did suborn perjury and that their "witnesses" did commit perjury in their pursuit to frame Fields for the crime; and (3) Disclosure of the statement could have possibly changed the outcome of the trial.

The evidence is as follows: Another inmate, Christian Chae Walker, whom is Edward Lee "Treyboy" Outley's friend and an associate of Sherman Lamont Fields wrote two statements, one on December 5, 2001 and another on December 6, 2001, both stating that Fields didn't confess to him, but he "think" Fields did something to the victim. Walker is a close family friend of the victim.

On February 26, 2002 Walker testified in the Grand Jury, again telling them that Fields never confessed to him, but he "think" Fields did something to the victim. Walker also informed the Grand Jurors that he'd Just had a conversation with Outley "downstairs in the holding tank". And Outley told him that he'd given Fields the alleged murder weapon.

A letter from Outley to Walker verifies that Outley manipulated Walker. In the letter Outley tells Walker to say that he (Walker) gave Outley a gun to give to Fields. Walker was also told by Outley to tell the government to drop his (Walker's) charges, or make a deal for the "information".

Walker, whom has a very low IQ of about 60 lied and said that he did indeed give Outley the alleged murder weapon, but he gave it to Outley because Outley said he needed some protection." However, Walker didn't even know how the gun looked or what kind of gun it was until he was coached by Sheriff Detective Morris "Bubba" Colyer.

In Any event, in October 2002 the government filed a 5K1 motion on Walker's behalf stating that his testimony and/or statements are accurate, honest and complete.

5

That same month, October 2002, after Fields wrote Shalaykea "Lakie" Scroggins telling her not to write him anymore, Scroggins wrote Fields an angry self-serving letter and told Fields that she was writing Christian "Chae" Walker in regards to the case.

While Scroggins and Walker were corresponding in regards to the case, Walker had a cell mate named Jerry Keith Reed. In January 2003 Reed was transferred to Fort Worth Federal Prison and put in segregation where Sherman Lamont Fields was being housed. Reed supposedly contacted the government alleging that Fields confessed to him. Up under circumstances that are virtually impossible. Because Fields was an escape risk the officers had to sign the observation sheet on his door every 15-minutes. Also this isn't a segregation unit where the officer's walk through periodically, in this unit the officer's desk sits in the middle of the hallway between Fields' cell and the cell where Reed claim that he was and at all times, day and night there are a minimum of three officers present. There was also 60 to 80 other inmates present as well in the surrounding cells. yet no other inmate and/or no other officer heard this alleged confession but Reed? That's impossible!

When Jerry Keith Reed was called to the witness stand to testify in January 2004 there was no way to impeach his testimony, there was no statement(s), no Grand Jury testimony, no 302 form, rough notes, nothing, and because Fields had no ideal who he was or what he was going to say Reed took on the form of a "surprise" witness. However, in closing arguments the government attorney said to the Jury: (Quote) "I want you to think about something else. How did Jerry Keith Reed who says that he met Sherman Fields up in Fort Worth in January of 03, how did he on March 10th of '03, when he talked to investigators, how did he know what

Sherman Fields was going to say on January the 26th of 2004, Monday morning when he came in here and in his opening statement he said Lakie and Treyboy killed that girl, not me. How did Jerry Keith Reed know that last March? Unless he talked to the defendant."

It's obvious that Jerry Keith Reed got his testimony from his cell mate, Christian Chae Walker when Walker was corresponding with Shalaykea "Lakie" Scroggins. However, Jerry Reed's March 10, 2003 statement that the government referenced in closing arguments is the subject of this Discovery Motion. If the government attorney(s) would have honored the pre trial Discovery motion, pursuant to Rule 16, the statement from Jerry Reed could have possibly been used to Rebut and/or impeach Reed's perjured testimony.

In the interest of Justice Fields asks that this Court order and/or propel the prosecution to relinquish the aforementioned statement pursuant to <u>Brady v. Maryland.</u>

7). The government purposefully, knowingly and Intentionally, with malice aforethought withheld, hid and/or destroyed at least one statement from their "Star witness", and the woman whom Fields said really committed the murder, Shalaykea "Lakie" Scroggins that could have possibly (1) Rebutted what's alleged to be the merits of the government(s) case: (2) would have verified Fields' argument that the government attorney(s) did Suborn perjury and that their "witnesses" did commit perjury in their pursuit to frame Fields for the crime; and (3) Disclosure of the statement could have possibly changed the outcome of the trial.

7

The evidence is as follows: Shalaykea "Lakie" Scroggins emerged as the governments "Star witness". However Sherman Lamont Fields said that she was the one whom actually committed the crime. Scroggins wrote a letter four months prior to the murder stating that she would kill the victim; Scroggins and her accomplice. Edward Lee "Treyboy" Outley conspired to hide the car that they were in on the night of the murder; Outley and Scroggins went around recruiting inmates to lie and say that Fields confessed to them; Outley and Scroggins gave several different alibi(s) for the time of the murder, and they both gave several different conflicting statements as to how, when and where Fields supposedly confessed to them.

Shalaykea "Lakie" Scroggins was thought to have given three statements, two handwritten statements dated November 21, 2001, and November 26, 2001, and one statement to the Grand Jury, taken on February 26, 2002, but in the self-serving letter that Scroggins wrote stating that she's writing, Christian Chae Walker, she wrote: (Quote) "I signed statement(s) on you the 2nd day I was here!" Shalaykea Scroggins statement(s) that she referenced in that letter is the subject of this Discovery Motion.

The evidence proves that Shalaykea "Lakie" Scroggins was arrested on November 15, 2001 for Harboring a fugitive and Aiding and Abetting, following Edward Lee "Treyboy" Outley's arrest on November 13, 2001 for felon in possession of a firearm. Up until Scroggins and Outley were arrested no one said that Fields killed Coleman.

Fields said that Outley and Scroggins were telling inmates crucial details about the murder so they could use that information to make a deal with the government. While Fields was still out on escape status every inmate in the cell with Scroggins went to Jail staff and told them that Scroggins described everything from the crime scene to what color bra the victim was wearing; Tanesha Hilliard, the victim's cousin, whom also have a child with Scroggins brother said that Scroggins also told her details about the murder. However, at trial, Scroggins committed perjury, claiming that she never told

8

anyone nothing about the murder, but police and prosecuters; The guy that Scroggins started writing in regards to the murder, Christian Chase Walker, when he was asked did he and Edward Lee "Treybory" Outley ever talk in regards to the murder, he too lied and said no, despite the fact that there's a letter from Outley to Walker, and Walker had previously admitted in the Grand Jury that he and Outley talked "downstairs in the holding tank". The missing statement(s) could possibly shed more light on this issue and other issues; Scroggins claimed in the Grand Jury that she knew Coleman was missing on November 7, 2001 because "it was on the newsstand". however it didn't come out in the paper until November 9, 2001, and the only way she could have known that Coleman was missing during that time frame is if Scroggins killed Coleman; That missing statement(s) could possibly shed more light on this issue; Scroggins claimed that Fields called her on November 15, 2001 and told her details about the murder, Fields got her phone records to show that no such call exist and that she was lying, and after two years Scroggins changed her story and said that the call was made to her sister's house. This was mid-trial so it was too late to get her sister's phone records. However, the government knew that she was lying, but instead of correcting the false testimony the government attorney(s) added to the deception, telling the Jury in closing arguments that "phone records only show calls to and from cell phones", despite the fact that the government had just introduced phone records showing Fields' calls to Coleman from jail, both land lines; the missing statement(s) could possibly shed more light on this issue.

9

If the government attorney(s) would have honored the pre trial Discovery motion, pursuant to Rule 16, the Statement(s) from Shalaykea "Lakie" Scroggins could have possibly been used to Rebut and/or impeach Scroggins perjured testimony.

In the interest of Justice Fields asks that this Court order and/or propel the presecution to relinquish the aforementioned statement(s) pursuant to <u>Brady v. Maryland</u>.

8). The government purposefully, knowingly and intentionally, with malice aforethought withheld and/or hid District Judge Walter S. Smith Jr.'s relationship with Attorney, William [Bill] Johnston, whom was the attorney for the victim's family. because the government Attorney(s) knew that an "outside" Judge would have thwarted the prosecutions conspiracy to use the Death Penalty as a murder weapon, and it would have undoubtedly changed the outcome of the trial.

The Evidence is as follows: Judge Walter S. Smith, Jr., impeded Fields' defense, gave the government Attorney(s) every advantage, and improperly vouched for the prosecution; (i.e) When Fields attempted to impeach one of Scroggins atibi's for the time of the murder, Judge Smith ruled that it wasn't relevant; Right in the middle of Fields' cross examination of Scroggins, Judge Smith stopped Fields right in front of the Jury and allowed the government to Elicit some false and damaging testimony from Scroggins; When Judge Smith admonished Fields it was always in front of the Jury, when he admonished the prosecution it was in a bench conference; When the prosecutor stood up and said that Fields admitted to the crime, right in front of the Jury, Judge Smith allowed for a bench conference where he ruled that there was no confession, but he didn't give a currative instruction, which left the Jury with the impression that Fields had confessed to the crime; Judge Smith forced Fields to proceed pro se even though Fields told him that he (Fields) couldn't do it because he had no knowledge of the law and he would be hindered by stage fright.

Judge Smith said that it would be a travesty of Justice to appoint new attorney(s) at that stage and expect them to step into the courtroom without having adequate time to prepare themselves and understand the evidence, but he made Fields represent himself up under the same circumstances. his attorney, Rob Swanston brought Fields a huge box of "evidence" that Saturday about 5pm, and Fields was expected to "prepare", understand the "evidence", understand the rules of evidence and the rules of the court and be in court less than 48 hours later, giving an opening statement with little to no sleep, while wearing a stun belt that kept his mind occupied with thoughts of being shocked; Judge Smith allowed the government to pick a bias pro prosecution jury; Judge Smith allowed the prosecution to defraud the jury and the court; And Judge Smith told one juror that the prosecutors would dismiss the case if they thought Fields' rights weren't being protected, improperly vouching for the prosecution, when in fact the prosecution violated Fields' rights and committed criminal acts against him again and again.

The evidence proves that Judge Smith's repeated abuse of discretions is due to Judge Smith's refusal to recuse and/or disqualify himself while knowing that he was bias. Judge Smith's longstanding relationship/friendship with the attorney for the victim's family, William "Bill" Johnston was a major contributing factor in most, if not all of the erroneous decisions that Judge Smith made.

Prior to Fields' case, in Andrade v. Chojnacki, 338 F.3d 448 (July 14, 2003) Judge Smith's relationship with Johnston was again at the forefront when Smith became upset that Johnston, whom was a prosecutor then, was being investigated by Special Counsel for allegedly withholding evidence.

Fields contends that Judge Smith's abuse of discretion is due to the fact that he wanted to appease his friend,

11

William "Bill" Johnston, this made it easy for the prosecution to defraud the Court and the Jury.

Judge Smith's relationship / friendship with the victim's family Attorney is the subject of this Discovery Motion. If this relationship / friendship would have been disclosed the defense could have used said information to recuse and / or disqualify Judge Smith, this would have resulted in an unbias Judge being appointed. And a fair trial would have undoubtedly changed the course of the trial.

In the interest of Justice Fields asks that this Court Order and / or propel Judge Smith to give an in depth statement in regards to his relationship with Attorney, William "Bill" Johnston.

9). The government purposefully, Knowingly and Intentionally, with malice aforethought withheld, hid and / or destroyed letter(s) that would have (1) Rebutted what's alleged to be the merits of the government(s) case; (2) Would have verified Fields' argument that the government Attorney(s) did suborn perjury and that their "witnesses" did commit perjury in their pursuit to frame Fields for the crime; The missing letters would have proved that the prosecution purposefully, Knowingly and intentionally, with malice aforethought defrauded the Court and the Jury; And (3) Disclosure of the letters would have undoubtedly changed the outcome of the trial.

The evidence is as follows: Fields was arrested on November 24, 2001 following Coleman's murder and placed in segregation in the McLennan County Jail in Waco, Texas, Highway 6; A note was immediately attached to his cell door stating that all Fields mail, incoming and outgoing goes to Sergeant Jimmy Stone. Outley and Scroggins was up under the same mail restrictions.

12

At trial the government introduced a hand full of letters post escape and a hand full of letters pre escape. Fields argued that the government were withholding letters and the letters that the government introduced was subject to misinterpretation without the other letters to put them into context. Then Fields got Scroggins to admit that she herself had given the prosecution "At least fifty letters"; It's those "50 or more letters" referenced in Scroggins trial testimony and the abundance of letters that Sergeant Jimmy Stone copied from Fields, Outley and Scroggins that is the subject of this Discovery Motion. If the government Attorney(s) would have honored the pre trial Discovery Motion, pursuant to Rule 16, the missing letters would have been used to put the letters that the government introduced to the Jury into their proper context, and further used to rebut and/or impeach Scroggins and Outley's perjured testimony and show the Court and the Jury that Scroggins and Outley did in fact murder Coleman and framed Fields for it.

In the interest of Justice Fields asks that this Court order and/or propel the prosecution to relinquish the afore-mentioned letter(s) pursuant to <u>Brady v. Maryland</u>.

10). The government purposefully, knowingly and Intentionally, with malice aforethought withheld, hid and/or destroyed evidence that would have (1) Rebutted what's alleged to be the merits of the government(s) case; (2) would have verified Fields' argument that the government attorney's did suborn perjury and that their "witnesses" did commit perjury in their pursuit to frame Fields for the crime; (3) The missing evidence would have proved that the prosecution purposefully, knowingly and intentionally, with malice aforethought not only defrauded the

13

Court And the Jury, but also Engaged in A criminal conspiracy to use the Death Penalty As A murder weapon And murder Sherman Lamont Fields via lethal injection; And (4) Disclosure of the Evidence would have undoubtedly changed the outcome of the trial.

The Evidence is As follows: Immediately following Fields Arrest Fields was put on Notice that the prosecution was "Seeking Jailhouse testimony"; Months later Shalaykea "Lakie" Scroggins told Edward Lee "Treyboy" Outley that the prosecution wants one of them to Say that "they were with Fields; Given the allegations this could only mean that the prosecution wanted Scroggins or Outley to lie And Say that Fields Killed Coleman And they witnessed it; And then two years After Fields was put on Notice that the prosecution was "Seeking Jailhouse testimony" the government went to trial with Nothing but "Jailhouse testimony"; Fields vehemently denied confessing to these crooks. Some of them he didn't Know And had Never Seen before until they got up on the witness Stand And lied on him. Another inmate, Chance Alexander was Also due to testify Against Fields. but At the last minute changed his mind And Admitted that he don't Know Fields, but he was willing to lie for the prosecution because he was promised that he would be let out of Jail. At that point the government Attacked Chance Alexander for previously lying About his Name when he was once Arrested years Earlier. But they Already Knew that Chance Alexander had lied About his Name when they were going to use him to lie on Fields And it wasn't An issue for them then. In Addition to that Several

14

of the governments other inmate "witnesses" that they used to lie on. Fields had also lied about their name and it wasn't an issue. The fact that the prosecution went "seeking Jailhouse testimony," tried to convince Outley and/or Scroggins to lie and say that they witnessed Fields murder Coleman, and the fact that the prosecution wanted Chance Alexander to lie and say that Fields confessed to him even though Fields doesn't even know Chance Alexander and vice versa. this is the subject of this Discovery Motion. If the government(s) Attorney's would have refrained from committing these unethical and criminal acts, and in the alternative honored the pre trial Discovery Motion, pursuant to Rule 16. the Evidence could have been used to prove that the government manufactured and fabricated the "Evidence" against Fields and defrauded both the Court and the Jury.

In the interest of Justice Fields asks this Court to Order and/or propel the prosecution to relinquish any and all evidence pertaining to their inmate "witnesses" pursuant to <u>Brady v. Maryland.</u>

11). The government purposefully, knowingly and intentionally, with malice aforethought withheld, hid and/or destroyed evidence that would have (1) rebutted what's alleged to be the merits of the government(s) case; (2) would have verified Fields' argument that the government Attorney(s) did suborn perjury and that their "witnesses" did commit perjury in their pursuit to frame Fields for the crime; The missing evidence would prove that the prosecution purposefully, knowingly and intentionally, with malice aforethought not only defrauded the Court and the Jury. but also engaged in a criminal conspiracy to use the Death Penalty as a murder weapon and murder Sherman Lamont Fields via lethal injection. And (4) Disclosure of the

15

evidence would have undoubtedly changed the outcome of the trial.

The evidence is as follows: From the very beginning it was the police and prosecutors intention to "make Fields guilty" of the crime(s) alleged in the indictment:

(1). The Grand Jury had serious doubt about Shalaykea Scroggins, the government(s) Star witness testimony, they knew she was lying and voiced their skepticism in regards to it.

In their effort to "make Fields guilty" of Coleman's murder the prosecution brought in Sheriff Detective Johnny Spillman and U.S. Marshal Chris Casson to lie and defraud the Grand Jury into returning an indictment. Detective Spillman told the Grand Jury that "Fields became "angry" when he came into contact with the victim on the night of the murder, and U.S. Marshal Casson told the Grand Jury that Tanesha Hilliard, the victim's cousin, whom was with the victim and Fields prior to the murder said that "Fields became "Irate" when he came into contact with the victim, yet both Detective Spillman and U.S. Marshal Chris Casson knew and understood that they were deliberately, knowingly and intentionally with malice aforethought committing the criminal act of perjury and defrauding the Grand Jury, and the prosecutor, Greg Gloff knew and understood that he was deliberately, knowingly and intentionally with malice aforethought committing a criminal act by suborning the perjury and defrauding the Grand Jury.

A couple of days after Coleman was missing, and before anyone knew that she was deceased Tanesha Hilliard told the Waco Tribune Herald that Fields "didn't appear angry". Then two years after Gloff, Spillman and Casson had defrauded the Grand Jury, At trial Tanesha Hilliard reiterated the fact that Fields was never angry; and as a matter of fact Fields and the victim, Sunkerey Coleman were hugging and kissing.

16

(2) Homicide Detective, Steve January, whom had nothing whatsoever to do with Coleman's murder claimed that he came onto the case to "assist the U.S. Marshal's in the city limits". However, the U.S. Marshal's was already being assisted by the Mclennan County Sheriff's department, whom had original Jurisdiction over Coleman's case under the State of Texas.

In any event Detective Steve January's action(s) soon turned criminal and played a crucial role in Fields' wrongful conviction.

Now, on the night that Fields walked out of the Mclennan County Federal Jail Fields' cell mates, Dominique Tubbs and Chris Quigley were interviewed by authorities but could provide no useable information. The next morning two U.S. Marshals flew into Waco, Texas from Austin and reinterviewed Tubbs and Quigley with the same results; They could provide no useable information.

The evidence proves that Edward Lee "Treyboy" Outley, the guy whom Fields said assisted Shalaykea "Lakie" Scroggins in Coleman's murder was going around telling everyone that Fields Killed Coleman. A week after Fields walked out of the Jail Detective Steve January "encountered" Outley in an apartment. Outley was subsequently arrested for Felon in possession of a firearm and ammunition.

Detective Steve January immediately files a report distancing himself from Outley, stating that he (Detective January) wasn't there at the scene that day, but instead a U.S. Marshal, Parnell McnLamara, called him the next day, November 14th, 2001 and told him that they had arrested Outley on November 13th, 2001.

Then two years later, at trial in January 2004 Detective January forgets about his previous lie and testifies that he was there when Outley was arrested, but he still tries to distance himself from Outley, claiming that he wasn't there first, the U.S. Marshals was there and they called him over there to assist them.

However, that too is a lie. A report from U.S. Marshal Chris Casscal states that the Waco Police Department notified them that they had Outley at an apartment complex and when they

17

Arrived they found Detective Steve January talking to Outley. And then At Outley's Felon In Possession trial Outley told the Jury that Detective Steve January held him up until the Marshal's Arrived.

Two days after Detective Steve January talks to Outley, Detective Steve January go out to the Jail to "reinterview" Tubbs and Quigley; This time Detective January does what previous investigators failed to do, he walks Away with two statements that he wrote And Tubbs And Quigley signed claiming that they heard Fields threaten Coleman on the phone.

At trial in January 2004 Dominique Tubbs lies And say that he didn't Know that Coleman was deceased until he "read it in the newspaper", which would have been on or After November 29th 2001, but his friend, Chris Quigley takes the stand And admits that a police officer told him And Tubbs that Coleman was deceased while Fields was still out on Escape status; the only "police officer" that they talked to during that time frame is Detective Steve January.

It's obvious that Outley told Detective Steve January that Fields killed Coleman, And in preparation for a murder case, Detective January, Knowing that the time line, the train of events, And Detective January's Action(s) calls for questioning: (i.e)

(A) November 6, 2001: Tubbs And Quigley questioned, but could provide no useable information

(B) November 7, 2001: Two U.S. Marshals flew in to place from Austin And reinterviewed Tubbs And Quigley, but they still could provide no useable information.

(C) Shortly thereafter Detective Steve January inserts himself into the case.

(D) November 13, 2001: Detective Steve January talks to Edward Lee "Treyboy" Outley.

(E) November 15, 2001: Detective Steve January goes out to the Jail to reinterview Tubbs and Quigley, he walks Away with statements that he wrote And they signed claiming that Tubbs And Quigley heard Fields threaten Coleman on the phone.

18

Detective Steve January Attempts to distance himself from Outley, goes out to the Jail and conspire with Tubbs and Quigley to "make Fields guilty" of Coleman's murder.

(3) Detective Steve January committed perjury and defrauded the Court and the Jury when he testified that there were no fingerprints found in the alleged carjacking vehicle and that the vehicle was "clean".

There were twelve latent prints, All of AFIS quality found in and on the vehicle. These prints were checked against Fields' prints and there was no match.

(4) Detective Steve January committed perjury and defrauded the Court and Jury when he testified that (A) Fields shot LaDon King with a .40 caliber; And (B) There were kids in the crossfire.

The evidence proves that A drug dealer hired LaDon King to murder Fields. King Almost killed Fields the first day, but was thwarted by Security guards. King came back the next day with Seven other Armed men And it resulted in Fields being charged with Shooting King.

Detective Steve January testified that Fields and Edward Lee "Treyboy" Outley "Cornered" LaDon King in a courtyard where "kids were playing" and Fields Shot him with a .40 caliber. As a direct result this false and malicious testimony led to Fields being given an upward Adjustment in case number w1-01-CR-114 and again used as an Aggravating factor in the instant case w1-01-CR-164.

The facts are: Fields was unarmed when LaDon King came to murder him. A guy on the Scene gave Fields a .380 pistol. Edward Lee "Treyboy" Outley ran to get a rifle from his cousin. LaDon King, in an attempt to "Sneak up" on Fields Encountered Outley and Started Shooting. Outley Started Shooting back and King ran out towards the Street where he Encountered Fields; King and Fields both Started Shooting and King was Shot once.

19

Witness statements support these events, .380 shell casings were found in the car that Fields was Shooting from, there is no way Fields Shot LaDeal King with a .40 caliber like Detective January lied and said. And the Shooting happened at or about noon on a School day, there were no kids out there, Kids were at School.

The Evidence further Shows that at the time of the Shooting LaDeal King was wanted for Kicking another guys door in and Shooting him Eight times with a .40 caliber, presumably the Same .40 caliber that he Shot at Fields and Buttey with. Detective January found .40 caliber Shell casings at the Scene and "assumed" that Fields was Shooting the .40 caliber and as a direct result Detective January's assumptions and lies caused Fields to receive a significantly lengthy Sentence in Case number u1-01-cr-114. And caused Fields his Life in Case number u1-01-cr-164

(5) U.S. Marshal Parnell McNamara, intentionally, deliberately, and purposefully, with malice aforethought committed perjury and defrauded the Court and the Jury.

When Fields was arrested on November 24, 2001, the arresting officer admits that Fields wasn't questioned at the Scene.

At trial in 2004 U.S. Marshal Parnell McNamara commits perjury claiming that he asked Fields did he have a gun and Fields told him that he had a .22 in the apartment up under the carpet, McNamara Said he went into the apartment and he found a .22 up under the carpet.

However, Hubert Steadman, a convicted felon whom lived in the apartment Said that he (Steadman) told the Marshal's that Fields had a gun, the Marshal's went in the apartment, Searched for the gun but couldn't find it, So he (Steadman) went in the apartment and "found the gun" for them.

As a direct result of McNamara's false testimony Fields was

20

Convicted for Felon In Possession of a Firearm, and Using And Carrying a firearm during and in relation to A Crime of Violence. (6) At trial, in January 2004 the government presented Inmate Homero DeLeon whom claimed that while in Segregation in Fort Worth Federal Prison in January 2003 Fields hollared Across a distance of six to Eight feet and said " Since you're not on the government's witness list to testify I'm going to confess to you".

( We must note two important factors here: (1) The government didn't even have a witness list then, the government's witness list is dated a year later; And (2) Fields don't Know DeLeon and had never seen him before until he got up on the witness stand And lied.)

In Any event DeLeon testified that Fields told him the names of the people that went to the Grand Jury on him And then proceeded to name five people that Fields don't Know, but DeLeon do Know; None of them actually went to the Grand Jury on Fields, they all went to provide information on the guard that gave Fields the Key to the fire escape door; And one woman that he named, Andrea Sais, She doesn't Know Fields And She wasn't even in Jail, her only involvement was that She was paying the Jail guard to take her brother Contraband into the Jail.

To bolster DeLeon's false testimony the prosecution called ATF Agent Douglas Kunze to the stand to lie And Say that Fields had to tell DeLeon what he testified to because the government had given Fields' defense team " the Grand Jury statements early on in the investigation". However they Knew this was a lie, in July 2003 Fields' Attorney wrote a letter to prosecutors Greg Coloff and Steven Snyder asking them to turn over the Grand Jury

21

transcripts "A reasonable time before trial"; This is unequivocal proof that the prosecutors knew that DeLeon was committing perjury, they knew that ATF Agent Douglas Kuntze was going to, and ultimately did commit perjury, and they knew all along that they were suborning perjury, in their quest to "Make Fields guilty" of Coleman's murder.

(7) U.S. Marshal Chris Casson purposefully, deliberately, intentionally, with malice aforethought defrauded the Grand Jury, the Petit Jury and the Court(s).

A woman, Tammy Edwards, gave several false and conflicting statements about her car being "Jacked". In order to "Make Fields guilty" of the crime U.S. Marshal Chris Casson committed perjury claiming that Fields had "friends" and "other relatives" near the scene and he could have been "Staking the place out".

There are no "friends" or "relatives" that live near that hospital, upper class white families occupy that neighborhood, this was a deliberate criminal act of perjury intended to manipulate and deceive the Court and the Juries(s).

(8) Sheriff Detective Morris "Bubba" Colyer did intentionally, deliberately, knowingly and with malice aforethought commit perjury and defraud the Court and the Jury when he lied in an effort to "MAKE FIELDS Guilty". Claiming that the car that Fields drove on the night of the murder had been "detailed".

(9) Government Prosecutor(s) did intentionally, deliberately, knowingly and with malice aforethought commit the criminal act of suborning perjury and defrauded the Court(s) and the Jury when. in an attempt to "MAKE Fields Guilty" they attempted to make the Jury believe that Edward Lee "Treyboy" Outley and Shalaykea "Lakie" Scroggins was in

22

A BLUE Jaguar on the night of the murder while knowing that Oakley and Scroggins were conspiring to hide the GOLD Jaguar that they were actually in that night, and the BLUE Jaguar didn't exist.

(10) A significant number of the Jurors in the United States verses Sherman Lamont Fields said that "Police Officers must be obeyed at all times", given their "thought process", if you will, it's only logical to know and understand that these Jurors believed everything that law enforcement said, even the perjury which undoubtedly was an extreme violation of Fields' Constitutional rights. Because the perjury is so blatant and extensive a bevy of items must be discoverable, which is the subject of this Discovery Motion. If the government would have honored the pre trial Discovery Motion, pursuant to Rule 16, and/or the previous post conviction Discovery Motion the evidence could have been used to prove that the government manufactured and fabricated the "Evidence" against Fields and defrauded both the Court and the Jury.

In the interest of Justice Fields asks this Court to Order and/or propel the prosecution to relinquish any and all rough notes pertaining to the investigation; Any and all disciplinary and psychology records pertaining to the two prosecutors and aforementioned officers; the entire file in the LaDon King Shooting and Any and all physical evidence, to include the bullet taken from LaDon King and All .40 caliber Shell casings, pursuant to Brady v. Maryland.

(12) In Addition to the itemized request for Brady Material herein this motion, Fields, without repeating each request incorporates by reference the itemized and corresponding discovery requests made in Fields § 2255 Motion and Discovery Motion. Besides these itemized requests, Fields also asked that the Government produce any materials in its possession supportive of his claims under § 2255 ("Exculpatory Materials") (Citing Brady v. Maryland, 373 U.S. 83 (1963)

23

Fields now seeks that this Court Grant this Discovery Motion for the reason(s) set forth herein, and/or exercise its supervisory authority in order to put a stop to the criminal Murder of Sherman Lamont Fields via lethal injection and preserve the integrity of the Justice System.

(13) When a defendant's life is at stake, Courts must be "particularly sensitive to ensure that every safeguard is observed", Gregg v. Georgia, 428 U.S. 153, 187 (1976); See Also, Woodson v. North Carolina, 428 U.S. 280, 305 (1976) (" Because of that qualitative difference [ between death and any other punishment]. there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case'); Eddings v. Oklahoma, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring) (noting that, because of the exceptional and irrevocable nature of the death penalty, "Extraordinary measures" are required by the Eighth and Fourteenth Amendments to ensure the reliability in capital proceedings); Ford v. Wainwright, 477 U.S. 399, 411 (1986) (The heightened standard of reliability in capital cases is a natural consequence of the knowledge that Execution is the most irremediable and unfathomable of penalties; that death is different")

Wherefore, Defendant moves for an order requiring the government to disclose All information, documents and items pursuant to Brady v. Maryland, 373 U.S. 83 (1963)

JOHN SAMUEL EDWARDS III
Notary Public, State of Indiana
Clay County
My Commission Expires
October 24, 2018

Respectfully Submitted

 10/8/13

Sherman Lamont Fields
# 15651-180
USP Terre Haute
P.O. Box 33
Terre Haute, Indiana
47808