APP-18

SHERMAN LAMONT FIELDS

v.

USDC No. 6:09-CV-9

USDC No. 6:01-CR-164-1

THE UNITED STATES OF AMERICA

No. 13-70025

THIS IS A CAPITAL CASE
(DEATH PENALTY)
URGENT!!!
PRO SE

MOTION PURSUANT TO: RULE 60(b)(2); RULE 60(b)(3) & RULE 60(d)(3)

BACKGROUND  1-7

IN RE: NEW EVIDENCE  8-9

FRAUD ON THE COURT  10-20

SOLICITATION OF MURDER  21-

INEFFECTIVE ASSISTANCE OF COUNSEL  22-24

ARGUMENT  25-42

JURISDICTION  43-47

BACKGROUND:

At or about mid-1990, a Derrick Bradshaw drove up on an unarmed Sherman Lamont Fields and started shooting. When the gunfire stopped Fields' girlfriend, whom was pregnant at the time had sustained a gunshot wound to the leg; Fields didn't react...at all, he let the police "handle it".

In November 1991, the same guy, Derrick Bradshaw pulled a gun on an unarmed Sherman Lamont Fields. Fortunately for Fields he was able to drive away unharmed.

This time Fields obtained a firearm himself, drove by Bradshaw's house, and shot back; a bullet "scraped" Bradshaw's

Stepfather. Fields pled guilty for Agg. Assault and spent the next eight years in prison.

In late August / Early September 2000 an altercation between Sherman Lamont Fields and a local drug dealer led to the drug dealer hiring a LaDon King to murder Fields. King almost killed an unarmed Fields when they first crossed paths, but was thwarted by some security guards on the scene; King came back the very next day to "finish the job", but again his efforts was thwarted when Fields obtained a firearm from another guy on the scene and shot LaDon King.

(NOTE) When LaDon King was hired to murder Fields, King was already WANTED for a host of other violent offenses, including the shooting of another man, where King kicked his door in and shot him multiple times with a .40 caliber. After Fields shot King, Mr. King escaped from the hospital, pulled a gun on a police officer and got away.

In late October 2000 the police surrounded a house in East Waco Texas with an arrest warrant for Fields in regards to the LaDon King shooting; There was no search warrant for the residence, and after ordering the owner of the house to "Step Outside", the police rushed the house and found Fields standing in a closet.

The police ordered Fields to the floor, handcuffed him and then stood him up and searched him. There were (28) nine Millimeter bullets in Fields' pocket, one of the

officer's yelled: "There's A gun Somewhere!"; The police immediately started Searching the room And found A nine millimeter handgun under the mattress on the bed. Fields was booked into the McLennan County Jail for the LaDon King shooting where he made bail.

In november 2000 two drug dealers Alleged that they were "robbed" by Royce Riley And "Another guy". when A woman that Royce Riley has A child with said, "The other guy had to be Sherman Fields". the drug dealers called the police And said that Royce Riley And "Sherman Fields" robbed them for Jewelry And money.

Royce Riley And Sherman Fields was Arrested for Agg. Robbery, however there was never A "robbery". the "other guy" Jumped out of A car running Away with the drug dealers ten Ounces of crack cocaine And the drug dealers Attempted to Kidnap Royce Riley, who pulled out A gun, fired A shot into the console, then Jumped out of the car And ran too.

The State of Texas knew they Couldn't prosecute Fields on the bogus "robbery" charge, And the LaDon King case was "dry cut" in Fields' favor, So Fields' Attorney informed Fields that the State of Texas was pushing the Federal Government to indict Fields for the nine Millimeter handgun that they found under the mattress during the illegal Search

3

of the residence.

In late September 2001 the government indicted Fields for Felon In Possession of a firearm; Felon in possession of a firearm with an Obliterated Serial Number; And Felon In Possession of Ammunition.

The Court appointed Scott Peterson to represent Fields. Peterson said that Fields could beat the case with a "Necessity Defense", meaning that he needed a gun to protect himself against the Hit Man, LaDon King. (Fields denied possessing that particular gun).

The prosecutors responded by saying that Fields Should have "Just called the police".

However, the prosecutor's response was totally illogical, LaDon King was Already wanted for A host of violent offenses when he went after Fields And the police had failed to capture him, And when they did catch up with LaDon King he pulled A gun on the police And got Away Again!; The police couldn't even handle LaDon King thus the prosecutions response defies reason.

In Any event Fields made the worst mistake of his life. he obtained A key to the fire escape door from A Jailor And on November 6. 2001, Fields used that key to walk Away from the Jail.

That same night one of Fields' girlfriends was murdered, Shot twice in the head.

4

After Fields was rearrested without incident Local, State And County officials focused All of their Attention on the murder of Suncerey "Shining Star" Coleman, (Fields' girlfriend); the government focused on the Escape. But soon the State turned the murder case over to the government as well.

Fields maintained And was Adamant that he didn't kill Coleman, however Fields was informed that the government was "Seeking Jailhouse testimony" trying to build A case Against him.

Two years after Fields was put on Notice that the government was "Seeking Jailhouse testimony" Fields went on trial for the murder of Suncerey "Shining Star" Coleman And was found guilty And Sentenced to die based mostly on "Jailhouse testimony".

On Direct Appeal to the 5th Circuit Court of Appeals the Court confirmed Fields' Sentence And conviction And focused on the testimony of Kevin Burton, An inmate who Fields didn't know And had Never Seen before until he was called to the witness Stand to lie.

At trial Fields Attempted to Show the Jury that he didn't know Burton And had Never had A conversation with him. Burton claimed that he'd "met" Fields in the Early 1990's, but didn't See Fields Again until November 16, 2001.

Burton claimed that on November 16, 2001 Fields was in a red four door Grand Am and he saw Edward Lee "Treyboy" Outley in a Jaguar; they were on 5th and Proctor Street in Waco Texas and Fields was going to rob him (Burton), until a William Hayes told Fields not to rob him. It was then tha Burton claim that Fields confessed to him that he'd murdere Coleman.

There are several things wrong with Burton's testimony besides the fact that it's incredulous! The Grand Am was a two door, not a four door and it's a proven fact that it was no longer in the picture after Coleman's murder and it went to the forensics lab on November 14th. So Burton couldn't have possibly saw Fields in the Grand Am on the 16th, and the Jaguar was no longer in the picture after the night of the murder, and Edward Lee "Treyboy" Outley went to Jail on November 13th so it was impossible for Burton to see him in "a Jaguar" on the 16th.

When Burton "came forward" it was two years after the fact when he was in Three Rivers Federal Prison with other "Paid Occurence Witnesses" hired by the government; Burton's "Statement" said nothing about Fields trying to "rob" him and this Allegation was issued

only After Fields Asked Burton why did he wait two years to come forward.

The 5th Circuit Court of Appeals said that because Fields said that Burton's testimony was fabricated any prosecutor misconduct And 404 (b) violations in regards to Burton was Appropriate; now newly discovered evidence proves that Burton's testimony is indeed false and that Burton And the prosecution defrauded the court(s) which resulted in An erroneous ruling that substantially affect(s) Fields' Fifth And Fourteenth Amendment rights and may very well cost An innocent man his life.

## NEWLY DISCOVERED EVIDENCE

(1). After Kevin Lamar Burton claimed at trial that a William Hayes told Fields not to "rob" him (Burton), the search for the elusive Mr. William Hayes have been of the utmost importance to Sherman Fields; In February 2014 Fields finally found Mr. William Hayes whom was genuinely shocked and flabbergasted that Kevin Burton had used him to deceive the Court and frame Fields for Coleman's murder. Mr. Hayes is adamant that he, Fields and Burton have never been in the same place together, and he has never told Burton that Fields was going to "rob" him; In light of this newly discovered evidence in conjunction with the false facts in Burton's testimony there is no doubt that Burton's story is fabricated and because of the fabricated "Evidence" there was an intent to knowingly deceive and defraud the Court(s).

(2) At trial the government immediately struck five of the six African American (Black) Jurors and the

8

issue immediately went into Batson; The prosecution claimed that their strikes was articulated and exercised in a race neutral manner and Judge Walter Smith agreed with the prosecution. This resulted in a bias Jury that contributed to the conviction and impending demise of an innocent man. Now New evidence have come to light proving that the Jury was indeed bias, and their bias deprived Sherman Lamont Fields of Due Process.

9

## FRAUD ON THE COURT

In Addition to the prosecution "Seeking Jailhouse testimony" and hiring these "paid Occurrence witnesses" to defraud the Court(s) they Also defrauded the Grand Jury.

In February 2002 the Grand Jury convened to investigate Guncefey "Shining Star" Coleman's murder And the Grand Jury had serious doubts, concerns and questions About the Governments Star witness. Shalaykea "Lakie" Scroggins, whom was not only Another one of Sherman Lamont Fields' "girlfriends", but Also the woman whom Fields said killed Coleman.

Scroggins testified that prior to Coleman's murder Fields showed her a gun and said that one of the bullets was for her, And that Fields took her out to where Coleman was later murdered and said that he was going to kill her too... Yet later, After Coleman's murder Scroggins went and spent the night with Fields.

The Grand Jury didn't believe that And voiced their "disbelief".

Prosecutor Gregory Gloff procurred Sheriff Detective Johnny Spillman And U.S. Marshall Chris Casson to lie And say that Tanesha Hilliard, the victim's cousin whom was with her on the night of the murder said that Fields became "Angry" and "Irate" when

he came into contact with the victim on the night of the murder; However they all knew that the testimony was false and intentionally, deliberately, knowingly, willingly and with malice Aforethought it was meant to deceive and defraud the Jury. Tanesha Hilliard had Always maintained that Fields was never Angry And/or Irate; Days after Coleman went missing, before anybody knew that she was deceased Tanesha Hilliard said that Fields wasn't Angry; then two years after Gloff, Spillman and Cassen defrauded the Grand Jury, At trial, Tanesha Hilliard reiterated the fact that Fields was never mad or Angry and As A matter of fact Fields And the victim were hugging and kissing.

The prosecution knew that Scroggins murdered Coleman And she was Assisted by Edward Lee "Treybcy" Outley, but the prosecution was so upset that Fields had "Escaped" they Adopted An "I'll Show you" Attitude towards Fields And set out to Use the Death Penalty As A murder weapon to take Fields' life in the pretense of Justice. Four months prior to Coleman's murder Shalaykea "Lakie" Scroggins wrote A letter talking About her obsession for Fields, how she had lost him to Coleman once And how she wouldn't let it happen Again, and if it did happen she would kill the "Bitches" that dared to try it.

11

A system of Stalking begin with Scroggins calling Coleman, threatening her and Showing up in places where Coleman were. It got so bad that Scroggins went and illegally got a phone turned on in Fields name and immediately started calling and threatening Coleman; So the day prior to the murder Fields and Coleman called the phone company together and got the phone cut off.

After Coleman's murder Scroggins and her Accomplice immediately started framing Fields for the murder, they both claimed that Fields confessed to them, but they both gave several different versions of how, when and why Fields Supposedly confessed to them; they both gave several different Alibi's for the time of the murder; they both went Around recruiting other inmates to lie for them; and whereas forensics cleared the Grand Am that Fields was in on the night of the murder, the Jaguar that Scroggins and Outley were in was Never subjected to forensics testing because Outley and Scroggins conspired to hide the Jaguar, telling investigators that the Jaguar was blue when in fact it was Gold.

The prosecution knew that Scroggins and Outley

were lying because three months prior to the trial they interviewed the guy that own the Jaguar and he informed them that he rented Outley his "Gold" Jaguar on the night of the murder; But instead of doing the right thing an Admit that Outley and Scroggins had manipulated and deceiv them, the prosecutor(s) chose to Defraud the Court, telling the Jury that Outley and Scroggins was indeed in a blue Jaguar that the prosecution knew was wrecked and totaled in 1998, three years prior to the murder, and didn't even exist when Coleman was murdered in 2001.

In any event, while Fields was incarcerated at the McLennan County Jail prior to trial his tenure there was mentally and Emotionally decapitating; At times he was even subjected to physical abuse, being assaulted by the Jailors. They taunted Fields, calling him "The Green Mile", and often wrote him bogus disciplinary cases to use against him in the event of a guilty verdict. On one occasion a Judge saw Fields in the holding tank and said, "Y'all ought to take Fields out back, put a bullet in his head and save the government some money".

Fields' Attorney told Fields to plead guilty to the 9-millimeter that was found under the mattress when Fields was arrested for the LaDon King Shooting stating that if Fields plead guilty he would get some time

13

And then he could be sent to prison away from the abuse; since it's all one indictment the max is ten years; And the murder and other charges might Just go away.

Fields pled guilty and received 12½ years; his Attorney said that he misinterpreted the law.

Afterwards Fields remained at the McLennan County Jail Enduring the Abuse; when Fields tore a vent out of his cell he was finally transferred to Fort Worth FCI. It was then that a hispanic inmate claimed that Fields, whom was segregated in a one man cell, confessed to him.

Homero Deleon, Another inmate whom Fields had never met or seen before claimed that he "seen" Fields at a Store in May or June 2000; Fields was still in State Prison in May or June 2000.

Deleon claimed that he and Fields were cell mates in Jail where he was in protective custody; Fields and Deleon have never been cell mates and Fields have never been in protective custody.

Deleon claimed that he saw Fields at the Highway 6 Jail, but they were in different "tanks"...

Based on the above, Deleon said that when Fields arrived at Fort Worth FCI he somehow ended up in the cell across from Fields and Fields told him that Since he's not on the governments witness list to testify Fields would confess to him. However, in December 2002 when Deleon claim that this happened the

14

government didn't even have a "witness list; the governme didn't have a witness list until January 2004

At trial Deleon claimed that Fields told him the names of people that went to the Grand Jury on Fields and then named five people, four inmates and the sister of one of the inmates. Fields didn't know any of them, but had hear of one, the one that was Shalaykea "Lakie" Scroggins' ex, and none of the people Deleon named went to the Grand Jury on Fields; the inmates sister wasn't even in Jail, she don't even know Fields and Fields don't know her; Deleon himself knew all of them.

To defraud the Court and the Jury the prosecution called ATF Agent Douglas Kunze to the Stand to bolster Deleon's false and malicious testimony. Agent Kunze intentionally, knowingly, willingly, deliberately, with malice aforethought testified that the prosecution had given the defense "the Grand Jury transcripts "early on in the investigation", which insinuated that Fields had to tell Deleon that the people he named did go to the Grand Jury on him. However the prosecution knew that they were defrauding the Court and the Jury, In July 2003 Fields' attorney's had sent a letter to the prosecution asking them to turn over the Grand Jury transcripts " a reasonable time before trial", so they knew all along that Fields didn't have Grand Jury transcripts in

15

December 2002 when DeLeon claim that Fields told him that; At the time that the prosecution used ATF Agent Kunze to defraud the Court and the Jury.

The Fraud On The Court was and is EXTENSIVE: Inmate Christian Chae Walker wrote two statements saying that Fields never confessed to him. Walker went to the Grand Jury and told them also that Fields never confessed to him; Walker is a very close friend of the Victim's family, he referred to the Victim as his little sister; Walker and Edward Lee "Treybey" Outley is also best friends.

Outley started writing Walker, telling Walker to lie and say that he gave Outley a gun to give to Fields. Outley told Walker to make a deal with the prosecution first and tell them to drop his charges.

Walker did what Outley told him to do, there was only one problem: Walker didn't know what kind of gun it was. Detective Morris "Bubba" Colyer coached Walker; he told him what kind of gun it was.

Shortly thereafter, in October 2002 Shalaykea "Lakie" Scroggin started corresponding with Walker; It was then that every inmate that came into contact with Walker claimed that Fields confessed to them. Inmate Jerry Reed was Walker's cell mate, he claimed that Fields confessed to him; Walker, DeLeon and Burton was all in Three Rivers Federal Prison together. Then two days before Walker was to testify about other things besides the murder the prosecution approached the

16

defense and told them that Walker was changing his story, he was now going to testify that Fields confessed to him.

When Walker took the stand Fields asked him why did he wait so long to change his story and Walker claimed that he didn't want to put his family in Jeopardy. However prior to colaborating with Scroggins and Outley, Walker told the authorities every thing that he could conJure up that would qualify him for the free time reduction that the government was giving away for false testimony; Walker told them that Fields wanted to rob one of Walker's friends; Walker told them that Fields wanted to rob a bank; Walker told them that Fields wanted to kill some guy named Reggie Hammon (which turned out to be Eddie Murphy's character in the movie 48-Hours); Walker told them that he'd given Fields a .22 pistol; Walker told them that Fields robbed people; And Walker told them that he "thought" Fields had did something to Coleman; That's not a man that "didn't want to tell the truth at first" because he didn't want to "put his family in Jeopardy" like Walker now claim.

In any event the government defrauded the Court and the Jury when they Allowed Walker to lie, mislead and defraud the Court. And the Jury.

On Appeal to the 5th Circuit (Direct Appeal) Counsel for Fields argued that photographs of the victim were

17

inflammatory; the Court Admits that "many of the photo's are shocking". but states that "The photo's showing the victim's body decomposing were highly probative." One of Fields's key themes at trial was that the Government had little physical evidence linking him to the crime. In his opening statement, for example, Fields argued that it was "not possible" to "commit a murder in the time and manner in which the government witnesses allege and not leave any physical evidence..." The Court held that the photo's were necessary to rebut Fields' argument. The photo's "helped explain why little physical evidence was found: because it had been carried away by animals or worn away by the elements".

This finding of "false facts" against an innocent man is extremely prejudicial, there was no physical evidence because Fields didn't kill Coleman, and the physical evidence that was found exonerates Fields; we are here today because the prosecution chose to defraud the Courts; look at the facts:

Crime Scene reports detail the struggle technicians had removing the body because the long thorns were hazardous, thus whomever drug Coleman's body to where it was found would have been cut by the thorns, and not only would they have

18

transferred their own blood to the vehicle that they were driving, they would have transferred the victim's blood to the vehicle as well; The fact that the Grand Am that Fields was driving was cleared in the forensics lab and the disturbing fact that Shalaykea "Lakie" Scroggins and Edward Lee "Treybey" Oatley conspired to hide the Jaguar is what's significant here; The Court's decision to aid the prosecutions deception is clearly erroneous, especially in light of the fact that the prosecution set out to intentionally defraud the Court.

In addition to that, and what the Courts have failed to acknowledge in light of the prosecution's deception and criminal (acts) is that in May 2003 the government approached the defense claiming that they went back, searched the victim's clothes and found a hair. The trial was set for August, but prosecutors filed to delay the trial while they test the hair; The prosecution then retrieved hair samples from Fields.

After testing, the prosecution told the defense that "they got a match, the hair belongs to Fields". Counsel for Fields said that it didn't matter because everyone knows that Fields was with Coleman. but Fields was insistent that, in Fields words, "The prosecution is

19

trying to do something slick". Counsel for Fields asked the Court for funds to hire an independent DNA testing; Independent DNA testing confirmed that the prosecution was indeed trying to "do something slick", the hair was African American but it wasn't Fields'; The government then said that they weren't going to use the hair anyway. That's when they informed the defense that they had several inmates that were going to say that Fields confessed to them; Enter Homero DeLeon, Kevin Burton, Terry Reed, John Mercer and later Christian Chae Walker.

Fields had every right to expound upon the fact that these inmates were lying and the DNA didn't match because the real evidence supports that, and the erroneous Judgement that the 5th Circuit made in favor of the government on direct appeal is a testament to the fact that the prosecution did and continue to defraud the Court, which is not only a violation of Fields' civil rights, the prosecutions actions are criminal.

20

## SOLICITATION OF MURDER

On or about March 2002 the prosecution announced that they would be seeking the Death Penalty against Sherman Lamont Fields in the death of Suncerey "Shining Star" Coleman.

THEN:

(1) The prosecution went seeking Jailhouse testimony and ultimately made deals with a host of inmates to procur their false testimony.

(2) Shalaykea "Lakie" Scroggins wrote Edward Lee "Treyboy" Outley a letter telling him that the prosecution wanted to recruit one of them to say that they were "with Fields".
(i.e) In light of the evidence, "with Fields" could only mean that the government wanted, and attempted to procur a false eyewitness.

(3) Officer(s) for the prosecution recruited an inmate Chance Alexander to lie and say that Fields confessed to him. but at the last minute Alexander backed out of the deal and admitted that he don't even know Fields and he'd lied only because the officer promised to get him out of Jail.

2.1

## INEFFECTIVE ASSISTANCE OF COUNSEL

(1) Appeals Counsel failed to seek out and secure the statement of witness William Hayes while knowing that the statement is critical in proving that a significant witness for the government fabricated his testimony and the prosecution knowingly, intentionally, willingly, deliberately and with malice aforethought committed fraud on the court.

(2) Fields have always maintained that the prosecution engaged in a criminal conspiracy to use the Death Penalty as a murder weapon to take his life in the pretense of Justice, the prosecution went as far as eliminating all potential impartial Jurors and seating Jurors that were severely bias; a Batson challenge failed at trial, however new evidence have emerged that Counsel for Fields failed to present in its proper context.

At trial the prosecution automatically struck five of the six black Jurors, they kept one with ties to law enforcement so they could skate past <u>Batson v. Kentucky</u>.

The Jurors impaneled were severely bias

stating that Black males commit most violent crimes; "A group of blacks jumped on my daughter and my son in law"; "My preachers father was murdered and the man that killed him didn't do not one day in jail", etcetera, etcetera etcetera. Post trial Fields' attorney(s) interviewed the jurors whom claimed that they "killed Fields because he didn't show any emotions".

Counsel for Fields filed an appeal taking the jurors word at face value when in fact the evidence proves that Fields is right and the jurors assertion that they killed Fields because he didn't show any emotion is just a lackluster excuse to mask their racism and bias; The trial transcripts show that Fields was very emotional. At one point the prosecution even commented on Fields bailing his eyes out at the defense table. The only reason the jurors would lie about that is if they are trying to hide the fact that they are racist and/or bias and it resulted in the conviction and impending demise of an innocent man. Counsels failure to recognize that and file Fields' appeal

23

Accordingly means that they failed Fields horribly.

(3). Fields' insistence that the prosecution engaged in a criminal conspiracy to murder him and the overwhelming evidence in support of that should have been priority number one, but counsel intentionally neglected the most crucial element of Fields' appeal against the expressed wishes of their client because they thought if they didn't "directly" state the fact that the prosecution knowingly, intentionally, deliberately willingly and with malice aforethought engaged in said criminal conspiracy to use the Justice System as a murder weapon to "criminally" murder Fields in the pretense of Justice, and defrauded the Jurie(s) and the Court(s) the prosecution would concede error and Fields' innocence in light of the overwhelming evidence proving Fields case because it would leave the prosecutors "a way out". However refusal to file the criminal element(s) in regards to the prosecutions misconduct have only allowed the prosecution to continue to defraud the Court(s) as evidenced by the 5th Circuit accepting inmate Kevin Burton's testimony as fact on Direct Appeal, which led to an erroneous Judgement.

## ARGUMENT

## FRAUD ON THE COURT

Fed R. Civ. P. 60 (b)(2) provides for relief based upon newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial; And Fed R. Civ. P. 60 (b)(3) provides for relief based upon fraud, misrepresentation, or other misconduct of an adverse party. Fields have satisfied the language in both: Rule 60 (b) (2) + (3), Showing by clear and convincing evidence that the prosecution obtained the verdict through fraud, misrepresentation and other criminal misconduct and the misconduct prevented Fields from fully and fairly presenting his case and/or defense in that the false facts precluded the introduction of true facts and the end result was that not only was an innocent man convicted, but he's destined to be murdered in the pretense of Justice. See Pfizer inc. v. Int'l Rectifier Corp. 538 F.2d 180, 195 [8th Cir. 1976]. cert. denied, 429 U.S. 1040, 97 s.ct. 738, 50 L.Ed. 2d 751 (1977) The prosecutions unconscionable plan or Scheme that they designed to improperly influence the Court / Jury in its decision and prevented Fields from fully and fairly presenting his defense violated

25

Fields' due process right. The prosecution perpetrated a species of fraud that subverted the integrity of the Court itself so that the Judicial machinery could not perform in the usual manner and the impartial functions of the Court have been directly corrupted; The prosecutors violated their duty of honesty to the Court. See Sawyer v. Collins, 986 F. 2d 1493, 1497 (5th Cir. 1993); citing Barefoot v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383. 3394, 77 L.Ed. 2d 1090 (1983). The Fifth Amendment's guarantee of due process and the Eighth Amendment's prohibition on cruel and unusual punishments are both violated by the incarceration and/or execution of a man like Mr. Fields, who can make a persuasive post-trial demonstration that he is actually innocent of the crime(s) for which he was convicted and sentenced. See, e.g., Herrera v. Collins, 506 U.S. 390, 419 (1993) (O'Connor, J., joined by Kennedy, J., concurring); Id. at 429 (White, J., concurring; Id. at 430 (Blackmun, J., joined by Stevens and Souter, JJ., dissenting); House v. Bell, 547 U.S. 518, 554-55 (2006); United States v. Nobles, 422 U.S. 225, 230 (1975) ("The dual aim of our criminal justice system is " that guilt shall not escape or

innocence suffer"); See also Herrera, 506 U.S. At 398 ("[T]he central purpose of Any system of criminal Justice is to convict the guilty And free the innocent") Moreover, A conviction based on false testimony, whether or not the government Actually Knew or should have Known the testimony was false, violates Due process. See, e.g., Mooney V. Holohan, 294 U.S. 103, 112-13 (1935) (Knowing presentation of false testimony Violates due process); Alcorta V. Texas, 355 U.S. 28, 31-32 (1957) (due process Violated where prosecutor's examination of Witness created "false impression" of material fact.

It's clear that the Government And their witnesses Joined in A seditious Conspiracy to provide false testimony to A Grand And Petit Jury in this Capital Case so they could defraud the Court(s) And manipulate a Verdict of guilty, which would ultimately lead to the murder of Sherman Lamont Fields via lethal injection. In A 'Freestanding Actual Innocence' Brief that Fields presented to the 5th Circuit, Pro Se, in his bid for A C.O.A. Petition this intricate web of deception was laid out in great detail (October 2013 The 5th Circuit Court of Appeals Kept the brief, but

refuses to consider it because "Fields have Attorneys". In any event the evidence here within this Rule 60 Motion undoubtedly proves that the prosecution corruptly endeavored to influence, obstruct or impede the due Administration of Justice; "Endeavor" as used here describes any effort or assay to accomplish the evil purpose the criminal statute was enacted to prevent; The facts herein, proven, plainly constitutes an "Endeavor" for the purpose of criminal conspiracy, Solicitation of Murder, and Fraud On The Court. As the Court is well aware the Due Process clause forbids interferences with the due Administration of Justice, i.e., Judicial procedure; The Due Process Clause reaches all corrupt conduct capable of producing an effect that prevents Justice from prevailing, regardless of the means employed; And the Clause aims "to prevent a miscarriage of Justice". The Prosecution impedes the due Administration of Justice within the meaning of Due Process because the Prosecution Suborned Perjury, Defrauded the Court and engaged in contemptuous conduct.

Fields' Rule 60 Motion, by the Abundance of, degree

28

of, And overwhelming evidence supporting Fields' claim's proves that there is no doubt that the Constitutional Violation(s) Are Substantial ... And criminal in nature, And the prosecution entered into A scheme to Defraud the Court(s) And deprive Fields of Life And Liberty.

Fields' constitutional right to be free from A malicious prosecution have been severely infringed upon; In A case where the real evidence proves that Mr. Fields is innocent, the government went "seeking Jailhouse testimony" And hired A bunch of crooks, many that Mr. Fields don't know, And had never seen before until they got up on the witness stand And lied, to Defraud the Court And shift the Burden of Proof onto an innocent man, Knowing that the Bar on Actual Innocence is exceedingly high And virtually impossible to meet. It's clear that the government Committed A host of criminal And procedural Violations And had the government Not Defrauded the Court the evidence would have lacked Sufficiency to Convict; Even Considering the evidence in the light most favorable to the Verdict Any reasonable Jury would find that the Contested elements Are proven beyond A reasonable

29

doubt. U.S. v. Hull, 456 F. 3d 133, 141 (3d Cir. 2006) (internal marks omitted), cert denied, 127 S. Ct. 2877, 167 L. Ed 2d 1155 (2007) This is the extraordinary circumstance where the real evidence preponderates heavily against the verdict, and the verdict was against the manifest weight of the real evidence. The steps taken by the Government to Defraud the Court is clearly transparent in it's rightful Context And Fields have Shown that the Government did indeed engage in intentional, deliberate And knowing Fraud And misrepresentation, And they did So willingly with criminal malice Aforethought. Murphy v. Mo. Dept. of Corr., 506 F. 3d 1111, 1117 (8th Cir. 2007) (quoting United States v. Metro. St. Louis Sewer Dist., 440 F. 3d 930, 935 (8th Cir. 2006) "Fraud On the Court Claims merit Separate Analysis not only because they are exempt from the one year time-period for filing claims under Rule 60 (b) (3) but because they are much more difficult to prove". Zurich, 426 F. 3d At 1291 (Citing 11 Charles Alan Wright + Arthur R. Miller + Mary Kay Kane, Federal Practice And Procedure 2860, 2870 (2d ed. 1995 Fields have satisfied the requirements of Rule 60 (b) (2) & (3); He has Also satisfied the requirement

of Rule 60 (d)(3) which exempts my claim from the strict one year time-bar for setting aside a Judgement and from failing under procedural default.

<u>18 U.S.C.S. § 373 Solicitation of Murder</u>

The Courts have yet to recognize that police, prosecutor(s) and "witnesses" whom intentionally, deliberately, knowingly willingly, with malice aforethought fabricate evidence and Defraud the Court(s) in Capital Death Penalty cases can be prosecuted under the Solicitation of Murder, Conspiracy to Commit Murder and Murder Statutes under the State and/or Federal Rules of Criminal Code and Procedures Although a reoccurring theme in all wrongful convictions and Malicious prosecutions is that the offending police, prosecutor(s) and their "witnesses are never held Accountable for their criminal conduct /Actions, and as long as they know there are no consequences they will do it again and again. This is an opportunity for the Courts to Show "the people" that the integrity of our Justice System is of the utmost importance and these criminal Acts will not be tolerated by "no one!"

To find someone guilty of Solicitation of Murder-for-hire the Jury must find (1) that the defendant intended for Another person to commit murder-for-hire, and (2) that the defendant induced or tried to persuade that other person to commit murder for hire. 18 U.S.C.S § 373(a)

32

U.S. v. Razo-Leora, 961 F.2d 1140, 1148 n. 6 (5th Cir. 1992); See Also, U.S. v. Cardwell, 433 F. 3d 378, 390, 91 (4th Cir. 2005) The plain language of the statute indicates that actual movement in interstate commerce is not required for a solicitation conviction under 18 U.S.C.S. § 373(a) C.F. U.S. v. Blackthorne, 378 F. 3d 449, 454 (5th Cir. 2004) ("Even where a conviction for the substantive offense of federal Murder for hire fails for want of interstate travel, a defendant can be convicted of conspiring to commit the offense")

One must keep in mind that a Section 373(a) offense is complete when one corruptly "endeavors" to, and employs another to commit murder for remuneration; one need not prove that a murder actually occured. And as the Court of Criminal Appeals noted, "Remunerate encompasses a broad range of situations, including compensation for loss or suffering "and the idea of a "reward" given or received because of some act". The Court's interpretation, far from offering a surprising or far-fetched construction, stated the everyday meaning of the words used by the legislature. "Beets, 767 S.W. 2d at 734"

180 F.3d 190:: Beets v. Johnson: June 28, 1999 (5th Cir)

33

The first prong of the Murder for hire Statute have been met: In Herrera v. Collins, Justice Blackmun said that the execution of a person who can show that he is innocent comes perilously close to simple murder. Even then, Justice Blackmun wasn't factoring in a case like Fields where the prosecution knowingl intentionally, deliberately, willingly, with malice aforethoug recruited a bunch of "paid occurrence witnesses" whom engaged in a criminal conspiracy to use the Death Penalty as a murder weapon and Defrauded the Court(s) into taking away Fields liberty with intentions of taking his life; Fields' impending demise exceeds that tenfold and crossed into the territory of impending murder with premeditation.

With the death Penalty on the table there is no question what the police, prosecutors and their "witnesses" goal were; the end result would be death and they knew that, So when the prosecution "hired" these crooks to defraud the Court the prosecutor's intended for those crooks to "wield that sword" and commit murder for hire; Thus satisfying the first prong.

The second prong have been met as well; According to a letter that the real murderer, Shalaykher "Lakie" Scroggins, wrote her accomplice, Edward

34

Lee "Treyboy" Outley, somebody from the prosecution wanted one of them to lie and say that they saw Fields murder Coleman, thus inducing or trying to persuade Outley and/or Scroggins to commit murder.

Also, Chance Alexander, another inmate that Fields don't know said that a law enforcement officer working for the prosecution tried to recruit him to lie in this capital case and say that Fields confessed to him although he doesn't know Fields and have never had a conversation with him, thus inducing or trying to persuade Alexander to commit murder for hire; the second prong of section 373(a) have been met.

There are, generally speaking, two types of evidence from which the court may properly find the truth as to the facts of a case. One is direct evidence such as testimony of an eyewitness, the other is indirect or circumstantial evidence, the proof of a chain of circumstances pointing to the existence of certain facts; Now, we have a notice that the prosecution is "seeking Jailhouse testimony", dated February 2002 before the Government "hired" all of these "Paid Occurrence Witnesses"; Next we have Scroggins telling her accomplice that the prosecution want one of them to say that they

35

were "with Fields"; And Next there's Chance Alexander, A man whom states that the prosecution wanted him to lie And say that Fields confessed to him Although he don't even know Fields; Three different incidents About the Government "Seeking false And fabricated Evidence" from three different places And lor people that don't know each other; Then two years After Fields was put on Notice that the Government was "Seeking Jailhouse Testimony", the Government closes their case with nothing but Jailhouse testimony, crooks whose stories are impossible And so incredulous it defies description; (i.e) Kevin Burton whom claim that Fields was going to "rob" him, A william Hayes told Fields Not to, then Fields Just walked up to him And told him that he murdered his girlfriend. Burton waits two years to "come forward" when he's in Three Rivers Federal Prison with Christian Chae Walker whom is corresponding with the real murderer, Shalaykea "Lakie" Scroggins, then Burton claim that Fields confessed to him two weeks After the murder on November 16th And Fields was in A red four door Grand Am and Outley was in A Jaguar; Impossible! The prosecution knew the Grand Am And the Jaguar was no longer in the picture

36

After the night of the murder, the Grand Am was a two door, not a four door, the Grand Am was in the forensics lab on the 14th of November, and Oatley went to Jail on the 13th; An "honest" prosecutor would have known this, only a prosecutor with an ulterior motive and evil intent would have permitted this; The same thing stands for Homero DeLeon and the rest of the Governments "witnesses."

A guiding principle here is the fact that the Courts must be mindful that evidence like this that's outside the trial record is critical to their determination because it bears on the prosecutor's state of mind. The prosecution created a "kill zone" when they went seeking and hired these crooks to Defraud the Court and engaged in conduct that caused a situation manifesting an extreme indifference to the value of Mr. Fields' life, this Egregious abuse of governmental power severely violates Fields' interest and /or right in not being the subject of arbitrary authority.

This kind of official conduct involves the willfully illegal exercise of discretion, and it implicates Substantive due process because it affects Fields right to be free of the abuse of power; There is

37

No doubt that the major component in the Malicious prosecution of Fields is the prosecution(s) Solicitation of murder, which contributed to the Fraud On The Court.

38

## INEFFECTIVE ASSISTANCE OF COUNSEL

It's erroneous for Appellate Counsel to overlook and/or refuse to file or disregard meritorious issues, especially in a Capital Death Penalty case where their client is Actually and Factually innocent. Coranted "Fraud On the Court", And "Solicitation of Murder" isn't the "traditional" way one would file An Appeal, but the Courts have recognized that Every case is unique And what is appropriate in one case might fall short in Another; Counsel's failure to Address these points on Appeal renders them ineffective; Freels v. Hills, 843 F. 2d 958 (6th Cir. 1988) Because Counsel failed to raise the Fraud On the Court Fields' case have been improperly Adjudicated because it Allows the Conspirators to continue their Fraud, which now haunts the Appeals process. In October 2013 Fields filed A Pro Se Brief with the 5th Circuit And Although the 5th Circuit Kept the brief they refuse to consider it because "Fields have Attorney's"; This Brief lays out the conspiracy And Fraud On the Court in Intricate detail, A three-Volume Appendix Supports Every Element of Fields' claims;

39

Instead of Appellate Counsel taking Fields' Brief and Perfecting the Appeal; U.S. v. Snitz, 342 F. 3d 1154 (10th Cir. 2003), Counsel is relying on an inadequate brief that they filed that's going to cost an innocent man his life! And now that Fields have started filing Pro Se Pleadings Counsel have Stopped Communicating with Fields; Whitt v. Holland, 342 S.E. 2d 292 (W. Va. 1986). Its obvious that Fields is dedicated to proving he's innocent and his conviction and Death Sentence is Due to a Fraud On The Court; However, despite the overwhelming evidence in Support of Fields claims Appellate Counsel chose the traditional method of filing Actual Innocence and the prosecutions responses, which have No merit whatsoever, have been prevailing simply because they're supposed to be "officer's of the Court"; this have Allowed the prosecution to Continue Defrauding the Court by and through their conspiracy.

In the reality of Fields' case As A whole it's obvious that Appellate Counsel are not giving 100%. It was Fields, independently that had Someone Find William Hayes when in fact that

was Appellate Counsels duty. And instead of Counsel Attacking Jurors bias in light of the new evidence Counsel chose to take Juror(s) word At face value when the evidence undoubtedly proves it's a lie And their Assertion that they "Killed Fields because he didn't show any Emotion is An excuse to mask their bias; The Argument Should be that there is An unacceptable risk that the Jury imposed Fields' conviction And death Sentence "under the influence of passion, preJudice, or Some other Arbitrary factor" As defined by 18 U.S.C.3 3595 (c) (2)(A) And those Arbitrary And preJudicial factors include, but Are not limited to their belief that black males commit most violent crimes, or the fact that "A group of blacks" Jumped on A Jurors daughter And Son in law; Or maybe even the desire to "Even the Score" And not let Fields walk Away like the man that Killed the Juror's preacher's father "And didn't do not one day in Jail"; Although Fields is innocent And the law dictates that innocent people be Acquitted. Also. Fields had nothing to do with the Juror's daughter And Son in law being Jumped "by A group of

blacks", nor can Fields help the fact that he's a "black male" charged with a "violent crime" or the numerous other prejudices the other Jurors cited; That is the argument Appellate counsel failed to make, Along with the fact that the District Judge raised the issue that Fields had Also struck one black Juror when the Court denied Fields' Batson Claim; "The fact that the defense may have removed Some member(s) of a protected class is of no moment, because it has no bearing on the prosecutor's intent As to the individual Jurors the prosecutor's removed. See, e.g., Holloway v. Horn, 355 F. 3d 707, 729 (3d Cir. 2004)" ("defense strikes Are irrelevant to the determination of whether the prosecutor has engaged in discrimination.)

I Like my Attorney's, but "Liking them" isn't going to save my life And prove my innocence; For that reason I'm filing these issue(s).

# JURISDICTION

This is a Death Penalty case; A case that involves severely egregious and illegal conduct perpetrated against the petitioner by government officials; Ordinarily the 5th Circuit would be the forum to Adjudicate the merits of this claim, but recently, after attempting to get the 5th Circuit to accept a Pro Se Actual innocence brief, freestanding or as a supplement Petitioner was informed by the 5th Circuit that they would not accept anything Petitioner file "because Petitioner have Attorney's". Because of the nature of this Rule 60 Motion and the unimaginable and unreversable consequences that failure to Adjudicate the merits will inspire the Supreme Court is my last and only alternative.

The Supreme Court has recognized that the "Cause and prejudice" requirement has an "Actual Innocence" Exception, sometimes known by other names such as the "fundamental miscarriage of Justice" Exception. In Murray v. Carrier, 477 u.s. 478, 91 L.Ed. 2d 397,

42

106 S.Ct. 2639 (1986), the Supreme Court held that, in order to invoke this Exception, A federal Habeas Corpus petitioner is required to show that a Constitutional violation has "probably" resulted in the conviction of one who is Actually innocent; Because of the nature of this Rule 60 Motion And the facts surrounding it 28 U.S.C.§ 2255 (even if the 5th Circuit would Entertain it) may be inadequate And /or ineffective to test the legality of petitioner's detention because of the criminal Acts committed by government Authoritie(s). In Addition to that the 5th Circuit's refusal to Entertain Any Pro Se filings from Petitioner leaves the Supreme Court As my only "gateway" to review.

In cases like this one in which there is An, or A denial of rights under the federal Constitution, A court of Appeals is not bound by the conclusions of lower Courts, but will re-Examine the evidentiary basis on which those conclusions Are founded; Kliemotko v. Maryland, 340 U.S. 268, 271, 71 S.Ct. 325, 327, 95 L.Ed 267 (1951). To demonstrat A substantial Showing of the denial of A Constitutional right, A prisoner must Show that

the "issues are debatable among Jurist of reason." Hill v. Johnson, 210 F. 3d 481, 484 (5th Cir. 2000). "The Supreme Court has explained that "the reaches of the first Amendment are ultimately defined by the facts it is held to Embrace, and we must thus decide for ourselves whether a given course of conduct fails on the near or far side of the line of constitutional protection"; Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 567, 115 S. Ct. 2338, 2344, 132 L. Ed. 2d 487 (1995) Fields' Rule 60 Motion only outlines a "fraction" of the egregious and illegal Conduct that contributed to this malicious prosecution and even that is overwhelming. A Death Sentence may be reversed if the Sentencing Jury was influenced or misled by improper evidence Arguments, or instructions; Dawson v. Del., 503 U.S. 159, 163 (1992) In Dawson v. Delaware, the Court found it is clear that, "when a State Court Admits Evidence that is "So unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief; Id. At 179 (quoting Payne

v. Tenn., 501 u.s. 808, 825 (1991). Fields can't get that relief unless the Supreme Court Entertain this motion. It's clear that reversal is required because prosecutor's misconduct, both egregious and illegal, seriously affected fairness, integrity and/or reputation of trial/Judicial proceedings. There is no doubt that had the prosecution not Defrauded the Court we wouldn't be here today. "By the protection of the law, human rights are secured; withdraw that protection and we are at the mercy of wicked rulers, or the clamors of an excited people; Walberg v. Israel, 766 F. 2d 1071, 1078 (7th Cir.) (Posner I.), cert. denied, 474 u.s. 1031 (1985) For the reasons stated Above the Supreme Court has Jurisdiction.

46

Respectfully / Sincerely

*Sherman Lamont Fields*

Sherman Lamont Fields  2/17/14

#15651-180

U.S.P. Terre Haute

P.O. Box 33

Terre Haute, Indiana
47808