APP-21

No. 13-70025

demonstrating that the government "directed or otherwise knowingly exploited" DeLeon to act as a government agent. Accordingly, jurists of reason would not debate the district court's rejection of Fields's *Massiah* claim. *See United States v. Cutno*, 431 F. App'x 275, 280 (5th Cir. 2011) (rejecting *Massiah* claim where the "district court found no evidence to demonstrate that [witness] was acting at the Government's behest at the time that [defendant] made his confession to [witness]").

### E. Actual Innocence

Fields argues that he has "set forth specific factual allegations supporting his actual innocence of the murder of Suncerey Coleman." He contends that: forensic evidence could establish his innocence, and seeks additional DNA testing; Scroggins and Outley "offered patently false testimony at trial"; and the testimony of jailhouse informants was false and unreliable. The district court rejected each of Fields's contentions. Because we conclude that reasonable jurists would not debate the district court's holding, we deny a COA.

### 1. Applicable Law

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, Rule 6(a) of the Rules Governing § 2255 Cases permits discovery "for good cause." Rule 6 of the Rules Governing 28 U.S.C. § 2255; *see also Bracy*, 520 U.S. at 904 (discussing Rule 6 of the Rules Governing 28 U.S.C. § 2254).[18] A petitioner demonstrates "good cause" under Rule 6(a) "where specific allegations before the court show reason to believe

---

[18] Because Rule 6 of the Rules Governing § 2254 Cases is nearly identical to Rule 6 of the Rules Governing § 2255 Cases, and both use the same "good cause" standard, courts have looked to cases interpreting the former when applying the latter. *See, e.g., Lafuente v. United States*, 617 F.3d 944, 947 (7th Cir. 2010); *Pizzuti v. United States*, 809 F. Supp. 2d 164, 175–76 (S.D.N.Y. 2011).

51

## No. 13-70025

that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09 (internal quotation marks omitted). We have noted that Rule 6 of the Rules Governing § 2254 petitions "does not authorize fishing expeditions." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994). "[T]he district court's decision regarding the availability of discovery is . . . committed to the sound discretion of the district court, and is reviewed under the abuse of discretion standard." *Clark v. Johnson*, 202 F.3d 760, 765–66 (5th Cir. 2000).

"'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *see also Moore*, 534 F.3d at 465 n.19. "Rather, a claim of actual innocence is a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Dowthitt*, 230 F.3d at 741 (internal quotation marks omitted). For a petitioner to obtain relief, "the evidence must establish *substantial* doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice unless his conviction was the product of a fair trial." *Id.* (internal quotation marks omitted).

### 2. Analysis

We conclude that reasonable jurists would not debate the district court's rejection of Fields's actual innocence claim, and deny a COA. Initially, we note that our caselaw does not recognize freestanding actual innocence claims. *Dowthitt*, 230 F.3d at 741; *Moore*, 534 F.3d at 465. The district court rejected Fields's claim, finding it not cognizable. To the extent Fields makes a

52

No. 13-70025

freestanding claim that he is entitled to habeas relief because he is actually innocent, reasonable jurists would not debate the district court's holding.[19]

### a. Forensic evidence

Fields contends that his § 2255 petition "established that no physical evidence was presented at trial that connected him to the murder of Suncery Coleman." He offers several "examples of situations where the forensic evidence he specifically requested in his DNA Motion could establish his innocence by contradicting the unreliable testimony upon which he was convicted."[20] The district court rejected Fields's argument, noting "there is no requirement that [Fields] be linked to the murder through a positive DNA

---

[19] We also note that in Fields's brief, he only provides record cites to his habeas petitions in the district court (which, in turn, rely on earlier petitions), and at no point directs the court to evidence in the record or trial transcript that supports his claims. As a result, he may have waived his arguments by failing to adequately brief them. *See* Fed. R. App. P. 28(a)(8)(A); *United States v. Lopez*, 426 F. App'x 260, 263 (5th Cir. 2011) (unpublished); *see also United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

[20] Fields offers the following examples:

- Scroggins "testified that Fields had blood on his clothes and shoes the night of Coleman's death," but the red Pontiac Grand Am that Fields drove that evening "was forensically examined and tested, [and] produced no inculpatory evidence linking Fields to the crime."
- "The area where Coleman's body was located was covered in huge thorns that would have left cuts on anyone in that area, yet Fields, who was wearing shorts that night, was uninjured."
- "The blue Jaguar that the Government told the jury Edward Outley III and Scroggins were driving the evening of the murder actually had been wrecked and totaled in 1998."
- "The gold Jaguar that Outley and Scroggins were actually driving the evening of the murder was never forensically tested because Outley and Scroggins conspired to hide the car by falsely telling investigators that they were in a blue, rather than a gold vehicle."
- "The detective who took buccal swabs and a blood sample from Fields the night he was arrested falsely claimed to have found Fields'[s] blood on a .22 caliber gun (which was not alleged to be the murder weapon), but Fields had no injuries that would have left his blood on that weapon that night."

53

## No. 13-70025

test," and concluding that, "even assuming that the outcome of any DNA test would be favorable to [Fields], he has not established that such outcome would raise a reasonable probability of his actual innocence."

Fields argues that the district court ignored his factual allegations and erred in denying him relief. We conclude that reasonable jurists would not debate the district court's holding, because Fields's allegations are speculative and conclusory, they do not give "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief," *Bracy*, 520 U.S. at 908–09, and they therefore do not show "good cause" as required under Rule 6(a).

Fields's first "example," his observation that the red Pontiac Grand Am he drove the evening of Coleman's murder "was forensically examined and tested, [and] produced no inculpatory evidence linking Fields to the crime," does not support his argument that he is entitled to discovery. Fields cannot show that his claim is debatable simply by pointing to a lack of physical evidence on one issue; this is not the type of "specific allegation[]" that would give us "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09. This is particularly true, we note, when there was compelling evidence of guilt presented at trial. Moreover, Fields does not acknowledge that at trial, there was testimony that the Grand Am "looked like it had been detailed [and] wiped down." When the investigating team submitted the car for examination, they did not expect anything to be found, "given how clean the car" was. *See also* January 29, 2004 Trial Transcript (testimony of James Blair) (stating that the car had "suspicious stains that could possibly be blood").

Fields's observation that the "[t]he area where Coleman's body was located was covered in huge thorns that would have left cuts on anyone in that area, yet Fields, who was wearing shorts that night, was uninjured," is

54

Case 2:16-cv-00418-JPH-MJD    Document 1-21    Filed 10/26/16    Page 6 of 6 PageID #: 317

No. 13-70025

similarly unhelpful. Again, Fields cannot establish that the district court's rejection of his discovery claim is debatable simply by noting the absence of a particular piece of evidence he asserts should exist—here, cuts on Fields's legs—without any "specific allegations." *See Bracy*, 520 U.S. at 908–09. Fields provides no factual or record support for his conclusory statement that he was uninjured. (Additionally, Fields offers no explanation for the logical response that he could have cut his legs on thorns during the November 6th murder of Coleman, and that those cuts could have healed by his November 24th capture, more than two weeks later.)

Fields's remaining examples amount to conclusory assertions, with no specificity; he does not indicate how these assertions would establish his entitlement to discovery. He also provides no support for his contention that "[t]he detective who took buccal swabs" from him "falsely claimed to have found Fields'[s] blood on a .22 caliber gun." Accordingly, Fields's "examples" fail to cause reasonable jurists to debate the district court's rejection of Fields's claim.

b. DNA testing

The district court rejected Fields's argument that he was entitled to DNA testing, holding that Fields "fails to show how any new DNA or forensic evidence testing would constitute direct evidence of his innocence." The court explained that, "[g]iven the compelling evidence of guilt presented at trial, the Court does not conclude that any DNA testing would raise a reasonable probability of [Fields]'s actual innocence."

We conclude that reasonable jurists would not debate the district court's holding, because we are not persuaded by Fields's arguments that additional DNA testing should be performed on hairs found on Coleman's clothing, a fingernail clipping from Coleman, and Coleman's body and clothing. Fields fails to argue that he satisfies the requirements of 18 U.S.C. § 3600. "To secure court ordered testing of DNA an applicant must satisfy each of the ten

55