APP-34

knew that that was done then.

And the other question concerns what the Court would require in the way of information to issue a writ of attachment or a material witness warrant for a witness that -- I've been advised by -- Mr. Youngblood, who's in the courtroom, has told' him one story and the government gave the name of this witness as Brady material and said that she knew something exculpatory. He went back to her. She then admitted to the investigator she told him a lie and that the truth was she didn't have exculpatory information. She told him that, but then she said, "I'm not talking to you. I'm not going to accept any subpoenas. I'm not coming to court." And he's tried to serve her now four or five times. And we just need to know what the Court would need in order to issue a writ of attachment for that witness if we're unable to get her in otherwise.

THE COURT: Can you enlighten me somewhat on what her testimony might be?

MR. PETERSON: Yes, sir. Her testimony is going to be that one of the star government witnesses in this case, Shalaykea Scroggins, had a heated exchange in words and a motive to have done harm to the victim in this case. And the defense -- one of the defenses in this case is -- or in Mr. Fields' defense if he represents himself and part of our defense is going to be that he did not commit the murder that he's been alleged of but Shalaykea Scroggins did do so because

of the motive of the ill will she bore towards the victim because they were competitors for Mr. Fields' attention or affection.

THE COURT: Okay. Is her location something that should be -- could she be readily located by the marshals?

MR. PETERSON: If I may ask Mr. Youngblood to respond to that.

THE COURT: Sure.

MR. PETERSON: Mr. Youngblood, if you'd step forward.

MR. YOUNGBLOOD: Your Honor, she has a current City of Waco address, 2513 South 26th Street. I've made contact with her in the past at that location. I talked to a black male at that residence yesterday who indicated that that was her residence and she contacted me as per a business card I gave her. Also I spoke with her mother last night at that location indicating that she did live there but she was not going to be there yesterday evening.

THE COURT: So you've spoken to her on the telephone but not in person?

MR. YOUNGBLOOD: Not in person at this time.

MR. PETERSON: In the past he has.

MR. YOUNGBLOOD: In the past I've spoken to her in person.

THE COURT: Well, I don't understand why you don't think that she could be served with a subpoena at some point between now and the time she'd be needed, which wouldn't be next week,

I wouldn't think.

MR. YOUNGBLOOD: Well, the only thing she's indicated she's not going to be here and she's not going to accept and she's going to be --

THE COURT: Well, I don't know what you mean by "accept."

MR. YOUNGBLOOD: Well --

THE COURT: If she's served with a subpoena, she's served with a subpoena. She doesn't have an option to accept it or not, if I'm correct.

MR. YOUNGBLOOD: That's true, sir, but her appearance --

THE COURT: So you're saying she's not going to comply with it?

MR. YOUNGBLOOD: That's my belief that she will not comply with it.

MR. PETERSON: Your Honor, if I may.

THE COURT: Thank you, Mr. Youngblood.

MR. YOUNGBLOOD: Okay.

MR. PETERSON: Our intent was to ask Mr. Youngblood to continue to serve her. Then after she's served if she didn't appear as instructed in the subpoena that then we would then come to the Court and request the writ of attachment and I wanted to bring this to the Court's attention that it was an issue.

THE COURT: Well, doing it in that course of events would be completely normal. If somebody doesn't comply with a