# EXHIBIT A

Case 2:16-cv-00418-JMS-MJD Document 1 Filed 10/26/16 Page 1 of 55 PageID #: 1

IN THE UNITED STATES
DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA

FILED
DISTRICT COURT
NAPOLIS DIVISION

**16 OCT 26 PM 4:51**

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

SHERMAN LAMONT FIELDS,

        Petitioner,

v.

ATTORNEY GENERAL LORETTA LYNCH,

        Respondent.

# 2:16-cv-0418 JMS -MJD

---

PETITION FOR A WRIT OF HABEAS CORPUS

---

THIS IS A CAPITAL CASE
(DEATH PENALTY)

SHERMAN LAMONT FIELDS
(PRO SE)
#15651-180
U.S.P. Terre Haute
P.O. Box 33
Terre Haute, Indiana
        47808

CAPITAL CASE
DEATH PENALTY

## QUESTION(S) PRESENTED

BLACK'S LAW DICTIONARY defines a " WRIT OF CONSPIRACY " as " A Writ which anciently lay against persons who had conspired to injure the plaintiff, under the same circumstances which would now give him an action on the Case. It did not lie at common law, in any case, except when the conspiracy was to indict the party either of treason or felony; all the other cases of conspiracy in the books were but actions on the case."

1). Fields's case is "Extraordinary" not only because the prosecution conspired to indict him for a felony, but also because the conspiracy continued throughout the trial and the appellate process with intentions of murdering Fields via lethal injection, in the pretense of justice; Do the facts herein justify A WRIT OF CONSPIRACY?
   And in the alternative a § 2241?

2). When a Petitioner diligently pursue his Right to file a Pro Se brief and is thwarted every step of the way to the appeals conclusion will this Court hear and/or   decide the merits of the petition?

3). There is currently no precedent set directing the Court(s) in a case where both the District Judge and an Appellate Judge was bias. Nor is there any precedent set where the prosecution deliberately, knowingly, intentionally, and willfully with malice aforethought blatantly committed criminal act(s) to obtain and sustain a prisoners conviction and Death sentence. But there is Precedent set in a case where is an Actual or Constructive Fraud, or an intentional perversion of the truth. Being that both the District Judge and the Appeal Judge was bias, the prosecution committed criminal act(s) to obtain and sustain petitioner's conviction and Death sentence and then Defrauded the Grand Jury, the petit Jury, The District Court, the 5th Circuit, and the Supreme Court on Certiorari, and the evidence presented in this petition meets Black's Law Dictionary's definition of the "Extraordinary" case will this Court hear and/or decide the merits of this petition?

4). In Ring v. Arizona, 536 U.S. 584, 614, 122 S.Ct. 2428, 153 L.ED. 2d 556 (2002) the Court held that "without adequate safeguards the constitutional prohibition against cruel and unusual punishments would forbid the use of the Death Penalty."

I

Fields' case exposes the debilitating flaws in the Antiterrorism and Effective Death Penalty Act, and the Death Penalty itself and proves that the safeguards put in place in Gregg V. Georgia and its progency are inadequate to protect against wrongful conviction.

Due to the facts herein this petition is it time for the Court to reexamine the legality and Constitutionality of both the Antiterrorism and Effective Death Penalty Act and the Death Penalty?

And will this Court use its Supervisory Authority to hear and/or decide the merits of this petition on the issues?

## PARTIES TO THE PROCEEDINGS

Petitioner is Sherman Lamont Fields, a prisoner in custody under sentence of a Court established by an Act of Congres claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution.

Respondent is the Attorney General.

## TABLE OF CONTENTS

QUESTION(S) PRESENTED............................................ I, II

PARTIE(S) TO THE PROCEEDINGS.................................. III

TABLE OF CONTENTS............................................... IV, V

TABLE OF AUTHORITIES.......................................... VI-IX

CONSTITUTIONAL AND STATUTORY PROVISIONS.................. IX

JURISDICTION..................................................... X

STATEMENT OF THE CASE.......................................... 1, 2

REASON(S) FOR GRANTING THE WRIT............................

1). This Court should Grant this "Extraordinary Writ" because Fields have a Constitutional Right to file a Pro Se Brief and Motion(s) yet he was Unconstitutionally denied that Right................... 3-6

2). This Court should Grant this "Extraordinary Writ" because the safeguards put in place in Gregg v. Georgia, 428 U.S. 153, 49 L.Ed. 2d 859, 96 S.Ct. 2909 (1976) and its progency failed to protect Fields from Judicial bias at trial and on appeal.............................. 7-15

3). This Court should Grant this "Extraordinary Writ" because (a) The 5th Circuit's refusal to accept Fields' timely Pro Se Brief allowed the prosecution's violation of Brady v. Maryland to go unadjudicated; And (b) The safeguards put in place in Gregg v. Georgia and its progency failed to protect Fields from the Prosecution's violation of brady. ...............................................................16-17

4). This Court should Grant this "Extraordinary Writ" because minus the Constitutional violation(s) Fields is Actually Innocent, and failure to do so would result in a gross miscarriage of Justice...17-19

5). This Court should Grant this "Extraordinary Writ" because the Safeguards put in place in Gregg V. Georgia and its progency failed to protect Fields from criminal act(s) perpetrated against him by the United States Government............................................. 19-31

6). This Court should Grant this "Extraordinary Writ" because the safeguards put in place in Gregg V. Georgia and its progency failed to protect Fields from Fraud On the Court(s)............31-34

7). This Court should Grant this "Extraordinary Writ" because the safeguards put in place in Gregg V. Georgia and its progency to protect against wrongful conviction failed to protect Fields from a conviction and death sentence influenced by passion, prejudice and/or other arbitrary factors........................................................ 34-36

8). The Antiterrorism and Effective Death Penalty Act is Illegal and Unconstitutional................................................... 36-39

9).  The Death Penalty is Illegal and UnConstitutional......39-43

CONCLUSION...............................................43-44

## TABLE OF AUTHORITIES

CASES                                                                    PAGE

Abu-Ali Abdur' Rahman v. Ricky Bell, 154 L.Ed. 2d 501, 537 U.S. 88(2002). 34

Adarand, 515 U.S. at 227, 115 S.Ct. 1097, 132 L.Ed 2d 158................. 13

Allen v. Chicago Transit Auth., 317 F.3d 696, 703 (7th Cir. 2003)........ 33

Andrade v. Chojnacki, 338 F.3d 448 (July 14, 2003)....................... 7

Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369, 101
                                      L.Ed. 2d 228 (1988)............ 44

Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed. 2d
                                      1090 (1983)................... 34

Beets, 767 S.W. 2d at 734. "180 F.3d 190::Beets v. Johnson;June 28, 1999
                                      (5th Cir.)......... 22

Brady v. Schoming, 286 F.3d at 410-11................................... 12,

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963).... 16

Caperton v. A.T. Massey Coal Inc.,__U.S.__ 129 S.Ct. 2252, 2259, 173 L.Ed.
                                      2d 1208 (U.S. 2009)..................12

Chambers v. NASCO, Inc., 501 U.S. 32, 44, 115 L.Ed. 2d 27, 111 S.Ct. 2123
                                      (1991)....................34

Chicago Tribune Co. v. Bridgestone/Firestone Inc., 263 F.3d 1304-1309
                                      (11th Cir. 2001).......12

Clark v. Quarterman, 457 F.3d 441, 443 (5th Cir. 2006)....................14

County of Sacramento v. Lewis, 523 U.S. 833, 846-847, 118 S.Ct. 1708, 140
                                      L.Ed. 2d 1043 (1998)....................38

Curran v. Delaware, 259 F.2d 707, 712-713 (3d Cir. 1958).................. , 30

DeFunis v. Odegaard, 416 U.S. 312, 342, 94 S.Ct. 1204, 40 L.Ed. 2d 164(1974) 13

Duest v. Singletary, 967 F.2d 472, 482 (11th Cir. 1992) vacated on other
                                      grounds, 507 U.S. 113 S.Ct. 1940, 123 L.Ed. 2d 647(1993) 19

Dunnigan, 507 U.S. at 94, 113 S.Ct. at 1116.............................. 22

Fields at ( 483 F.3d 313 )...............................................

Frederick v. Kirby Tankship Inc., 205 F.3d at 1287 (11th Cir. 2000)........ 34

Furman v. Georgia, (1972) 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726.....passim

Gardens v. Stephens, Sup. Ct. #13-546 (2013) cert. pending (5th Cir. 8/2/13) 19

Gardner v. Florida, 430 U.S. 349, 357-358, 97 S.Ct. 1197, 51 L.Ed. 2d 393
                                      (1977)......................... 40

Giglio v. United States, 405, 150, 92 S.Ct. 763, 766, 31 L.Ed. 2d 104(1972) 30

Godfrey v. Georgia, 64 L.Ed. 2d 398, 446 U.S. 420........................... 41

Gregg v. Georgia, 428 U.S. 153, 49 L.Ed. 2d 859, 96 S.Ct. 2909 (1976)....... passim

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 88 L.Ed. 1250, 64
                                      S.Ct. 997 (1944)............... 34

CASES                                                                          PAGE

Herrera v. Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed. 2d
                                   203 (1993)................... 22

Hinton v. Alabama, 188 L.Ed. 2d 1, __U.S.__ ......................... 15

In re Davis, No. CV 409-130 (8/24/10)............................... 19

In re Murchison, 349 U.S. at 136................................... 13

Johnson, 543 U.S., at 505, 125 S.Ct. 1141, 160 L.Ed. 2d 949......... 13

Kennedy v. Louisiana, (2008) 554, U.S. 407, 128 S.Ct. 2641, 171 L.Ed.
                                   2d 525......... 42

Kuhlman v. Wilson, 477 U.S. at 454 & n.17, 106 S.Ct. at 2627 & n.17.. 19

Kyles v. Whitley, 514 U.S. 419, 435, 131 L.Ed. 2d 490, 115 S.Ct. 1555
                                   (1995)..................... 17, 30

Lackey v. Texas, 514 U.S. 1045, 115 S.Ct. 1421....................... 41

Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1312 (11th Cir.2000) 33

Liljeberg v. Health Service Acquisition Corp., (1988) 486 U.S. 847, 100
                                   L.Ed. 2d 855, 108 S.Ct. 2194........ 13

Maldonado v. Thaler, 625 F.3d 229, 236 (5th Cir. 2010)................. 14

Marbury v. Madison, 5 U.S. 137, 1 Cranch  137, 176, 2 L.Ed 60 (1803)... 37, 38,

Melendez-Diaz v. Massachusetts, 557 U.S. 305, 319, 129 S.Ct. 2527, 174
                                   L.ED. 2d 314 (2009)................... 15

Mclamore v. South Carolina, (1972)-US-, 34 L.Ed 2d 189, 93 S.Ct. 240... 43

McNabb v. U.S., 318 U.S. 332, 347, 87 L.Ed 819, 63 S.Ct. 608............. 29

Metro Broadcasting, Inc. v. FCC, 497 U.S. 547, 609, 110 S.Ct. 2997, 111
                                   L.Ed. 2d 445 (1990)................... 13

Mobley v. Head, 306 F.3d 1096, 1100-1105 (CA11 2002)................... 34

Mooney v. Holohan, 294 U.S. 103, 113 (1935)........................... 19

Napue v. Illinois, 360 U.S. 264, 269, 3L.Ed. 2d 1217, 79 S.Ct. 1173
                                   (1959)........... 31

Neder v. U.S., 527 U.S.1, 25, 119 S.Ct. 1827, 1841, 144 L.Ed.2d 35
                                   (1999))......... 33

Palmore v. Sidoti, 466 US 429, 433, 80 L.Ed. 2d 421, 104 S,Ct. 1879
                                   (1984).......... 13

Pfizer Inc. v. Int'L Rectifier Corp., 538 F.2d 180, 195 (8th Cir.1976),
           cert. denied, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed. 2d
                                   751 (1977)........ 34

Pippin v. Dretke, 434 F.3d 782 (5th Cir. 2005)......................... 14

Pyle v. Kansas, 317 U.S. 213, 87 L.Ed. 214, 63 S.Ct. 177 (1942)........ 30, 35

Ring v. Arizona, 536 U.S. 584, 614, 122 S.Ct. 2428, 153 L.Ed. 2d 556
                                   (2002)............. I, 40

**CASES**                                                                    **PAGE**

Rozier v. ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978)............. 3 3, 34

Sawyer v. Collins, 986 F.2d 1493, 1497 (5th Cir. 1993).................... 34

Sawyer v. Whitley, 505 US 333, 120 L.Ed. 2d 269, 112 S.Ct. 2514 (1992)..... 44

Schlup v. Delo, 513 U.S. 298, 314-16, 130 L.Ed. 2d 808, 115 S.Ct. 851(1995) 19 , 39

Scutieri v. Paige, 808 F.2d at 794 (11th Cir. 1987)....................... 34

Smith v. Black, 904 F.2d 950, 967 (5th Cir. 1990), vacated, 503 U.S. 930,
          112 S.Ct. 1463, 117 L.Ed. 2d 609 (1992)......................... 17

Smith v. Kemp, 715 F.2d 1459, 1463 (11th Cir.), cert. denied, 464 U.S. 1003,
          104 S.Ct. 510, 78 L.Ed. 2d 699 (1985)......................... 1 4

Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.ED. 2d 367 (1992)... 17

Thomas v. Gen. Motors Acceptance Corp., 288 F.3d 305, 306-07 (7th Cir, 2002) 33

Trop v. Dulles (1958) 356 US 86, 2 L.Ed. 2d 630, 78 S.Ct. 590.............. 43

U.S. v. Auten, 632 F.2d 478, 481 (5th Cir. 1980).......................... 16

U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.ED. 2d 481 (1985)........ 16

U.S. v. Blackthorne, 378 F.3d 449, 454 (5th Cir. 2004).................... 2 2

U.S. v. Bell, 577 F.2d 1313, 1315 p.2 (5th Cir. 1978), cert. denied, 440 U.S.
          946, 99 S.Ct. 1422, 59 L.Ed. 2d 634 (1979).................... 22

U.S. v. Cardwell, 433 F.3d 378, 390, 91 (4th Cir. 2005)................... 2 2

U.S. v. Chiavola, 744 F.2d 1271, 1274 (7th Cir. 1984).................... 29

U.S. v. Como, 53 F.3d 87, 90 (5th Cir. 1995).............................. 17

U.S. v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed. 2d 445
                                          (1993)......................... 30

U.S. v. Fields, 483 F.3d 313 (5th Cir. 2007)............................. 1, 3 ,35

U.S. v. Hasson, 333 F.3d at 1270-71...................................... 3 3

U.S. v. Lanford, 838 F.2d 1351, 1355 (5th Cir. 1988)..................... 16

U.S. v. Moore, 525 F.3d 1033 (11th Cir. 2008)............................ 19

U.S. v. Percel, 553 F.3d 903 (Dec. 23, 2008)............................. 19

U.S. v. Razo-Leora, 961 F.2d 1140, 1148 n.6 (5th Cir. 1992)............... 2 2

U.S. v. Sutherland, 463 F.2d 641, 645 (5th Cir.), cert. denied, *1569409 U.S.
          1078, 93 S.Ct. 698, 34 L.Ed. 2d 668 (1972)..................... 22

U.S. v. Walters, 351 F.3d 159, 169 (5th Cir. 2003)....................... 16

Walberg v. Israel, 766 F.2d 1071, 1078 (7th Cir.) (Posner J.), cert. denied,
          474 U.S. 1031 (1985).......................................... 44

Wedra v. Thomas, 671 F.2d 713, 717 n.1 (2d 1982)......................... 30

Weems v. U.S., (1910) 217 US 349, 54 L.Ed. 793, 30 S.Ct. 544.............. 4I, 43,

Williams v. Griswald, 743 F.2d 1533, 1541 (11th Cir. 1984)............... 30

Williams v. Taylor, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed. 2d 389
                                          (2000)......................... 14

CASES                                                                    PAGE

Young v. Dretke, 356 F.3d 616, 623 (5th Cir. 2004)..................... 14, 15

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. V

U.S. Const. Amend. VIII

U.S. Const. Amend. IX

U.S. Const. Amend. XIV

## STATUTES AND RULES

28 U.S.C. § 2255.................................................................... passim

28 U.S.C. § 2241.................................................................... I, X

18 U.S.C. § 1651.................................................................... X

18 U.S.C. § 371 (1982)............................................................. 2, 22

18 U.S.C. § 373(a)................................................................. 2, 22

18 U.S.C. § 1621.................................................................... 2, 22

18 U.S.C. § 1622.................................................................... 2, 22

18 U.S.C. § 3595(c)(2)(a).......................................................... 31

28 U.S.C.S. 2254(e)(1)............................................................. 36,

U.S. Const., Art. III § 1.......................................................... 29

Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat. 737,
                    15 U.S.C.S. 78u-(4)(b)(1),(2)............................... 33

RULE 20............................................................................ X

## OTHER

Garrett & Neufeld, Invalid Forensic Science Testimony and Wrongful Convictions.
95 Va. L. rev. 1, 14 (2009)....................................................... 15

www.innocenceproject.org/content/Cameron_Todd_Willingham_Posthumous_
Pardon_Filing_Documents.php....................................................... 38

www.lawnorthwestern.edu/wrongfulconvictions/How Snitch Testimony sent Randy
Steidl and other innocent Americans to Death Row................................. 41

Chambers v. Ericksen, 744 F.2d 628, 630 (8th Cir. 1984), cert. denied, 470 U.S.
1008, 84 L.Ed. 2d 387, 105 S.Ct. 1368 (1985)..................................... 5

Price v. Johnson, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948)............. 5

U.S. v. Sellner, 2014 BL 350656, 8th Cir., No. 13-3794, 12/15/14................. 5

## PETITION FOR A WRIT OF HABEAS CORPUS
## AND/OR A WRIT OF CONSPIRACY

Petitioner Sherman Lamont Fields requests that this Court issue a writ of habeas Corpus or, in the alternative a Writ of Conspiracy.


### JURISDICTION

The jurisdiction of this Court is invoked under 28 U.S.C. § 1651 and 2241

### CONSTITUTIONAL PROVISION(S) INVOLVED

The 5th Amend. to the U.S. Const. provides: No person shall be held to answer for a capital, or other infamous crime, nor be deprived of life, liberty, or property without due process.

The 8th Amend. to the U.S. Const provides: Excessive bail shall not be required. nor cruel and unusual punishments inflicted.

The 9th Amend. to the U.S. Const. provides: The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

The 14th Amend. to the U.S. Const. provides: No State shall...deprive any person of Life, Liberty, or property without due process of law; nor deny any person within its jurisdiction the equal protection of the laws; No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States,

28 U.S.C. § 1651 provides: (a). The Supreme Court and all Courts extablished by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b). An alternative writ or rule nisi may be issued by a Justice or Judge of a Court which has jurisdiction.

RULE 20 provides: Issuance by the Court of an extraordinary writ authorized by 28 U.S.C. § 1651(a) is not a matter of right, but of discretion sparingly exercised. To justify the granting of any such writ, the petition must show that the writ will be in Aid of the Court's appellate jurisdiction, that exceptional circumstances warrant the exercise of the Court's discretionary powers, and that adequate relief cannot be obtained in any other form or from any other court.

X

## STATEMENT

Petitioner Sherman Lamont Fields was convicted in January 2004 for escape, Conspiracy, Using and Carrying a firearm causing death; Using and carrying a firearm during Escape ( a crime of violence; Carjacking; Using and carrying a firearm during Carjacking ( which is also a crime of violence ); And Felon in possession of a firearm. In total petitioner was sentenced to Death and to a collective 600 months imprisonment by the U.S. District Court for the Western District of Texas ( Waco Division ).

A divided panel of the 5th Circuit affirmed Petitioner's conviction and death sentence. See United States v. Fields, 483 F.3d 313 (5th Cir. 2007). The Supreme Court denied certiorari review. See Fields v. United States, 552 U.S. 1144 (2008). Accordingly petitioner remains in the Custody of Warden Charles Daniels at the U.S. Penitentiary in Terre Haute, Indiana.

Counsel for petitioner filed a § 2255 motion challenging his conviction. The motion did not include the allegation(s) of the deliberate, knowing, intentional and willful violation of criminal act(s) committed by the prosecution.

As soon as Counsel sent petitioner a copy of the § 2255 motion petitioner informed the Court that the petition was "incomplete". The Court didn't respond.

When the District Court denied Counsel's § 2255 petition Judge Walter Smith, Jr. also informed Fields that he will not be allowed to proceed pro se.

Petitioner filed a timely pro se brief and motions to the 5th Circuit. Fields filed a freestanding Actual innocence brief, a motion to Bar the prosecution and their witnesses from having any contact due to their ability to continue committing criminal act(s) against petitioner, a motion for Discovery and a motion to Seal; The 5th Circuit refused to Consider Petitioner's brief and Motions " Because petitioner had attorney(s)". Petitioner informed the 5th Circuit that he would "relieve attorney's of their duty", he just wanted his brief and motions heard. Again the 5th Circuit refused.

Counsel for Petitioner appealed the District Court's ruling to the 5th Circuit. As soon as Petitioner saw the appeal he asked the 5th Circuit to reconsider the brief and motions that he filed pro se, stating that he "strenuously object" to the appeal counsel filed. Again the 5th Circuit refused.

Petitioner Kept trying to file his pro se brief and motions to no avail.

The 5th Circuit ultimately denied Counsel's request for a certificate of appeallability. See United States v. Fields, 761 F.3d 443 (5th Cir. 2014). The Supreme Court denied certiorari review. See Fields v. United States, 135 S.Ct. 2803 (2015) Now Petitioner is destined to be illegally murdered via lethal injection

1

based on evidence and false facts that would make the conviction and Death sentence of another prisoner in Petitioner's situation null and void.

Now petitioner is in a dangerously precarious position. Since 1996, § 2255 has contained a provision which bars prisoners from filing second or successive § 2255 petitions except in two narrow circumstances: (1) when newly discovered evidence would establish by clear and convincing evidence that the prisoner is not guilty of the offense for which he was convicted, or (2) when the petition presents a new rule of constitutional law, made retroactive by the Supreme Court to cases on collateral review, that was unavailable to the petitioner at the time of his first petition. Arguably, Petitioner does not meet those requirements. However petitioner believes that this particular petition tests the bounds of Constitutional limits and should not be held to the standard of § 2255(e) and the like because it meets the threshold of " the extraordinary case" in a different light. Thus Petitioner, under the Constitution cannot and should not be shut out of this Court.

Plaintiff is innocent and contends that District Judge Walter Smith Jr., and 5th Circuit Judge Edith Jones were both effectively bias and illegally and Unconstitutionally exhausted Petitioner(s) appeals, both Judges made findings of fact that is balatantly false and unreasonable, and either knowingly or unknowingly aided and abetted the prosecution(s) criminal act(s) perpetrated against petitioner.

Plaintiff also contends that the prosecution violated the criminal act(s) of Title 18 U.S.C. § 371: Conspiracy; Title 18 U.S.C. § 373(a): Solicitation of murder; Title 18 U.S.C. § 1621: Perjury; Title 18 U.S.C. § 1622: Suborning perjury; And then defrauded the Court(s) to obtain and sustain Plaintiff's conviction and Death Sentence.

Plaintiff also contends that the Court(s) refusal to consider Petitioner's Pro Se brief led to the illegal and Unconstitutional exhaustion of his appeals, Resulted in the appeals being denied based on an unreasonable determination of the facts, and allowed petitioner's issues to be illegally and Unconstitutionally barred.

Plaintiff also contends that the facts of his case undoubtedly proves that the safeguards put in place in Gregg v. Georgia and its progency to protect against wrongful conviction is woefully inadequate and renders the Antiterrorism and Effective Death Penalty Act and the Death penalty itself illegal and Unconstitutional.

The facts and eveidence herein undoubtedly presents this Court with the challenge of a different and novel "extraordinary case " that exposes the debilitating flaws in the Antiterrorism and Effective Death penalty Act and the Death penalty itself. This Court must hear this case in order to stop the illegal and unconstitutional maneuvers prosecutors use in order to murder the innocent via lethal injection in the pretense of Justice.

2

THIS COURT SHOULD GRANT THIS "EXTRAORDINARY WRIT" BECAUSE FIELDS HAVE A CONSTITUTIONAL RIGHT TO FILE A PRO SE BRIEF AND MOTIONS ON APPEAL, YET HE WAS DENIED THAT RIGHT.

After a divided panel of the Fifth Circuit Court of appeals affirmed Fields' conviction and death sentence in the United States v. Fields, 483 F.3d 313 (5th Cir. 2007), Counsel for Petitioner filed a § 2255 motion challenging the conviction. Fields immediately notified the Court that Counsel's § 2255 motion was incomplete. ( See App. 1 ). The District Judge of the Western District of Texas, Judge Walter Smith Jr., didn't respond.

When Judge Smith denied the Habeas petition the Court also informed Petitioner Fields that his request to proceed pro se is denied. ( See App. 2 ).

Petitioner then notified the Fifth Circuit Court of Appeals that he would be proceeding pro se. ( See App. 3 ).

The Fifth Circuit sent a copy of the Motion to Fields's attorney, Jeff Ellis then returned the original to Fields for his signature. ( See App. 4 ).

This request for the signature misled Fields to believe that the Motion was accepted and Fields immediately filed a Freestanding Actual Innocence brief with three volumes of appendix showing that not only could he prove that he was Actually Innocent, but he could also prove that his conviction and death sentence were the direct result of a Fraud On the Court with a criminal conspiracy being its foundation, and the admission of false facts precluded the development of true facts. ( See App. 5.)

Fields also filed a Motion to Seal the brief. ( See App. 6). A Motion to Bar the prosecution and their coconspirators from having any contact with each other due to their ability to continue their criminal endeavors. ( See App. 7). And a Motion for Discovery. ( See App. 8).

Fields's attorney Jeff Ellis responded to the Court stating that Fields's pro se Motion isn't actually a "Pro Se" Motion and Fields only ask to be able to file his brief and Motion(s). ( See App. 9).

On 10/23/13 the 5th Circuit denied Fields's Motion to Proceed Pro Se. ( See App. 10).

On 10/30/13 the 5th Circuit notified Fields that they won't consider his brief and Motions. ( See App. 11).

Fields responded to the Notice and asked the Court to allow his brief and Motions to either work in conjunction with whatever counsel intended to file, or to allow his "filings" to stand alone. But on 11/18/13 the 5th Circuit refused again. ( See App. 12).

Counsel for Fields had yet to file a brief and Fields responded to the 5th Circuits Notice once again stating that he don't want to rely on the unseen brief that Counsel intended to file and asked the Court to reconsider. But on 12/5/13 the 5th Circuit responded stating that only Fields' attorney's can file on his behalf. ( See App. 13 ).

On 12/12/13 Fields received a copy of the brief that Counsel filed on his behalf, Fields immediately filed a Motion for Reconsideration of his Pro Se filings, stating that he "strenuously object" to the brief that Counsel filed. ( See App. 14 ).

On 12/24/13 Fields filed another Motion to " Reurge Filings ". ( See App. 15 ).

On January 14, 2014 the 5th Circuit entered an Order to not accept "anything" that Fields file. ( See App. 16).

Fields filed two Motions to the Supreme Court appealing the Order. (See App. 17).

Fields then filed a Motion pursuant to Rule 60 in the Supreme Court postmarked Feb. 17, 2014. ( See App. 18).

On 5/6/14 the Supreme Court sent the Rule 60 Motion back to Fields and gave him a 60 day deadline from May 1, 2014 to restructure the Motion as a certiorari petition. Fields met the criteria and refiled by June 9, 2014.

In late June 2014 Fields received the petition back from the Supreme Court with a note that said that Fields would have to wait until the 5th Circuit ruled on his COA before he could file in the Supreme Court. ( See App. 19).

Fields immediately responded. ( See App. 20 ).

On 8/15/2014 the Supreme Court informed Fields that he would have to file in the lower Courts.

That same month the 5th Circuit denied COA based on the brief that Counsel filed alleging that Actual Innocence isn't cognizable in their Circuit and falsely claimed that Fields didn't assert issues that he clearly did assert in the Brief and Motions that they refused to let him file Pro Se. ( See App. 21).

On June 4, 2015 the Supreme Court denied Cert. in Sherman Lamont Fields v. United States of America, No. 14-772 in regards to issues unrelated to Fields' Pro Se filings.

Fields attempted to file in the Supreme Court again. The Court gave Petitioner 60 days to restructure his petition. Fields did as instructed and refiled. Once again the Court told Fields that he would have to file in the "lower Courts" first.

4

Fields then filed in Washington, DC, the District of Respondents. The District Court said that they don't have Jurisdiction to hear the case so Fields appealed to the DC Circuit Court; Once again he was told that DC doesn't have jurisdiction. ( See App. 22).

Fields then tried to file in the Supreme Court once again and was told that he would have to file in the " District of Incarceration."

## ARGUMENT

In Price v. Johnson, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed 1356 (1948) the Court held that " a prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate Court " foreclosed any right of a pro se defendant to act pro se. But this did not foreclose the right of a defendant to present a " pro se brief ". In light of this the Court argued that, whether at trial or on appeal, a defendant should not be required to have counsel forced upon him or her. In Chamberlain v. Ericksen, 744 F.2d 628, 630 (8th Cir. 1984), cert. denied, 470 U.S. 1008, 84 L.Ed. 2d 387, 105 S.Ct. 1368 (1985), the Chamberlain Court, quoting the above styled language from Price v. Johnson, found that a criminal defendant does have the right under the Constitution to present pro se briefs or motions on appeal."

Fields was denied his right to file a pro se brief in the District of conviction, the Western District of Texas. Fields was also denied his right to file a pro se brief in the 5th Circuit Court of appeals; when in both instances, at the very least it should have been liberally construed as a motion to amend; United States v. Sellner, 2014 BL 350656, 8th Cir., No. 13-3794, 12/15/14. The 5th Circuit rejected Fields' pro se filings because Fields was "represented by counsel", but even when Fields said that he would "relieve counsel of their duty" and/or keep counsel in order to keep the process on track, just as long as he was able to have his pro se filings entertained the 5th Circuit still refused to consider Fields petition violating Price v. Johnson and the Chamberlain Court and effectively violating Fields' Constitutional rights.

Fields was then denied his right to file in the District and Circuit Court(s) of Washington DC due to a lack of jurisdiction, but still Fields remains diligent in pursuit of his right to have his pro se filings heard.

Because of the Court(s) refusal to accept a pro se brief from Petitioner Fields have been irrepairably harmed, and because of the Court(s) refusal to accept a pro se brief from Petitioner Fields' Judicial Bias issues went unadjudicated; Fields' brady violations went unadjudicated; Fields' Actual Innocence claim was restricted and

5

unadjudicated; The criminal act(s) perpetrated against Fields by the prosecution went unadjudicated; The Criminal Act of Fraud On the Court(s) went unadjudicated; The claim that Fields' conviction and Death sentence was influenced by passion, prejudice and other arbitrary factors went unadjudicated; The Legality and Constitutionality of the Antiterrorism and Effective Death Penalty Act went unadjudicated; And the Legality and Constitutionality of the Death Penalty went unadjudicated and violated Petitioners Constitutional Rights.

The Court(s) refusal to allow Fields to file his timely pro se brief and motions led to the illegal and unconstitutional denial and exhaustion of Fields' appeals.

And because the Court(s) refused to accept Petitioners timely pro se brief and motions, Fields, an innocent man will be murdered via lethal injection based on false facts and evidence that would render another prisoner's sentence in the same predicament null and void.

Based on the fact(s) and the law, had Fields' timely pro se brief been considered by the Court(s) the evidence herein would have demanded reversal of Plaintiff's conviction and Death sentence and Fields' innocence would have prevailed.

6

THIS COURT SHOULD GRANT THIS "EXTRAORDINARY WRIT" BECAUSE THE SAFEGUARDS PUT IN PLACE IN GREGG V. GEORGIA AND ITS PROGENY FAILED TO PROTECT FIELDS FROM JUDICIAL BIAS AT TRIAL AND ON APPEAL.

Six months prior to Fields' trial in Andrade v. Chojnacki, 388 F.3d 448 (July 14, 2003), District Judge Walter Smith, Jr. refused to participate in an investigation where his good friend, prosecuting attorney William "Bill" Johnston was under investigation for withholding evidence in the Andrade case. When Judge Smith presided over Fields' case in January 2004 William "Bill" Johnston was in private practice and he was the attorney for the victim's family in the United States v. Fields, where he had an interest in the outcome of this case.

In order to help his friend, William "Bill" Johnston meet his end result Judge Smith vouched for the prosecution, telling a juror that the prosecutors would "dismiss" the case if they thought Fields' rights were being violated.(See App (23)

In order to help his friend, William "Bill" Johnston meet his end result Judge Smith forced Fields to represent himself at trial.

Fields and his attorney had a significant conflict of interest starting early on in the process. As time went on the conflict spiraled deeper and deeper out of control. Then a week before trial Fields found out that his attorney was once a prosecutor whom had prosecuted Fields in the past; Fields immediately filed a motion for a new attorney.

After being "Warned" about what he could or could not say, Fields was restricted to telling the Court that he thought his attorney(s) was working with the prosecution. ( See Trial Transcripts, pg. 13 ). Judge Smith dismissed Fields' concerns without even knowing what the conflict was and forced Fields to proceed Pro Se.

Right before Opening Statements Fields tried to get out of representing himself, stating, " Your Honor, I can't do this. I'm not learned in the law...) See App (24)

Later Fields tried again to tell Judge Smith what the conflict was between him and his attorney and Judge Smith dismissed it again, stating, " I have no idea what your conflict is about, Mr. Fields. I don't want to know. That's not my business." See App (25)

But if the conflict wasn't Judge Smith's business, like he said, and he " didn't want to know " what the conflict was about, how could he make a rational legal decision about whether or not new counsel was warranted? ( If he didn't even know what the conflict was?)

On Appeal Judge Smith and the 5th Circuit Court of Appeals ruled that Fields' "decision" to represent himself was voluntary.

In order to help his friend, William "Bill" Johnston meet his end result Judge

Smith then made Fields wear a stun belt as a mental distraction; Judge Smith polluted the process by giving Fields conflicting and confusing instructions on how to proceed with the pro se representation; He told Fields to confer with standby counsel and ask them questions, stating " That's what they are there for." And then when Fields followed his instructions he told Fields that he can't do that.

Judge Smith repeatedly rebuked Fields in front of the jury; He refused to strike a juror for cause that said that he would give the death penalty in every case where the defendant is found guilty because he believes in an eye for and eye. (See Trial Transcripts, pgs. 332-333). Judge Smith ruled against Fields on evidence that was clearly admissible. Case in point: The woman that Fields said actually killed Ms. Coleman, Shalayhan Scroggins gave several different Alibi's for the time of the murder. In one Alibi she claimed that Fields dropped her off and she went straight to her sisters house and went to sleep, while the guy that Fields said assisted her in Coleman's murder, Edward Lee "Treyboy" Outley went home. ( See App. 26 ). In another Alibi Scroggins claimed that Fields dropped her off and she "walked to the store and bought "something to drink and a box of black and mild cigars", while Outley "went lookings for Fields" ( See App. 27 ). Outley claimed that he neither went "looking for Fields", or "went home", Outley claims that he was out selling drugs. (See App (28 ). Fields attacked Scroggins "Alibi" at trial to prove that the store that she claimed that she was at when Coleman was murdered wasn't even open at that time, the store was closed. But the prosecutor objected claiming that " it's not relevant ", and Judge Smith sustained the objection. ( See App (29) When in fact Scroggins Alibi absolutely was relevant.

In order to help his friend William "Bill" Johnston meet his end result Judge Smith stopped Fields from cross examining the governments Star Witness right in front of the jury and allowed the prosecution to take over and elicit some very damaging testimony and then sent the jury out without giving Fields a chance to refute Scroggins claims, giving the jury the impression that Fields was lying and the prosecution was the "honest ones". ( See Trial Transcripts, pgs. 1665-1668 ). This was extremely prejudicial being that the grand jury had already questioned the truthfulness of Scroggins claims. ( See App. 30 ). However, Judge Smith did just about any and everything that he could to bring about Fields' wrongful conviction, and to help his friend, William "Bill" Johnston meet his end result. Judge Smith knew that he was bias and should have recused himself, but he chose to stay on the case so he could Aid and Abet the governments conspiracy to frame, and murder Fields via lethal injection. Judge Smith fatally harmed Fields with the choices and/or decisions that he made, and then he allowed the case to come back to him on Habeas where he knowingly, deliberately, intentionally, willfully and arbitrarily denied Fields Habeas relief.

8

Prior to Judge Smith's ruling on Fields' Habeas Petition Fields informed the Court that his Habeas petition was incomplete. Judge Smith didn't respond.

When Judge Smith denied habeas the Court also informed Fields that he won't be allowed to proceed pro se.


## THE FIFTH CIRCUIT


On appeal to the 5th Circuit Fields drew Judge Edith Jones, a Judge that he'd tried to recuse for her racial, religious, anti-innocence and anti-mental health views. ( See App. 31 ).

Fields notified the 5th Circuit that he would be proceeding pro se.

Fields then filed a Freestanding Actual Innocence brief with 3-volumes of appendix; A motion to seal; A motion to Bar the prosecutors and their coconspirators from having any contact with each other due to their ability to continue their criminal conspiracy against Fields; And a motion for Discovery.

On 10/23/13 the 5th Circuit denied Fields' motion to proceed pro se. Then on 10/30/13 the Court notified Fields that they won't consider his brief and Motions.

On 12/12/13 Fields received a copy of the brief that Counsel filed on his behalf, Fields immediately filed a motion to reconsider his pro se filings, stating that he " STRENUOUSLY OBJECT " to the brief that Counsel filed.

On January 14, 2013 the 5th Circuit entered aanb  order to not accept "anything" that Fields file.

On 8/4/14 the 5th Circuit denied COA alleging that Actual Innocence isn't cognizable in their circuit and alleging that Fields didn't assert issues that he clearly did assert in the Pro Se brief and Motions that the 5th Circuit refused to let Fields file.

The 5th Circuit just "rubber stamped" District Judge Walter Smith's denial of Fields' Habeas Corpus. Following in Judge Smith's inauspicious footsteps the 5th Circuit quoted Shalaykea " Lakie " Scroggins stating that Scroggins said that she never threatened Coleman. ( See App.  32    ). However the evidence proves that Scroggins did indeed threaten Coleman with bodily harm on several occasions and the District Court and the 5th Circuit both just choose to ignore it. Four months prior to the murder Scroggins wrote two letters expounding upon her obsession for Fields

9

She wrote about how she'd lost Fields to Coleman once and vowed, " I will not let it happen again." And if she were to lose Fields again, she would be "Killing bitches". ( See App.    33    ).

Then a week before the murder Scroggins approached the victim and they got into a very heated argument. ( See App.  34    ). The only reason it didn't get physical is because Fields' mother arrived and broke it up.

Scroggins then went and got a phone turned on in Fields' name and she immediately started calling the victim, threatening her. The day before the murder Fields and the victim called the phone company together and the victim, Suncerey Coleman told the phone company that Scroggins illegally got the phone turned on in Fields name and she was calling her house threatening her. ( See    App (35)

This evidence clearly disputes Scroggins lie that she never threatened Coleman, and it's erroneous for the Court(s) to give such testimony false substance.

The Court then quotes Detective Morris "Bubba" Colyer's false testimony where he claimed that the Grand Am that Fields was driving on the night of the murder looked "detailed" or "wiped down" and erroneously said that Fields didn't acknowledge it.

But Fields did acknowledge it ( App.  5    Freestanding Actual Innolence Brief, pg. 18 and App.    8    ). It was the 5th Circuit that refused to consider the issue.

The 5th Circuit also said that there was "suspicious stains" that could possibly be blood. But the 5th Circuit neglected to mention that the same expert that they quoted there also said that they have technology that would still find blood. ( See App (36).            Also the alleged "stain" was tested with TMB solution and it wasn't blood. ( See App.  37    ; Forensics report ). The expert took the carpet with the stain anyway and sent it to the lab where those results were negative as well. ( See     App (38).             Thus it's clearly erroneous for the 5th Circuit to suggest that the "stain" could possibly be blood.

And their acknowledgement of the "stain" defeats their first argument that the vehicle "looked detailed" or "wiped down". How is it that the vehicle "looked detailed" or "wiped down" when in fact there are stains that is significant enough to be tested? Also the forensics report ( App. 37    ), proves that the car was not clean like Detective Morris "Bubba" Colyer maliciously, fraudulently and deliberately misled the Court to believe. There were fingerprints, dirt and debris and of course "a stain" in the car, that's not a vehicle that "look detailed" or "wiped down".

Then the 5th Circuit said that Fields do not contend that "witness coaching" took place. Furthermore, there is no indication of coaching, such as through baseless objections, or the use of non-verbal cues. In fact, the prosecution's objections were not baseless, and nearly all were sustained." (5th Circuit Opinion in denial of COA ).

However, Fields did in fact allege witness coaching in the brief that the 5th Circuit refused to consider. In one such incident out of many, Edward Lee "Treyboy" Outley told his friend, Christian Chae Walker ( or Shay ), via a letter, to lie and say that he gave him (Outley) the alleged murder weapon. ( See App. 39 ). And when Walker didn't know what kind of gun it was Detective Morris "Bubba" Colyer Coached Walker and told him what kind of gun it was supposed to be. ( See App. 40 ). In any event Walker did as Outley told him to do and said that he did indeed give Outley the gun. Walker claimed that he gave Outley the gun " for protection ". App (41) . Outley claimed that Walker gave him the alleged murder weapon to give " to Fields ". ( See App (42)

And one such incident of a baseless objection ( out of many ), was when Fields attempted to impeach Scroggins Alibi that she was at the store when Coleman was murdered, and the prosecutor objected claiming that it wasn't relevant and Judge Smith sustained the objection. ( See App 29 ). Thus the 5th Circuit's opinion that there was "no coaching" or " no baseless objections" is clearly erroneous. In closing arguments the prosecutor even bragged to the jury that he was making baseless objections. ( See App (43)

The prosecutors misconduct got so bad Fields' standby counsel took it upon themselves to bring it to the attention of the Court. ( See App (44)

Another issue where the Court(s) erroneously denied relief is when at trial Fields asked Edward Lee "Treyboy" Outley had the government made him any promises and Outley lied and said no. ( See App (45 ). The prosecution knew he was lying and didn't even attempt to correct him.

In denial of Fields' COA the government steered the 5th Circuit towards District Judge Walter Smith's erroneous ruling when he denied Habeas stating, " It is unclear whether Outley understood the general question posed to him." ( See District Court Opinion denying Habeas ).

However the evidence show that Outley did indeed understand the question. Outley wrote a letter stating that he could have got 5K1, which in fact is the governments promise of leniency/immunity/time reduction. ( See App. 46 ). That letter is what spurred the question about the government making Outley any promises. When Outley lied and said that the government hadn't made him any promises, Judge Smith falsely claimed that Fields didn't "follow up with questions". But Fields did indeed follow up. ( See App (47 ).

The letter where Outley said that he could have got 5k1 and Fields' questions about 5k1 clearly show that Outley did indeed understand that Fields was asking him if he'd received a deal for his testimony.

11

Then the prosecutor said, " Even if Fields could show that the government suppressed the nature of Outley's immunity deal, he cannot show that it would undermine confidence in the verdict." Judge Smith and the 5th Circuit both agreed with the prosecution with no regards to the true facts. If the government had not given Outley immunity Outley would have truthfully testified that he didn't give Fields a gun, as evidenced by the many times that Outley denied giving Fields a gun. And in that case the only person the alleged murder weapon could be traced back to is Outley himself, because it was Outley that implored Walker to lie and say that he gave him the gun. Outley's possession of the gun, aligned with Outley and Scroggins hiding the car that they were in on the night of the murder so the car wouldn't be subjected to forensics testing, Outley and Scroggins both giving several conflicting Alibi's for the time of the murder, and their interactions with the other government "witnesses" before the "witnesses" came forward claiming that Fields confessed to them paints a different and truly realistic picture of Outley and Scroggins guilt, and Fields' innocence.

The evidence, rulings and opinions conclusively show that both Judge Smith and Judge Edith Jones was bias.


## ARGUMENT


" A fair trial in a fair tribunal is a basic requirement of due process." Caperton v. A.T. Massey Coal, Inc.,__U.S.__, 129 S.Ct. 2252, 2259, 173 L.Ed. 2d 1208(U.S. 2009) (internal citations omitted). It is clear that there was nothing fair about Fields' trial or the tribunal in which it was held. Judge Smith should have recused himself. " The Supreme Court has held that Actual Bias and the appearance of bias violate due process principles." Bracy v. Schoming, 286 F.3d at 410-11; See Bracy, 520 U.S. at 905 (actual bias). " Absent a "smoking gun", a petitioner may rely on circumstantial evidence to prove the necessary bias." Bracy, 286 F.3d at 411-412; id. at 422 (Posner, J., concurring in part; dissenting in part ); id. at 431 (Rovner, J., concurring in part; dissenting in part ). Judge Smith's rulings only highlights his bias as he maneuvered the proceedings towards the end result that would favor his friend, William "Bill" Johnston.

" A district Court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or make findings of fact that are clearly erroneous." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1309 ( 11th Cir. 2001 ). Judge Smith telling Fields that he "don't know" what the conflict was between Fields and his attorney, and stating that he "don't want to know" yet refusing to appoint new counsel without even knowing if new counsel was warranted and forcing Fields to proceed Pro Se is an abuse of discretion and a

12

testament to Judge Smith's bias.

On appeal Judge Smith denied habeas based on an unreasonable determination of the facts is an abuse of discretion and a testament of Judge Smith's bias.

" The due process clause may sometimes bar trial by Judges who have no Actual bias and who would do their best to weigh the scales of Justice equally between contending parties." ( citing In re Murchison, 349 U.S. at 136 ). Judge Smith made it absolutely clear that he could not weigh the scales of Justice equally between Fields and the prosecution when he vouched for the prosecution telling Juror Donna Williams that the prosecution would dismiss the case if they thought Fields' rights were being violated, and then told the Jurors that the indictment meant that it was " more likely than not " that Fields committed the offenses in the indictment. Judge Smith's bias led to Fields' wrongful conviction and Death Sentence, as well as the arbitrary and erroneous denial of Fields' Habeas Petition and COA.

## THE 5TH CIRCUIT

Judge Edith Jones should have recused herself as well. See Liljeberg v. Health Service Acquisition Corp. (1988) 486 U.S. 847, 100 L.Ed. 2d 855, 108 S.Ct. 2194. Her bias against minorities, the innocent, and the mentally ill is reflected in the 5th Circuits erroneous opinion(s) in denial of Fields' COA. " The law cannot directly or indirectly give Judge Jones' personal bias effect." Palmore v. Sidoti, 466 U.S. 429, 433, 80 L.Ed. 2d 421, 104 S.Ct. 1879 (1984). " The 14th Amendment views racial bigotry as an evil to be stamped out, not as an excuse for perpetual racial tinkering by the State." See DeFunis v. Odegaard, 416 U.S. 312, 342, 94 S.Ct. 1704, 40 L.Ed. 2d 164 1974) (Douglas J. dissenting). The 5th Circuit quoting Detective Morris "Bubba" Colyer's false testimony that the Grand Am "looked detailed" or "wiped down" and referencing James Blair's testimony that there was a "stain" without acknowledging that James Blair also said that they have technology that would have still found blood, and the stain was tested and it wasn't blood, serves to highlight Judge Jones and the 5th Circuit's bias; Their inclination to lend false credence to the prosecution's case proves that their racial and other discrimination is not benign. " Benign carries with it no independent meaning, but reflects only acceptance of the current generations conclusion that a politically acceptable burden, imposed on particular citizens on the basis of race, is acceptable." See Metro Broadcasting, Inc. v. FCC, 497 U.S. 547, 609, 110 S.Ct. 2997, 111 L.Ed. 2d 445 (1990) (O'Connor, J., dissenting). " It is for this reason that the Supreme Court has repeatedly held that strict scrutiny applies to all racial classifications, regardless of whether the government has benevolent motives." See, e.g., Johnson, 543 U.S., at 505, 125 S.Ct. 1141, 160 L.Ed. 2d 949 ("We have insisted on strict scrutiny in every context, even for so-called 'benign' racial classifications"); Adarand, 515 U.S. at 227, 115 S.Ct. 1097, 132 L.Ed. 2d 158; Judge Jones' bias is undeniable.

13

Both, District Judge Walter Smith and the 5th Circuit Court of appeals Unreasonable determination of the facts lends credence to the fact that their abject bias led to, and ultimately sustained Fields' wrongful conviction. " A factual determination made by a State Court must be rebutted by clear and convincing evidence." quoting Clark v. Quarterman, 457 F.3d 441, 443 (5th Cir. 2006)) (internal quotation marks omitted). The question of whether the Grand Am that Fields was driving on the night of the murder was "detailed" or "wiped down" involves issues of fact that the forensics report undoubtedly rebuts by clear and convincing evidence. ( Maldonado v. Thaler, 625 F.3d 229, 236 (5th Cir. 2010)) (internal quotation marks omitted). Dirt, fingerprints, bags of debris, a "stain" isn't conducive of a vehicle that was "detailed" or "wiped down". " A Court abuses its discretion if it applies or make findings of fact that are clearly erroneous." Chicago Tribune Co. v. Bridgestone/Firestone; Supra. The 5th Circuit stating that there was a "stain" that could possibly be blood is a finding of fact that is clearly erroneous; The "stain" was tested with TMB Solution and it wasn't blood. ( See App. 37     ). However the forensics expert took the carpet anyway and sent it for further testing and those tests also were negative. ( See Trial Transcripts, pg. 1332     ). The verdict is undeniable that IT WAS NOT BLOOD! " A State Court's decision is contrary to Supreme Court precedent if: (1) the Court arrives at a conclusion opposite to that reached by [ the Supreme Court ] on a question of law; or (2) the Court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." Pippin v. Dretke, 434 F.3d 782, 787 (5th Cir. 2005) (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed. 2d 48 (2006). When Edward Lee "Treyboy" Outley flat out lied and said that the government hadn't made him any promises and the prosecution did not correct this false statement while knowing that they'd given Outley full immunity it was a clear violation of Smith v. Kemp, 715 F. 2d 1459, 1463 (11th Cir) cert. denied 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed. 2d 699 (1983) where the Court held that " If false testimony surfaces during a trial and the government has knowledge of it, the government has a duty to step in and disclose." ( The Government must affirmatively correct testimony of witness who fraudulently testifies that he has not received a promise of leniency in exchange for his testimony ). " A Court's decision is an unreasonable application of clearly established federal law whenever the Court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner." Id. ( quoting Young v. Dretke, 356 F.3d 616, 623 (5th Cir. 2004). " An unreasonable application may also occur if the Court either unreasonably extends a legal principle from [Supreme Court] precedent to a new

14

context where it should not apply." Id. at 787-88 (quoting Young v. Dretke; Supra.)
In evaluating the evidence presented in the Court, the Supreme Court presume that
the lower Court's factual findings correct unless a petitioner "rebut[s] the
presumption of correctness by clear and convincing evidence." 28 U.S.C.S. 2254(e)(1).
The 5th Circuit accepting Detective Colyer's lie that the Grand Am "looked detailed"
or "wiped down" and that there was a "stain" that could possibly be blood is "findings
of fact" that the forensics report "clearly rebut[s]". And the Court's acknowledgement
of the "stain" renders the detective's testimony that the car "looked detailed" or
"wiped down" clearly false. How is it that the car "looked detailed" or "wiped down"
when in fact there was dirt, fingerprints, bags of debris, and "a stain" that was
sufficient/significant enough to be tested? This lie was merely a distraction by
Detective Colyer and the prosecution to frame Fields and hide the fact that their
Star witnesses, Edward Lee "Treyboy" Outley and Shalaykea "lakie" Scroggins conspired
to hide the car that they were in on the night of the murder so the car wouldn't be
subjected to forensics testing. In 188 L.Ed. 2d 1,__U.S.__Hinton v. Alabama, the Court
found that " Prosecution experts, of course, can sometimes make mistakes. Indeed, we
have recognized the threat to fair criminal trials posed by the potential for
incompetent or fraudulent prosecution forensics experts, noting that "[S]erious
deficiencies have been found in the forensic evidence used in criminal trials...One
study of cases which exonerating evidence resulted in the overturning of criminal
convictions concluded that invalid forensic testimony contributed to the criminal
convictions in 60% of the cases." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 319,
129 S.Ct. 2527, 174 L.Ed. 2d 314 (2009) (citing Garrett & Neufeld, Invalid Forensic
Science Testimony and Wrongful Convictions, 95 Va. L. Rev. 1, 14 (2009)). This threat
is minimized when the defense retains a competent expert to counter the testimony of
the prosecution's expert witnesses; It is maximized when the defense instead fails to
understand the resources available to it by law." Here in Fields' case Detective Colyer
was no expert, although the prosecution used him as one. His testimony in regards to
the forensics was fraudulent and the prosecution knew that. Instead of the prosecution
calling their real forensics expert to the stand they procured Detective Colyer to
lie, Fields, himself called the governments real forensics expert to the stand and he
didn't say that the car "looked detailed" or "wiped down", instead he processed the
car and found and recovered evidence that's not indicative of a "detailed" or "wiped
down" vehicle; Evidence that exonerates Fields. In this case the 5th Circuit clearly
got it wrong; the 5th Circuit's refusal to consider Fields' Pro se brief and Motions
restricted the Court from adjudicating his claims on the merits because it let bias
"unreasonably truncate further factual development" on Fields' claim of Actual Innocence.
Whether ther is Actual Bias and/or the appearance of bias, Judge Smith and the 5th
Circuit Court violated due process principles; Bracy v. Schoming; Supra.

15

THIS COURT SHOULD GRANT THIS "EXTRAORDINARY WRIT BECAUSE (A) THE 5TH CIRCUIT'S REFUSAL TO ACCEPT FIELDS' PRO SE BRIEF ALLOWED THE PROSECUTION'S VIOLATION OF BRADY V. MARYLAND TO GO UNADJUDICATED; AND (B) THE SAFEGUARDS PUT IN PLACE IN GREGG V. GEORGIA AND ITS PROGENCY FAILED TO PROTECT FIELDS FROM THE PROSECUTION(S) VIOLATION OF BRADY

---

Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), the government must disclose material, exculpatory (397 Fed. Appx. 971) evidence to a criminal defendant. United States v. Walters, 351 F.3d 159, 169 (5th Cir. 2003) (citing Brady, 373 U.S. at 87). " A valid Brady complaint contains three elements; (1) the prosecution must suppress or withhold evidence; (2) which is favorable, and (3) material to the defense." United States v. Lanford, 838 F. 2d 1351, 1355 (5th Cir. 1988) (quoting United States v. Auten, 632 F.2d 478, 481 (5th Cir. 1980)). Impeachment as well as exculpatory evidence fall within Brady's purview. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed. 2d 481 (1985); Fields meets all three prongs of Brady.

Prior to trial Counsel for Fields filed a Motion for Discovery pursuant to Rule 16 and was supposedly given "open file discovery". The Motion specifically requests the timely disclosure of Photographs, documents, tangible objects, results of reports or scientific tests or experiments, and disclosure of written summaries of testimony of expert witnesses. ( See App. 48 ). The prosecution never turned over the pre and post forensic photographs, or the written summary of Detective Morris "Bubba" Colyer's "expert testimony", effectively suppressing and/or withholding the evidence; Thus the first prong of Brady have been satisfied.

The second prong of Brady is just as clear. The photographs is favorable to the defense because the evidence is exculpatory and impeaching. The photographs prove unequivocally that Detective Morris "Bubba" Colyer lie and defrauded the Court via the prosecution when he said that the Grand Am was clean and "looked detailed" or "wiped down". But most importantly, the jury, during deliberations at the guilt/innocence phase only had one question: They wanted the " testimony (or evidence, if it's available) of the results of DNA testing on the car..." ( See App. 49 ).

The Judge, Walter Smith, Jr. denied the jurors request. ( See App. 50 ). If the jury would have remembered and/or knew the testimony in regards to the forensics testing and the state or condition the vehicle was in they wouldn't have been requesting the information; Thus the jury had nothing to rely on. If the prosecution would have honored their duty to disclose then Fields would have impeached Detective Colyer's willfully false testimony with the photographs, and the photographs would have been in evidence for the jury to use in their deliberations. There is no doubt that the photographs are favorable.

The Third prong of Brady has been met as well. " testimony is material if it was

16

designed to substantially affect the outcome of the case. United States v.Como, 53 F.3d 87, 90 (5th Cir. 1995). " Detective Colyer's false testimony about the car being "clean" and "detailed" was definitely designed to substantially affect the outcome of the case. The prosecution procured Detective Colyer to testify falsely with malicious intent in order to defraud the Court into believing that Fields killed Coleman and then "detailed" the car so there was no blood where blood should have been if Fields was indeed the killer. Since the jury's only question in regards to the entire guilt/ innocence phas was in regards to that car, the photographs proving that the car wasn't "clean" and/or "detailed" is definitely material.

" The materiality of Brady material depends almost entirely on the value of the evidence relative to the other evidence mustered by the State." Smith v. Black, 904 F.2d 950, 967 (5th Cir. 1990), vacated, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed. 2d 609 (1992), abrogated on other grounds, Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed. 2d 367 (1992). The government's entire case against Fields is "jailhouse testimony", inmates whose stories are so rediculous it defies description. And there is concrete proof that Outley and Scroggins, the two people that Fields said committed the murder was interacting with these inmates before they "came forward"; And also there is concrete proof that the prosecution went " seeking jailhouse testimony ". Thus the withheld photographs proving that the car that Fields was in on the night of the murder was not "clean" and/or "detailed" like the prosecution procured Detective Colyer to lie and defraud the Court into believing is definitely material to Fields' innocence. And since the jury's one and only question in regards to guilt/innocence was in relation to the car that the photographs are in relation to it shows unequivocally without any doubt that the photo's are material.

In addition to that Detective Colyer lied and defrauded the Court about the car being "clean" and/or "detailed" to hinder, impede and willfully thwart by illegal means the fact that the people whom Fields said committed the murder, both Edward Lee "Treyboy" Outley and Shalaykea "Lakie" Scroggins were conspiring to hide the Jaguar that they were in on the night of Coleman's murder, and had the prosecution honored their duty to disclose, and their duty of honesty to the Court as well, the jury would have undoubtedly moved towards a verdict of "Not Guilty". That's why the Court(s) have held that " If the prosecution withholds evidence that satisfies the above definition of materiality, then harmless error analysis is inapposite and relief is warranted. See Kyles v. Whitley, 514 U.S. 419, 435, 131 L.Ed. 2d 490, 115 S.Ct. 1555 (1995).

THIS COURT SHOULD GRANT THIS "EXTRAORDINARY WRIT" BECAUSE MINUS THE CONSTITUTIONAL VIOLATION(S) FIELDS IS ACTUALLY INNOCENT.

The prosecution contends that " there is no requirement that [Fields] be linked to the murder through a positive DNA test." ( See App.      21      ). The lower Courts

17

agree. However had it not been for the criminal act(s) committed by the prosecution Fields would have been exonerated. The Court should not undermine the significance of the other forensics. The fact that there was no blood found in the Grand Am can't be ignored for several reasons. (1). It was significant enough that the prosecution resorted to committing criminal act(s) in order to conceal the fact that Edward Lee "Treyboy" Outley and Shalaykea "Lakie" Scroggins conspired to hide the car that they were in when Coleman was murdered so that car wouldn't be subjected to the same forensics tests that the Grand Am was subjected to; (2). It was significant enough that the prosecution resorted to commiting criminal act(s) by procuring Sheriff Detective Morris "Bubba" Colyer to lie and say that there was no blood in the Grand Am because the car "looked detailed" or "wiped down"; (3). It was significant enough that the prosecution resorted to committing criminal act(s) in order wo withhold the pre and post forensic photo's that will undoubtedly show that the car didn't look "detailed" or "wiped down". And (4). (Which is most important): The forensics in regards to the Grand Am have dominated the entire process throughout the criminal proceedings. At trial during deliberations in guilt/innocence the forensics in regards to the Grand Am was the only question that the jury had. ( See App.   49   ). Judge Smith denied that request, that's when the jury returned the guilty verdict. Had the jury saw the forensics results showing that the car was not "clean" and there was no blood found Fields would have been exonerated; Had the prosecution not procured Detective Morris "Bubba" Colyer, a guy that isn't even a forensics expert, to lie and say that the car "looked detailed" or "wiped down", Fields would have been exonerated; And if the prosecution would have honored their duty to disclose and turned over the forensics photo's Fields would have been able to impeach Detective Colyer's deliberately false testimony and the photo's would have been in evidence for the jury to refer to and Fields likewise would have been exonerated. The Judge's instruction(s) for the jury to "remember the testimony" was insufficient because had they remembered the testimony they wouldn't have been requesting it. And as you can see in (App. 21  ) the forensics in regards to the Grand Am dominated the appeals process as well.


## ARGUMENT


The forensics report showing that the car was not "detailed" or "wiped down" and that the alleged "stain" was tested and it wasn't blood rebuts the Court(s) factual determination with clear and convincing evidence. And the fact that the jury's sole question in regards to Guilt/Innocence was in regards to those forensics undoubtedly proves that Fields is innocent.

18

There should be no doubt that Fields have established a "colorable showing of innocence"; Kuhlman v. Wislon, 477 U.S. at 454 & n.17, 106 S.Ct. at 2627 & n.17; Schlup v. Delo, 513 U.S. 298, 314-16, 130 L.Ed. 2d 808, 115 S.Ct. 851 (1995). The Due process clause have been severely and egregiously offended by the prosecution's actions here. " Due process of law prohibits the conviction of either a legally and/or factually innocent person." Gardens v. Stephens, Sup. Ct. #13-546 (2013) cert. pending, (5th Cir. 8/2/13). The evidence that the jury was permitted to hear was impermissible, materially inaccurate, and demonstrably false. Duest v. Singletary, 967 F.2d 472, 482 (11th Cir. 1992), vacated on other grounds, 507 U.S. 113 S.Ct. 1940, 123 L.Ed. 2d 647 (1993). In re Davis , No. CV 409-130 (8/24/10), the Court held that " the lowest degree of confidence in a jury verdict would presumably occur when the jury has heard a corrupted body of evidence." Because the procedural protections in place to protect the innocent from conviction have been breached, confidence in the result of the trial is generally undermined." The evidence in this petition proves undoubtedly that the prosecution improperly suppressed and/or withheld evidence and used perjury to undermine the forensics that would have exonerated Fields. Mooney v. Holohan, 294 U.S. 103, 113 (1935). Thus Fields is Actually Innocent.

THIS COURT SHOULD GRANT THIS "EXTRAORDINARY WRIT" BECAUSE THE SAFEGUARDS PUT IN PLACE IN GREGG V. GEORGIA AND ITS PROGENCY FAILED TO PROTECT FIELDS FROM CRIMINAL ACT(S) PERPETRATED AGAINST HIM BY THE UNITED STATES GOVERNMENT.

## CONSPIRACY

Clearly established Federal Law defines the elements of Conspiracy as (1). An agreement between two or more persons; (2). The object of which is to do an unlawful act or a lawful act by unlawful means. ( A formal agreement need not be demonstrated as an agreement may be demonstrated by circumstantial evidence of a meeting of the minds to commit an unlawful act.) United States v. Moore, 525 F.3d 1033 (11th Cir. 2008); United States v. Percel, 553 F.3d 903 (Dec. 23, 2008).

There should be no doubt that the prosecutor's and their "witnesses" joined in a seditious conspiracy to provide false testimony to a Grand and petit jury in this Capital case so they could manipulate a verdict of guilty, which would ultimately lead to Fields' murder via lethal injection. The evidence presented herein is substantial, concrete and undeniable.

When the government sought to indict Fields for Coleman's murder the prosecution willfully, intentionally, deliberately and knowingly, with malice aforethought procured a Sheriff Detective Johnny Spillman to lie and testify to the Grand Jury that when Fields came into contact with the victim he became " Irate ". (see App. 51 )

19

Then the prosecution willfully, deliberately, intentionally and knowingly, with malice aforethought procured a U.S. Marshal Chris Casson to lie and testify to the Grand Jury that when Fields came into contact with the victim, the victim's cousin Tanesha Hilliard told him that Fields " became angry." ( See App. 52      ).

The prosecutor, Detective Spillman and U.S. Marshal Casson all knew that they were committing the criminal act of perjury and defrauding the Grand Jury because Tanesha Hilliard had already told everyone that Fields " Did not appear angry." It's clear that there either was a formal agreement or a meeting of the minds between the prosecutor, Detective Spillman and Marshal Casson to defraud the Grand Jury, it was clearly their intent to give the Grand Jury the false impression that the alleged "anger" let to Coleman's death so the Grand Jury would issue the indictment and put Fields closer to the Death Chamber so the prosecution could meet their end result. At trial two years later Tanesha Hilliard reiterated the fact that Fields was never "mad" or "angry". ( See App 53      ).

Also Edward Lee "Treyboy" Outley, Shalaykea "Lakie" Scroggins, and the prosecutor's deliberately, willfully, intentionally and knowingly, with malice aforethought attempted to conceal the Jaguar that Outley and Scroggins were in on the night of the murder so the car wouldn't be subjected to forensics testing. Outley and Scroggins was in a GOLD Jaguar when Fields said that they murdered Coleman. Outley lied and said that the Jaguar was BLUE. ( See App.   54   ). Scroggins also lied and said that the Jaguar was BLUE. ( See App.  55    ).  The Prosecution knew that they were lying because three months prior to trial they found the owner of the Jaguar and he told them that his car was GOLD and he'd rented it to Outley for some crack cocaine.

Fields called Mr. Lutrill Payne to the witness stand ( The owner of the GOLD Jaguar ) and the prosecution, while knowing that Outley and Scroggins was indeed in a GOLD Jaguar attempted to make the jury believe that they were in a BLUE Jaguar that he already knew didn't exist. ( See  App 56               ). It's not like Scroggins said that the Jaguar was BLUE, Outley said that the Jaguar was BLACK, and the prosecutor said that the Jaguar was ORANGE, they all said that the car was BLUE while knowing all along that the car was GOLD. In order for  them to come to that consensus they all had to AGREE/CONSPIRE to lie and say that the car was BLUE so the jury wouldn't have reason to question why these "innocent" government "witnesses" conspired to hide the car that they were in when Coleman was murdered.

And then after Lutrill Payne verified that his Jaguar was indeed GOLD the prosecutor procured Detective Morris "Bubba" Colyer, the same guy that lied and said that the Grand Am looked "detailed" or "wiped down", and the same guy that coached Christian Chae Walker and told him what kind of gun the alleged murder weapon was supposed to be, to lie and say that Outley told him the name of the person that he got the Jaguar from. ( See Trial Transcripts, pg.  2033               ). When in reality all Outley told Colyer, according to his only report in regards to Outley is that the Jaguar was BLUE. (App.  54   ).

20

Amrad Patel, the guy whom owns the New Road Inn Motel testified that police arrived at the Motel on November 7, 2001, the next day after the room was rented and did a thorough search of the room. It was then that Law Enforcement discovered the name "Payne" on the daily logs, or sign-in sheets. ( See Trial Transcripts, pgs. 1408-1413        ). Investigators didn't talk to Outley until November 13, 2001, the day that he was arrested for being a felon in possession of a firearm. It was then that they confronted him with the name "Payne", based on the fact that it was said that Outley rented the room for Fields, and Outley lied, telling investigators that "Payne" was the owner of a "BLUE" Jaguar, in an attempt to hide the car. Because Outley knew that had the GOLD Jaguar been subjected to forensics testing he and Scroggins wouldn't have been able to explain how their blood, where the thorns at the crime scene ( See Trial Transcripts, pgs. 1269-1270  1282-1283        ), undoubtedly cut them, got mixed in with Coleman's blood in that GOLD Jaguar; Thus the conspiracy between Outley, and Scroggins to conceal that Jaguar was a necessary element/component of the overall scheme to Frame Fields, and the prosecution knowing, willfully, intentionally and deliberately with malice aforethought joined into the conspiracy because they knew all along that the Jaguar was GOLD when they set about defrauding the Court because Lutrill Payne had already told them that his Jaguar was GOLD. ( See App. 57        ).

Also the police and prosecutor's had to AGREE that every time Fields challenged the government's case with substantial credible evidence they would use the prestige of the government to lie and mislead the jury; (i.e) No blood in the Grand Am " because the car "looked detailed" or "wiped down", while knowing that the car wasn't clean and forensics have technology that would have still found blood; Shalaykea "Lakie" Scroggins claimed that Fields called her at 8:00 P.M. on November 15, 2001 and told her details about the murder that only the killer would know. Fields presented her phone records showing that Scroggins was lying and the call don't exist. In closing the prosecutor defrauded the Court telling the jury that the reason the phone records don't show the call is because " phone records only show calls to and from cell phones." ( See Trial Transcripts, pg. 2033        ). Yet the prosecutor knew that was a lie because all of the calls on the records was from land lines, and the prosecution had just introduced phone records showing how many times Fields called the victim at home from jail, and both of those lines are land lines; Also when the prosecution procured law enforcement to lie and say that Tanesha Hilliard said that Fields became angry when he came into contact with the victim, while knowing that Tanesha Hilliard have always maintained that Fields was "never angry". The lies, deception and the conspiracy goes on and on. And whether the AGREEMENT to defraud the Court, frame Fields for Coleman's murder and/or obtain Fields' conviction and Death Sentence by and through the use of false evidence was "formal" or by and through

21

" a meeting of the minds " there should be no doubt that the Conspiracy is complete. Conspiracy only requires that after the Conspiracy is born at least one of the people commits an overt act in furtherance of the agreement. 18 U.S.C. § 371 (1982); United States v. Bell, 577 F.2d 1313, 1315 n.2 (5th Cir. 1978), cert. denied, 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed 2d 634 (1979); United States v. Sutherland, 463 F.2d 641, 645 (5th Cir.), cert. denied *1569409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed. 2d 668 (1972). The Criminal act of conspiracy is compounded by the fact that each time the prosecution procured someone to lie the criminal act(s) of suborning perjury and perjury was also committed. " A person suborns perjury when he procures another to commit perjury." 18 U.S.C. § 1622; See also Dunnigan, 507 U.S. at 94, 113 S.Ct. at 1116 (applying definition of perjury from 18 U.S.C. § 1621, the criminal perjury statute to § 3C1.1).

## SOLICITATION OF MURDER

Under normal circumstances to find someone guilty of Solicitation of Murder for hire the jury must find, (1). That the offender intended for another person to commit murder for hire; And (2). That the offender induced or tried to persuade that other person to commit murder for hire. 18 U.S.C.S. § 373(a). United States v. Razo-Leora, 961 F.2d 1140, 1148 n.6 (5th Cir. 1992); See also United States v. Cardwell, 433 F.3d 378, 390, 91 (4th Cir. 2005). The plain language of the Statute indicates that actual movement in interstate commerce is not required for a Solicitation of Murder conviction under 18 U.S.C.S. § 373(a) c.f., United States v. Blackthorne, 378 F.3d 449, 454 (5th Cir. 2004) ("Even where a conviction for the substantive offense of federal murder for hire fails for want of interstate travel, an offender can be convicted of conspiring to commit the offense.")

It is clearly established Federal Law that a Section 373(a) offense is complete when one corruptly "endeavors" to, and employs another to commit Murder-For-Remuneration; One need not prove that a murder actually occured. And as the Court of appeals noted, "remunerate" encompasses a broad range of situations, including compensation for loss or suffering, and the ideal of a "reward" given or received "because of some act". The Court's interpretation far from offering a surprising or far-fetched construction, stated the everyday meaning of the words used by Legislature. Beets, 767 S.W. 2d at 734. " 180 F.3d 190:: Beets v. Johnson:: June 28, 1999 (5th Cir.)

The first prong of the Murder-For-Hire Statute have been met; In Herrera v. Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed. 2d 203 (1993), Justice Blackmun said that " the execution of a person who can show that he is innocent comes perilously close to simple murder." But even then, Justice Blackmun wasn't factoring in a case like Fields where the prosecution blatantly, intentionally, deliberately, willfully and knowingly with malice aforethought recruited a bunch of "paid occurence witnesses" whom engaged

22

in a criminal conspiracy to use the Justice System and the Death Penalty as a murder weapon and Defrauded the Copurt(s) into taking away Fields' liberty with intentions of taking his Life. Fields' impending demise exceeds Justice Blackmun's logic tenfold and crosses into the territory of impending murder with premeditation.

With the Death Penalty on the table there is no question and/or doubt what the police, prosecutor's, and their witnesses goal and/or intent was, the end result would be death and they all knew that. So when the prosecution went "Seeking jailhouse testimony"; ( See App. 58 ), and hired these crooks to lie and procured a number of law enforcement officer's to add false substance to their case and defraud the Court(s) the prosecution intended for those crooks to "wield that sword" and commit Murder-For-Hire; Thus satisfying the first prong.

The second prong have been met as well. According to a letter that Shalaykea "Lakie" Scroggins wrote her accomplice, Edward Lee "Treyboy" Outley the prosecution wanted one of them to lie and say that they were "with Fields". ( See App. 46 ). Since they were saying that Fields killed Coleman, " with Fields " could only mean that they were trying to procure a false eyewitness, thus inducing or trying to persuade Outley and/or Scroggins to use false testimony to commit murder.

Also a Chance Alexander, an inmate that the government tried to recruit/procure/ hire, an inmate that Fields don't know, changed his mind at the last minute and admitted that even though he don't know Fields law enforcement working for the prosecution tried to recruit him with the promise of "remuneration" ( a reward for the act; "to lie") in this Capital case and say that Fields confessed to him, thus inducing or trying to persuade Alexander to commit Murder-For-Hire; The second prong of Section 373(a) have been met. ( See App. 59 ).

The notice that the prosecution is "seeking jailhouse testimony" is instrumental and offers a glimpse into the prosecutor(s) state of mind; This notice was before the government had any witnesses, and then two years later the prosecution closed their case with nothing but "jailhouse testimony", inmates whose stories are demonstrably false. Then there's the fact that the prosecution tried to procure a false "eyewitness", and hire inmate Chance Alexander to lie; Three separate and individual incidents about the prosecution seeking false and fabricated evidence from three different entities that don't even know each other. And when you add the fact that every time Fields challenged the governments case with substantial credible evidence the prosecution procured a law enforcement officer to lie and defraud the Court, there should be no doubt that the prosecution framed Fields and Solicited and/or conspired to murder Fields via lethal injection and defrauded the Court(s) to meet their end result.

Also in mid 2003 the government approached the defense right before trial alleging that they went back, searched the victim's clothes and found a hair. The Judge set

23

set the trial off until January 2004 while the government served a search warrant on Fields to take hair samples and got the hair tested. The government notified the defense that they "got a match". Counsel for Fields said that it didn't matter because everyone knew that Fields was with Coleman, but Fields insisted that the government was "trying to do something slick". Counsel for Fields got their own expert to test the hair and the conclusion was that the government was indeed trying "to do something slick". The hair was African American but it wasn't Fields'. That's when the government told the defense that they weren't going to "use the hair anyway", but they had several inmates that were going to testify that Fields confessed to them.

The guiding principle here is that the Court(s) should be mindful that evidence like this that's outside the record is critical to determining the truth because it bears on the prosecutions state of mind. The prosecution created a "kill zone" when they went " seeking jailhouse testimony " and procured those law enforcement officer's to lie and defraud the Court(s), and they engaged in conduct that caused a situation manifesting an extreme indifference to the truth seeking process, and the value of Mr. Fields life. This egregious abuse of governmental power severely violates Fields' interest and/or right in not being the subject of arbitrary authority. This kind of official misconduct involves the willful illegal exercise of discretion and it implicates substantial due process because it affects Fields' right to be free of the abuse of power, and it affects his right to Life. There should be absolutely no doubt that the major component in this malicious prosecution is the prosecution(s) Solicitation of Fields' Murder vial lethal injection, which wholly, or in part Contributed to Fields' wrongful conviction.

## PERJURY AND/OR SUBORNING PERJURY

The government formed a " Hit Squad " of henchmen that it used to frame Fields by fabricating evidence. The many incident(s) of perjury and suborning perjury is extensive, too many incidents to recount in this limited space, but here we will lay out several for the purpose of establishing the allegation(s):

(A). Edward Lee "Treyboy" Outley alleged that Fields admitted to him that he killed Coleman, but before Fields could tell him any details about the murder he'd stopped Fields and said that he didn't want to know. ( See App 60.                            ).

Prior to trial, a William "Skeeter" Young contacted authorities from Beaumont Federal Prison where he was doing time with Outley and tried to make a deal to testify against Fields based on what Outley told him. Young said that Outley told him that he (Outley) was indeed at the crime scene when Coleman was murdered and that Fields

24

had " shot her in the head two times."   The government couldn't use Mr. Young to lie on Fields because Fields was never in Beaumont Federal Prison, and his testimony was hearsay. But Fields could use Mr. Young to impeach Outley whom had always said that he was never at the crime scene. ( See App. 61 ).

When Fields' defense team talked to Young, Mr. Young said that he would not help Fields because " Fields shot his brother."  In any event Fields subpoenaed Young anyway.

At trial Young retracted his statement that Outley said that he was at the crime scene, but testified that Outley said that the victim was shot in the head two times. ( See App 62                         ). If Outley had been telling the truth about stopping Fields before he could tell him any details about the murder then Outley wasn't supposed to know that Coleman was "shot in the head two times", the only way he could know that is if he helped Shalaykea "Lakie" Scroggins kill Coleman like Fields said.

The government scrambled to counter Young's testimony, they procured ATF Agent Douglas Kunze to lie and say that he met with Young the day before and Young told him that he don't even know Outley. ( See  App 63.          •                      ).

That was a blatant lie, Outley sold drugs for William "Skeeter" Young in 1989-1990, and Young admitted that he do indeed know Outley. ( See App 64                      ). Also Outley admits that he know Young. ( See App 65                      ). But there is a bigger issue here. Fields subpoenaed William "Skeeter" Young in an Ex Parte hearing and had it sealed. The Judge even assured Fields that no one knew who his witnesses were, so there is no way ATF Agent Kunze could have "talked to William Young the day before" like he claimed unless Judge Smith or someone working for Judge Smith was giving the government confidential information. The government didn't subpoena Young because his testimony was of no value to them, so they weren't even supposed to know that Young was in Waco, thus it's obvious here that the prosecution suborned perjury, and ATF Agent Douglas Kunze committed perjury.


(B). A woman named Tammy Edwards called the police on November 15, 2001 alleging that an "unknown black male" carjacked her. And after a suggestive identification, when without provocation a security guard ran up to her and said " Did you see Sherman Fields?" She identified Fields. ( See App. 66            ).

Two years later as Edwards sued Civigenics, the jail that Fields walked out of she changed her story claiming that she knew it was Fields all along. ( See App. 67        ). Then she said " Oh, he shot at me too." See App. 68            ). In closing in trial the prosecutor lied and said that Edwards " never said that she was carjacked by an unknown black male."

25

In the police report Mrs. Edwards said that the alleged assailant was wearing a hat, but at trial she said that Fields was the assailant and his "hair was short". How did she see that the assailant had "short hair" if he was wearing a hat?

In her statement Edwards said that she was "screaming and hollaring for help the whole time", but at trial she said that she couldn't scream because she was being choked. The police said that Edwards had bandages on her hands from where she'd been injured during the struggle, but Edwards said that there were no bandages. The police said that the gun was "black" that the alleged assailant used, but Tammy Edwards said that the gun was "green". Tammy Edwards claimed that there was a struggle, amid screaming and hollaring, and a "gunshot" at shift change at a major hospital, and no one saw or heard anything but her; That's impossible!

Tammy Edwards husband, Darryl Edwards robbed an elderly couple and murdered the woman, he pled guilty to a Life sentence to avoid the Death penalty and Tammy Edwards still drive to the prison to visit him on a regular basis. Fields believes that the Edwards' used his unfortunate situation to scam Civigenics, the jail that Fields walked out of. In her deposition, Mrs. Edwards said that she " Hope she win " her lawsuit against Civigenics.

In any event, at trial the prosecution led a Detective Steve January into perjury claiming that " there was no fingerprints or nothing " in the alleged carjacking vehicle, " this thing was clean." ( See App 69                              ). That is a blatant lie, there were twelve latent prints all of AFIS quality. ( See App.     70     ). Those prints were checked against Fields prints and there was no match. ( See App.     71         ). Thus there is no doubt that the prosecution suborned perjury, and Detective January and Tammy Edwards committed perjury.


(C). Christian "Chae" Walker wrote a statement on December 5, 2001 stating that Fields didn't confess to him. ( See App.   72       ). On December 6, 2001 Walker wrote another statement stating that Fields never confessed to him, but he "thought" Fields had done something to Coleman. ( See App.  73            ).

Walker is a close friend of the victims family and referred to the victim as his "Little sister".

The government gave Walker a time reduction based on the December 5th and December 6th statements stating that Walker's testimony was truthful, reliable and complete. ( See App.    74       ).

That same month Walker started corresponding with Shalaykea "Lakie" Scroggins and Walker was also still communicating with Edward "Lee" Treyboy Outley.

At trial, two days before Walker was set to testify about "giving Outley the alleged murder weapon", the government approached the defense and informed them

26

that "Walker changed his story " and he's " now going to testify that Fields confessed to him."

Fields tried to prove that Walker got his information from either Outley or Scroggins, or both. On cross examination Fields asked Walker do he talk to Outley? Walker said " Yes. But not about the case." ( See App 75                    ). The government knew that was a blatant lie. The government knew about the letter that Outley wrote Walker telling him to lie and say that he gave him the alleged murder weapon. And also when Walker went to the Grand Jury he admitted that he was just "downstairs in the holding tank with Outley talking about the case". ( See App.   76       ). Thus there is no doubt that the prosecution suborned perjury and/or refused to correct a false statement, and Chris Walker committed perjury.

(D). In November 2003, two years after Coleman's murder, and just two months before trial an inmate Kevin Lamar Burton "came forward" when he was in Three Rivers Federal Prison with Christian "Chae" Walker and alleged that on November 16, 2001 Fields confessed to him at a drug house on Proctor street in Waco, Texas, and Fields was in a 4-door red Grand Am and Outley was  "in a Jaguar".

Fields don't know Burton and had never even seen him before until he was called to the witness stand at trial. However the government had to know that Burton was lying and had obviously gotten his information from Walker, or Scroggins or Outley whom Burton also knows.

Burton said that Fields was in a 4-door red Grand Am on November the 16th; The Grand Am is a two door, not a 4-door, it went to the forensics lab on the 14th, and it's a proven fact that the Grand Am was no longer in the picture after the night of Coleman's murder, which was two weeks prior to when Burton claim.

Also Outley went to jail on November the 13th, so Burton couldn't have possibly seen him " in a Jaguar" on the 16th, and just like the Grand Am it's a proven fact that the Jaguar was no longer in Outley's possession after the night of Coleman's murder.  It's obvious what happened here, whoever Burton got this story from either told Burton that Coleman was murdered on November the 6th and Burton thought (they) said the 16th; or whoever told Burton the story got the date wrong and told him that it was the 16th; In any event the government knew, or should have known that Burton was lying.

(E). In February 2003 a Homero DeLeon came forward claiming that Fields confessed to him "because he wasn't on the governments witness list to testify". ( See App. 77      ). But at the time the government didn't even have a "witness list, the governments witness list is dated January 2004.

In any event, Just like Burton, Fields don't know DeLeon and had never seen him

before until he was called to the witness stand to testify.

DeLeon testified that Fields told him who went to the Grand Jury on him and named five people. ( See App 78                     ). DeLeon admits that he know all of the people that he named. ( See App 79                     ). The government knew Deleon was committing perjury, not one person Deleon named went to the Grand Jury on Fields, they all went to provide information on the guard that was bringing contraband into the jail. The woman that Deleon named, Andrea Sais, she wasn't even in jail, she don't know Fields, nor do Fields know her, Andrea Sais, role was that she was paying the guard to take contraband into the jail to her brother, Steve Sais, thus it don't make sense for Fields to tell Deleon that she went to the Grand Jury on him.

Fields was a segregated inmate, his cell right by the officer's desk and there was an observation sheet on Fields' door that the officer's had to sign every 15-minutes and write down everything Fields did and/or said. The officer's admit that Fields only ever talked to one inmate, an elderly gentlemen named Francisco "Pancho" Rios, and all they ever talked about was food. And if Fields had hollared across the hall and confessed to Deleon like he claim they, and every other inmate would have heard it. ( See App. 80                 ).

In any event, at trial the prosecution procured ATF Agent Douglas Kunze to lie and say that Fields had to tell DeLeon that because they'd given the Grand Jury transcripts to the defense " early on in the investigation." ( See App 81                     ). Yet they knew that was a lie because in July 2003 Fields' attorney's was still asking the prosecution for the Grand Jury transcripts. ( See App.      82            ). Thus there is no doubt that the government suborned perjury, and inmate Deleon and ATF Agent Douglas Kunze committed perjury.

(F). On the night that Fields was rearrested following the "escape" law enforcement surrounded the apartment of convicted sex offender Hubert Steadman after Steadman, his then girlfriend, and Christian "Chae" Walker lured Fields to Steadman's apartment in anticipation of collecting some reward money for Fields' arrest.

Walker had informed Fields that Keith and Tay Young, and several other guys were looking for Fields with firearms. Walker offered Fields a gun, he gave Fields the weapon of unknown caliber but told Fields that he would have to go get the gun from his childhood friend, Hubert Steadman.

Fields went to Steadman's house where Steadman claimed that he'd let "a friend" borrow the gun. Steadman told Fields to "sit tight" while he went to get the gun. Steadman left the house and called the police. The police surrounded the house and Fields surrendered without incident.

U.S. Marshal Parnell McNamara claimed that he asked Fields did he have a gun and Fields said " Yes " and told McNamara where to find the gun. ( See App. 83 ). However Hubert Steadman admits that it was he whom claimed that Fields had a gun, Steadman said that the Marshals went into the house looking for the gun and couldn't find it, so he (Steadman) went in and "found" the gun for them. ( See App. 84 ). Also this officer's statement confirms that Fields never told Marshal Parnell that he had a gun. ( See App. 85 ).

The .22 recovered was obviously not the murder weapon, but Marshal Mcnamara's false testimony is the sole evidence supporting a felon in possession conviction, and a using and carrying a firearm during crime(s) of violence. There is no statement from McNamara, the government made a "spur of the moment" decision to procure him to lie and claim that Fields confessed to possessing the .22. There should be no doubt that the prosecution suborned perjury, and Marshal Mcnamara committed perjury.

## ARGUMENT

There is no doubt whatsoever that the prosecution intentionally , deliberately, willfully, knowingly with malice aforethought used law enforcement and inmate "witnesses" to mislead the jury and defraud the Court(s) so they could frame Fields for Coleman's murder and murder Fields via lethal injection. Every time Fields impeached one of their witnesses and/or challenged their case with substantial and credible evidence the prosecution procured law enforcement to lie, using them to defraud the Court into overlooking the real evidence that exonerates Fields and implicates Edward Lee "Treyboy" Outley and Shalaykea "Lakie" Scroggins in Coleman's murder.

The Court's have held that " the supervisory powers of the Courts is reserved to protect the integrity of the federal courts; United States v. Chiavola, 744 F.2d 1271, 1274 (7th Cir. 1984). The policy is concerned with the extent to which fraud on the courts converts the Courts into an instrument of the party's deception. cf. Mcnabb v. United States, 318 U.S. 332, 347 87 L.Ed 819, 63 S.Ct. 608 ( Court is not concerned with law enforcement " except insofar as the courts themselves become instruments of law enforcement.) Chiavola , 744 F.2d at 1274 ( fraud on the court common factor in cases in which Courts have exercised their supervisory power.) Recognizing a Court's inherent authority to correct injustice perpetrated through it by a party's lying in Court is not novel, and does not augment a Court's power

29

regarding probation beyond what Congress allowed. Fields have shown by clear and convincing evidence that the government pollinated, primed and pumped witnesses to testify to a parade of perjury. The Supreme Court has defined perjury in the context of an obstruction of Justice sentencing enhancement as "false testimony concerning a material matter with the willful intent to provide false testimony." United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed. 2d 445 (1993). There is no doubt that the perjury here in Fields case was willful and deliberate and it was intended to defraud the Court in regards to everything material. The Dunnigan example leaves no doubt that the violation is indeed criminal, and the prosecution cannot, up under any circumstances commit criminal act(s) in order to obtain and sustain a criminal conviction. ( Bearing in mind that this isn't Justice sought, but a willful and deliberate malicious prosecution."

The Supreme Court have held that knowingly false or misleading testimony by law enforcement officer(s) is imputed to the prosecution; Wedra v. Thomas, 671 F.2d 713, 717 n.1 (2d 1982); Curran v. Delaware, 259 F.2d 707, 712-713 (3d Cir. 1958) (citing Pyle v. Kansas, 317 U.S. 213, 87 L.Ed 214, 63 S.Ct. 177 (1942); The knowing use of perjured testimony constitutes a due process violation as defined in Kyles v. Whitley, 514 U.S . 419, 435, 131 L.Ed. 2d 490, 115 S.Ct. 155 (1995). The government knew that Detective Spillman and Marshal Casson was committing perjury when they said that Fields became "angry" and/or "Irate" when he came into contact with Coleman; The government knew that Outley and Scroggins were committing perjury when they claimed that they were in a "Blue" jaguar when Coleman was murdered; The government knew that Detective Colyer was committing perjury when he said that the Grand Am " Looked detailed" or "wiped down"; The government knew that Detective January was committing perjury when he said that there were no fingerprints in the alleged carjacking vehicle; The government knew that Marshal McNamara was committing perjury when he said that Fields told him that he had a gun and told him where to find it. The aforementioned leaves no doubt that the prosecution used an "unconscionable plan and/or scheme" to improperly influence the Courts decision by fabricating evidence, using law enforcement officer's to improperly and illegaly staunch every material fact in Fields' favor, and to hide, suppress, conceal and/or withhold exculpatory and impeachment evidence.

Because the prosecution have those photographs in their possession; And they also have the forensics reports in their possession that shows that the car wasn't "clean" and/or "detailed"; And they also know that even if a vehicle is "detailed" forensics still would find blood, there is no doubt that the prosecution knew that Colyer's testimony was false. And clearly established Federal law states that the government has a duty not to use false testimony. Giglio v. United States, 405, 150, 92 S.Ct. 763 766, 31 L.Ed. 2d 104 (1972); Williams v. Griswald, 743 F.2d 1533, 1541 (11th Cir. 1984).

30

In Napue v. Illinois, 360 U.S. 264, 269, 3 L.Ed. 2d 1217, 79 S.Ct. 1173 (1959), Chief Justice Warren wrote for the Court: " First it is established that a conviction obtained through the use of false evidence, known to be such by representatives of the State, must fail under the Fourteenth Amendment; The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected." In Fields' case the prosecution did solicit and use false evidence thus Fields' conviction must fail.

THIS COURT SHOULD GRANT THIS "EXTRAORDINARY WRIT" BECAUSE THE SAFEGUARDS PUT IN PLACE IN GREGG V. GEORGIA AND ITS PROGENCY FAILED TO PROTECT FIELDS FROM FRAUD ON THE COURT(S).

When Fields was 15 years old he met and started dating 18 year old April Vasquez. At the time Vasquez was also dating a Derrick Bradshaw whom was her age. Bradshaw couldn't accept the fact that he'd lost Vasquez to Fields and one night as Fields and Vasquez walked home from the store Bradshaw drove up on them and started shooting; He shot Vasquez in the leg.

Fields "let the police handle it". But shortly thereafter Bradshaw pulled a gun on Fields again. This time Fields obtained a gun himself, went by Bradshaw's house and shot back. Bradshaw's stepfather was most likely struck by some flying glass, his injury did not require hospitalization.

In any event when Fields turned 18 years old he accepted responsibility, pled guilty and was sentenced to eight years in State prison.

Fields got out of prison exactly 8-years later, and shortly thereafter he got into an altercation with a guy that was disrespecting a young lady that Fields know. The guy left the scene and hired a Hit Man named LaDon King to kill Fields, and when Fields and the Hit Man crossed paths King almost killed Fields. Fields ran, but fell, fortunately some security guards saw what was happening and chased the Hit Man away. The Hit Man came back the next day and Fields shot him.

The police surrounded Fields' cousin's house, ordered the homeowner out of the house and ran in and found Fields hiding in a closet. After Fields was handcuffed the police found 28-9-millimeter bullets in his pocket so they started searching the house and found a 9-millimeter handgun under a mattress.

Ten months later when the State realized that they wouldn't be able to prosecute Fields on State charges they pushed the government to charge Fields with the 9-millimeter.

The government charged Fields with being a Felon in possession of a firearm; Felon in possession of Ammunition; And Felon in possession of a firearm with an obliterated serial number.

Fields' attorney went to the prosecution with a necessity defense, but the

31

government said that Fields " should have just called the police." The government's "logic" was totally "illogical", the Hit Man was already Wanted for shooting another guy 8-times with a .40 Caliber and a host of other violent offenses and the police had failed to apprehend him. And after the Hit Man got shot he escaped from the hospital, pulled a gun on a police officer and got away again; The police couldn't even handle the Hit Man.

In any event Fields made the worst mistake of his life, he offered a jailor $5,000 for a key to the fire escape door, and he used the key to open the door, and he walked away from the jail. That same night Suncerey Coleman was shot and killed.

In both incidents where Fields discharged a firearm the government have repeatedly omitted the fact that Fields wasn't the aggressor, he "reacted" only after, in both cases the guys tried to murder him "twice". (quoting the prosecution verbatim in their brief in opposition of Writ of Certiorari): " The government introduced testimony concerning petitioner's prior involvement with violent crime. A Waco, Texas police detective testified that in 1992, petitioner pleaded guilty to attempted murder with a deadly weapon after shooting a man in the head during a drive-by shooting. 15 Trial Tr. 2149-2150. Following his release from an eight year prison sentence for the crime, petitioner took part in another shooting. Id. at 2176-2177. When petitioner was ultimately arrested for this second shooting he was in possession of a firearm. Ibid."

Also when Fields was a child, 13, 14 years old, Fields was diagnosed with PTSD, bipolar and schizophrenia and placed on strong antidepressants and placed on Social Security disability after all of his friends were murdered. When Fields went to prison in 1992 he married April Vasquez by proxy, Vasquez continued to get Fields' SSI benefits. This was unbeknownst to Fields, and he had someone call the Social Security company and tell them that he was incarcerated. This led to the discovery that Vasquez was getting the checks and she was arrested and placed on probation.

Vasquez blamed Fields. At trial in 2004, the government recruited Vasquez as a "witness" against Fields. ( quoting the government verbatim in their brief in opposition of writ of certiorari): " The government also presented testimony from petitioner's ex-wife, April Fields (Vasquez), the mother of 3 of petitioners children. 15 Trial Tr. 2201-2202. Fields (Vasquez) testified that petitioner frequently raped her, beat her, and threatened to kill her. Id at 2203-2205."

The government conveniently left out that Vasquez claimed that when Fields would "beat", "rape" and/or "threaten to kill her" she would call the police, and Fields' family would say that Fields didn't do nothing to her and the police would "just leave".

( Fields incorporates all of the Fraud on the Court(s) in the other claims throughout this petition.)

32

ARGUMENT

" Perjury committed in the course of legal proceedings is a Fraud On The Court."
See e.g., Allen v. Chicago Transit Auth., 317 F.3d 696, 703 (7th Cir. 2003); Thomas
v. Gen. Motors Acceptance Corp., 288 F.3d 305, 306-07 (7th Cir. 2000). The Fraud On
The Court "trickled up" from the District Court, to the 5th Circuit, on up to the
Supreme Court on cert. In order for the prosecution to prevail they had to continue
the false narrative(s) and vouch for the false and fabricated evidence that anchors
Fields' wrongful conviction and death sentence , and they did it with the intention to
deceive, manipulate and defraud. Private Securities Litigation Reform Act of 1995
(PSLRA), 109 Stat. 737, 15 U.S.C.S. 78 u-(4)(b)(1),(2). The prosecutions willful
Omission that the two prior shootings was a reaction to people that both tried to
murder Fields "twice", and in one case the guy was a Hit Man contracted to murder
Fields was intended to create the false impression that Fields was an out-of-control
violent mad man out shooting innocent people for nothing when in fact that isn't the
case at all.

" A scheme to defraud requires proof of material misrepresentations, or the omission
or concealment of material facts...reasonably calculated to deceive." Rozier v. Ford
Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978); United States v. Hasson, 333 F.3d at
1270-71. The omission of the material fact that the governments own expert admitted
that they have forensics technology that would still find blood in a "detailed" or
"wiped down vehicle and that the alleged "stain" was tested in two different labs and
it wasn't blood is proof of material misrepresentations intended to deceive. The
omission of the material fact that there were indeed fingerprints in the alleged
carjacking vehicle and they don't match Fields is proof of material misrepresentations
intended to deceive; Or the fact that phone records do indeed cover land lines.
" Intent to defraud need not be shown through active misrepresentation, material omissions
can be fraudulent if they are intended to create a false impression." ( Citing Neder v.
United States, 527 U.S.1, 25, 119 S.Ct. 1827, 1841, 144 L.ed. 2d 35 (1999)); Langford
Rite Aid of Ala., Inc., 231 F.3d 1308, 1312 (11th Cir. 2000). The government knew that
April Vasquez was lying when she said that Fields beat, raped and threatened to kill
her and she would call the police and the police would "just leave". Texas have a zero
tolerance policy for domestic abuse, if anyone call the police and make those allegations
the police isn't going to "just leave", and the government know that. The police would
have arrested Fields and took Vasquez to the hospital for a rape examination and recorded
her supposed injuries. Yet the government continue to defraud the Court(s) by continuing
Vasquez's false narrative (allegations).

" A claim of prosecutorial fraud does not rely on a new rule of constitutional law,

33

and may not establish by clear and convincing evidence that...No reasonable factfinder would have found the applicant guilty of the underlying offense." It is a claim that nonetheless must be recognized." Mobley v. Head, 306 F.3d 1096, 1100-1105 (CA11 2002). " For example, if a Death row inmate could show that the State indeed committed Fraud Upon the District Court during the habeas Corpus proceeding, it would be a miscarriage of justice if we turned a blind eye to such abuse of the judicial process." Abu-Ali Abdur' Rahman v. Ricky Bell, 154 L.Ed. 2d 501, 537 U.S. 88 (2002). " The Supreme Court has repeatedly held that Federal Courts possess the inherent power " to vacate [their] own judgments upon proof that a fraud has been perpetrated upon the Court." Chambers v. NASCO, Inc., 501 U.S. 32, 44, 115 L.Ed. 2d 27, 111 S.Ct. 2123 (1991) (citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 88 L.Ed 1250, 64 S.Ct. 997 (1944)) (Some elements of the inherent Authority are so essential to "The Judicial Power", U.S. Const., Art. III, § 1, that they are indefeasible...") Fields case provides the additional challenge of being obstructed by Judicial bias in the District Court and the 5th Circuit. The innuendo, half truths, rhetorical hyperbole and outright willful lies, calculated by the prosecution to defraud prevented Fields from fully and fairly presenting his case and/or defense; Frederick v. Kirby Tankships, Inc., 205 F.3d at 1287 (11th Cir. 2000); Scutieri v. Paige, 808 F.2d at 794 (11th Cir. 1987); Rozier v. Ford Motor Co; Supra. The prosecutors violated their duty of honesty to the Courts. Sawyer v. Collins, 986 F.2d 1493, 1497 (5th Cir. 1993); citing Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed. 2d 1090 (1983) The species of fraud that the government perpetrated subverted the integrity of the Court(s) itself so that the Judicial machinery could not perform in the usual manner and the impartial functions of the Court have been directly corrupted. See Pfizer Inc., v. Int'L Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976), cert. denied, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed. 2d 751 (1977); Abdur v. Bell; Supra.

THIS COURT SHOULD GRANT THIS "EXTRAORDINARY WRIT" BECAUSE THE SAFEGUARDS PUT IN PLACE IN GREGG V. GEORGIA AND ITS PROGENCY TO PROTECT AGINST WRONGFUL CONVICTION FAILED TO PROTECT FIELDS FROM A CONVICTION AND DEATH SENTENCE INFLUENCED BY PASSION, PREJUDICE AND OTHER ARBITRARY FACTORS.

There was no evidence linking Fields to the murder as one would expect when the defendant is Innocent. But the prosecution wanted to "make an example" out of Fields for walking away from that jail so they went "seeking jailhouse testimony" and built a case strictly off "jailhouse testimony". There is no doubt that the government knew or should have known that the inmates were lying, yet then and now the government insists that the inmate testimony is "overwhelming evidence" of Fields' guilt.

However the jury disagreed:

All of the inmates testimony was geared towards premeditation, and in closing the

34

prosecution summed up that testimony and vigorously argued premeditation and implored the jury to find that it was premeditation. ( See Trial Transcripts; Governments Closing argument ). But the jury found that it was not premeditation. ( See App. 86 ). Thus the jury did not believe the inmates. There could be no other reason for Fields' conviction other than the fact that it was influenced by passion, prejudice and other arbitrary factors.


## ARGUMENT


The Georgia Statute, as amended following Furman v. Georgia, 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726, held that " the Court must consider whether the sentence was influenced by passion, prejudice, or any other arbitrary factor." The prosecution lying and saying that the car "looked detailed" undoubtedly influenced the jury because that was the jury's sole question at guilt/innocence, and right after the Judge denied their request for the forensics the jury returned the guilty verdict; The Judge telling the jury that the indictment meant that it's "more likely than not" that Fields committed the crime; The Judge telling the juror that if the  prosecution thought that Fields' rights were being violated they would dismiss the charges; This was extremely prejudicial being that the prosecution went "seeking jailhouse testimony", fabricated evidence against Fields, withheld exculpatory and impeachment evidence, committed criminal act(s) in order to help Outley and Scroggins hide the Jaguar, and defrauded the Court(s). These arbitrary factors undoubtedly influenced the verdict.

Also the prosecution flooded the jury with numerous very graphic crime scene and autopsy photo's. The 5th Circuit even admits " Many of the photo's are, as the defendant posits, shocking." United States v, Fields 483 F.3d 313 (5th Cir. 2007).

The jury also put alot of trust in police officer's, stating ( in their jury questionnaires ) that "police officer's must be obeyed at all times." Thus it appears that while discounting the inmate testimony the jury took the police lies at face value; (i.e) Detective January's perjury that there were no fingerprints in the alleged carjacking vehicle; Detective Colyer's lie that the Grand am "looked detailed; The prosecutor's lie that phone records only show calls to cell phone's; etcetera, etcetera, etcetera, the perjury committed by law enforcement goes on and on.

" It has been held that knowingly false or misleading testimony by law enforcement officer(s) is imputed to the prosecution; Wedra v. Thomas; Supra; Curran v. Delaware; Supra (citing Pyle v. Kansas; Supra). Law enforcement's blatant act(s) of perjury undoubtedly influenced the verdict, but there are more arbitrary factor(s); Such as: (1) The jurors belief that "Black males commit most violent crimes"; (2) The fact that " a group of blacks " jumped on one jurors daughter and son-in-law; (3). Another juror

35

said that her preachers father was murdered and the man that killed him didn't do not one day in jail; ( Thus it's only logical to believe that she didn't want someone else to "get away with murder" like she believe the man did that killed her preachers father.) And there is a host of other arbitrary factors too numerous to name in this limited space.

The above proves that there is an unacceptable risk that the jury undoubtedly imposed Fields' death sentence under the influence of passion, prejudice and/or other arbitrary factor(s). 18 U.S.C.S. 3595(c)(2)(a).

## THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT IS ILLEGAL AND UNCONSTITUTIONAL.

The Antiterrorism and Effective Death Penalty Act is illegal and Unconstitutional because: (1). It abridge the rights of the people and violate the Constitution; (2). Any law that allows for open ended criminal violation(s) against the people abridge the rights of said people and is therefore Unconstitutional; (3). Any law that either directly or indirectly support the reckless disregard for human life is illegal and Unconstitutional; (4). The AEDPA's restrictions forces the Court(s) to Aid and Abet criminal homicide (in the pretense of justice); (5). The AEDPA fail to provide for meaningful Appellate review in the event of a conviction and death sentence; (6). The AEDPA's restrictions allow for discriminatory application; (7). The AEDPA's restrictions victimize the innocent; (8). If a defendant fail to bring a meritorious issue to the Court before the one year statute of limitations imposed by the ARDPA concludes, for " whatever the reason may be ", then the defendant, whether he's guilty or innocent just have to die because the AEDPA restricts him from obtaining relief on that issue; (9). The AEDPA places Unconstitutional restrictions on the Court(s), barring them from acting " at any stage ", even where it's clear the defendant's Constitutional Rights have been violated; (10). The AEDPA forces the Court(s) to ignore the violation of defendant's Constitutional Rights; (11). It's illegal and Unconstitutional for Congress to make a law (AEDPA) that places their rush to finality before violations of the Constitution; (12). In the event an appeal is denied due to an unreasonable determination of the facts the AEDPA doesn't allow for honest adjudication on the merits; (13). When the AEDPA was enacted Congress failed to consider the off chance that Judicial Bias at trial and on appeal would pollute the process; (14). The Court(s) definition of "extraordinary circumstances" and "extraordinary case" is Unconstitutionally vague, and Unconstitutionally limiting; (15). The AEDPA's restrictions allows for fundamental miscarriages of Justice.

### ARGUMENT

The facts here within Fields's case exposes the illegal and Unconstitutional defects in the Antiterrorism and effective Death Penalty Act. In Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 176, 2 L.Ed. 60 (1803), the Court held that " the powers of the legislature are defined and limited; and those limits may not be mistaken or forgotten, the Constitution is written." Thus Congress do indeed have the right to make laws, But Congress don't have the right to make laws that abridge the rights of the people and violate the Constitution." The AEDPA's restrictions promote the willful and deliberate and knowing violation of Fields and other Capital defendants Constitutional rights. The law itself convey the message: " We don't care if your rights have been violated; We don't care if you're innocent, if you don't meet the one year statute of limitations imposed by the AEDPA we're going to murder you "; That stance alone regress the Death Penalty rather than make it progressive. In the case of fields, he filed his Pro Se petition even before the statute of limitations were up and the 5th Circuit Court of Appeals rejected it because Fields " had attorney's." Fields even elected to "relieve counsel of their duty" so his brief could be heard, yet the 5th Circuit still refused. Counsel for Fields then filed a brief on Fields behalf. The 5th Circuit denied the issues presented in that brief based on an unreasonable determination of the facts, due in part to Fraud On the Court and Judicial Bias. The 5th Circuit also alleged that Fields didn't assert issues that Fields clearly did assert...in the pro se brief that the Court refused to consider. Now Fields' impediment is the AEDPA; Thus Fields have been, and still is in a no-win situation because of this illegal and Unconstitutional law.

When enacting the AEDPA it's clear that Congress didn't factor in a case like Fields where the District Court (Western District of Texas-Waco Division), and the 5th Circuit Court of appeals, by and through bias Judges illegally and Unconstitutionally denied Fields relief. The false evidence that marred Fields' trial and defrauded the Court(s) on appeal is immense, thus the AEDPA restricting Fields from exposing the fact that the Court(s) opinion(s) is not only clearly erroneous, but the product of bias Judges abusing their discretion is a clear indication that the AEDPA is illegal and Unconstitutional. Furthermore the argument, when the 5th Circuit referred to the forensic experts testimony where he said that he found a "stain" that could possibly be blood, but refused to allow Fields to present that very same experts forensic report where he tested the "stain" and it was not blood undoubtedly show(s) the Court's bias and the species of Fraud perpetrated on the Court.

The facts of the case doesn't support the denial of Fields' habeas Petition, and it exposes the debilitating flaws in the AEDPA. For Fields, an innocent man,  the AEDPA forces the Court to Aid and Abet Fields' murder via lethal injection, which is a

37

violation of the 5th, 8th, 9th and 14th Amendments to the United States Constitution.

The peculiar circumstances of the moment when congress enacted the AEDPA might have rendered the measure more or less wise, but it cannot render it Constitutional, and there can be no question that it is the responsibility of the Court to enforce the limits on Federal Power (132 S.Ct. 2580) by striking down acts of Congress that transgress those limits. Marbury v. Madison; Supra, at 175-176, 2 L.Ed. 60. The question before the Court must be considered against the backdrop of these basic principles. The AEDPA is volatile of the 5th, 8th, 9th and 14th Amendment(s) because the State and/or Governments misguided right to kill their citizens in the name of justice cannot be construed to deny or disparage the rights retained by the people under the United States Constitution. With the evidence herein there should be no doubt that Fields' death penalty was arbitrarily imposed. In Furman v. Georgia (1972) 408 US 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726, In a concurring opinion by Mr. Justice Douglas, it was stated that a penalty should be considered unusually imposed if it is administered arbitrarily or discriminatorily. Fields' case, in my opinion is "extreme", and " it is true that extreme cases often test the bounds of established legal principles, and sometimes no administrable standard may be available to address the perceived wrong. But it is also true that extreme cases are more likely to cross constitutional limits, requiring the Courts intervention and formulation of objective standards. This is particularly true when due process is violated. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 846-847, 118 S.Ct. 1708, 140 L.Ed. 2d 1043 (1998) (reiterating the due process prohibition on "executive abuse of power...which shocks the conscience") By permitting a death penalty Statute to displace that of common sense and logic the AEDPA's appellate scheme has led to curious and potentially arbitrary outcomes. For example, almost all exonerations prevail on successive review after the Courts determine that guilt is conclusive and deny a defendants first round of appeals, including habeas. The AEDPA makes it virtually impossible to file a successive appeal, thus the innocent will die. See http://www.innocenceproject.org/Content/Cameron_Todd_Willingham_Posthumous_ Pardon_Filing_Documents.php.

The AEDPA reflects prejudice and antipathy-a view that (even if someone is actually innocent) they are not as worthy or deserving to prove such; For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, the law should be subjected to (rejection/repeal). Adhering to the AEDPA's strict restrictions in Fields' case is a violation of Federal law; (1). It will allow an innocent man to be murdered; (2). It allows the prosecution to act with the most egregious criminal intent; (3). And it totally decimates the integrity of the Federal Courts. In this instance the AEDPA's end result do not seem to square with our 8th Amendment jurisprudence. See Furman v. Georgia; Supra (Brennan, J., concurring) (" In

determining whether a punishment comports with human dignity, we are aided by [the principle] that the State must not arbitrarily inflict a severe punishment"); Gregg v. Georgia; Supra (joint opinion of Stewart, Powell, and Stevens, JJ.) (" Furman held that [the death penalty] could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner"). And they raise important concerns that are worthy of the Court's review. " Sensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations." Schlup, 513 U.S., at 324, 115 S.Ct. 851, 130 L.Ed. 2d 808. But injustice often prevail in the wake of AEDPA's constricting statute of limitations, which in turn makes the law illegal and unconstitutional.

## THE DEATH PENALTY IS ILLEGAL AND UNCONSTITUTIONAL.

The death penalty is illegal and Unconstitutional because the safeguards put in place in Gregg v. Georgia and its progency to protect not only the rights of the innocent, but the rights of all american people from wrongful conviction (1). Failed to protect Fields from an unreasonable determination of the facts; (2). Fail to protect the innocent; (3). Fail to protect defendants from Death Sentences influenced by passion, prejudice and other arbitrary factors; (4). Failed to protect Fields from Fraud On the Court; (5). Failed to protect Fields from criminal act(s) orchestrated and carried out by the prosecution; (6). Failed to protect Fields from Judicial bias; (7). Failed to protect Fields from the prosecution violating Brady v. Maryland and withholding impeachment and exculpatory evidence; (8). Failed to protect Fields from the prosecution suborning perjury; (9). Failed to protect Fields from witness perjury; (10). Failed to protect Fields from the discriminatory application of the Death Penalty; (12). Failed to protect Fields from a law (AEDPA) that abridge and violate his (and other American(s) Constitutional rights; (13). Failed to protect Fields' Due Process Rights; (14). The Death penalty is Cruel and Unusual punishment; (15). Fields incorporate every reason from page one, herein to its conclusion; (16). The Death Penalty is illegal and Unconstitutional for every known and unknown reason.

## ARGUMENT

The Supreme Court has long acknowledged that Death is fundamentally different from any other punishment; Furman v. Georgia; Supra (Brennan J., concurring); Gregg v. Georgia;

Supra (joint opinion of Stewart, Powell, and Stevens, JJ). "For that reason we have required States to apply special procedural safeguards to "minimize the risk of wholly arbitrary and capricious action " in imposing the death penalty." Gregg, 428 U.S. at 189, 195, 96 S.Ct. 2909, 49 L.Ed. 2d 859 (1976) (joint opinion of Stewart, Powell and Stevens, JJ.); See also Ring v. Arizona, 536 U.S. 584, 614, 122 S.Ct. 2428, 153 L.Ed 2d 556 (2002) (Breyer, J., concurring in judgment) (explaining that without adequate safeguards, " the constitutional prohibition against ' cruel and unusual punishments ' would forbid [the] use " of the Death penalty).

The facts in Fields' case expose fatal flaws in the Death Penalty that renders the Act illegal and Unconstitutional. The lower Court(s) unfettered discretion, bias Judges, and the Supreme Court's practice of taking less that 1% of "all cases" have led to discriminatory and arbitrary application of the Death Penalty, the very same Unconstitutional impediment(s) that Gregg and its progeny sought to prevent.

The Courts decision in 1976 upholding the Constitutionality of the Death Penalty relied heavily on the belief that adequate procedures were in place that would avoid the danger of discriminatory application identified by Justice Douglas' opinion in Furman, id., at 240-257, 92 S.Ct. 2726, 33 L.Ed. 2d 346 (concurring opinion), of arbitrary application identified by Justice Stewart, id., at 306, 92 S.Ct. 2726, 33 L.Ed. 2d 346 (same), and of excessiveness identified by Justices Brennan and Marshall. In subsequent years a number of Courts decisions relied on the premise that "death is different" from every other form of punishment to justify rules minimizing the risk of error in Capital cases. See, e.g., Gardner v. Florida, 430 U.S. 349, 357-358, 97 S.Ct. 1197, 51 L.Ed. 2d 393 (1977) (plurality opinion). Ironically, however, more recent cases have endorsed procedures that provide less protections to Capital defendants than to ordinary offenders.

Prosecutor(s) know how to scheme and beat/trick the system. In cases where there is no evidence connecting the defendant to the crime, like here in Fields, the prosecution can just solicit, procure and use false testimony/evidence to obtain the conviction and it shifts the burden of proof onto the condemned. That, coupled with bias Judge(s) places an undue and impossible burden on the defendant and makes relief impossible. The law is clear, prosecutor's cannot knowingly use false testimony/evidence, yet they do and they did here in Fields and effectively outsmarted the scriptures of Gregg and its progeny. The safeguards put in place in Gregg and its progeny failed to protect Fields, and the Court(s) discretion to overturn the wrongful conviction steered them in the direction of "ignoring the law". And when the Court(s) take that position it sets a dangerous precedent because it undermines the High Court and endangers the lives of American Citizens.

The perjury, Fraud, deception, prosecutor misconduct, Judicial bias in Fields is extensive, proving that despite the safeguards put in place in Gregg and its progeny

-40-

those sfaeguards can never protect the people from willful, intentional, deliberate and knowing human error, which makes the Death Penalty illegal and Unconstitutional. What history have taught us all with the recent number of exonerations is that a guilty verdict and the exhaustion of appeals doesn't always mean that the condemned is Actually Guilty. ( See Brief at www.law.northwestern.edu/wrongfulconvictions/How Snitch testimony sent Randy Steidl and other innocent Americans to Death Row).

In Weems v. United States (1910) 217 US 349, 54 L.Ed 793, 30 S.Ct. 544, it was recognized that the eighth Amendment prohibition against Cruel and Unusual punishments was not intended to prevent only an exact repitition of history, " it was intended to prevent all cruel and unusual punishment ", yet the arbitrary and discriminatory nature of the Death penalty allows for history to repeat itself over and over again and inflict cruel and unusual punishment. In Godfrey v. Georgia, 64 L.Ed. 2d 398, 446 U.S. 420; " On numerous occasions " the Court found, " since Gregg v. Georgia, the Court have been presented with at least one petition a week for certiorari raising troubling issues of noncompliance with the strictures of Gregg and its progency. The Court have reversed decisions of State Supreme Courts upholding the imposition of Capital punishment, frequently on the ground that the sentencing proceeding allowed undue discretion, causing dangers of arbitrariness in violation of Gregg and its companion cases. These developments coupled with other persuasive evidence strongly suggests that appellate courts are incapable of guaranteeing the kind of objectivity and evenhandedness that the Court contemplated and hoped for in Gregg. The disgraceful distorting effects of racial discrimination and poverty continue to be painfully visible in the imposition of death sentences." Along with perjury, fraud, prosecutor misconduct, Judicial bias and more. The deliberate indifference to, and reckless disregard for Fields' right to life and personal security, and the deprivation of his substantive due process right to life under the Federal Constitution's Fourteenth Amendment is painfully obvious here.

The prosecution "seeking jailhouse testimony", trying to procure Outley and/or Scroggins to lie and say that they were "with Fields", and trying to procure Chance Alexander to lie and say that Fields confessed to him while seeking to end Fields' life, and ultimately obtaining the conviction on a strictly "jailhouse testimony" case shines a glaring light on why the Death Penalty is Illegal and Unconstitutional.

The conclusion is virtually inescable that the death penalty is being inflicted arbitrarily, it is imposed discriminatorily against certain identifiable classes of people; there is evidence of racial discrimination; there is also overwhelming evidence that the death penalty is employed against men and not women; and that the burden of Capital Punishment fall upon the poor, the ignorant, and the underprivileged members of society.

In Lackey v. Texas, 514 U.S. 1045, 115 S.Ct. 1421, (quoting Gregg), the Court held

41

that the Eighth Amendment does not prohibit Capital Punishment because, (1). The Death Penalty was considered permissible by the Framers, see id., at 177, 96 S.Ct., at 2927 (opinion of Stewart, Powell, and Stevens, JJ,) and (2). The Death Penalty might serve "two principle social purposes: retribution and deterrence," id. at 183, 96 S.Ct., at 2929-2930. However that "argument/opinion" should no longer be permissible. The Framers of our Constitution had some good ideals and some very very bad ideals. And just like Slavery , the Death Penalty is one of those very very bad ideals. The parallel between the two is uncanny; Slavery, just like the Death Penalty was born out of, what would be today a violation of the United States Constitution. When "the Framers" implemented the Death Penalty minorities and women alike were both suppressed, neither could vote, thus the Death Penalty is the "brainchild" and was considered "permissible" by the Anglo American male, and the Anglo American Male alone, which violates the equal protection clause of today, due process, and it renders the Death Penalty Cruel and Unusual. Just because the "modern day Framers" went in and tweaked the Constitution it doesn't mean that it is now fair and balanced and it don't still victimize people. If you build a new house on a broken foundation that house is still doomed to fail. Here in Fields' case eleven of the twelve jurors held that "[t]he imposition of a death sentence would cause emotional injury, harm and loss to Fields' mother, children and other family members." ( See App. 87 ). Inflicting this type of injury/harm on your own citizens in any context is a violation of the United States Constitution, thus the Death Penalty abridge the rights of the people; Marbury v. Madison; Supra. And in Furman v. Georgia, Justice Stewart concluded that the 8th Amendment cannot tolerate the infliction of a death sentence under a legal system that permits this unique penalty to be wantonly and freakishly imposed. Id., at 310, 92 S.Ct. 2726, 33 L.Ed.2d 346. However that is exactly what's happening, the jury recognize that killing Fields would abridge the rights of Fields' family, but vote to violate their Constitutional rights anyway. In Kennedy v. Lousiana, (2008) 554, U.S. 407, 128 S.Ct. 2641, 171 L.Ed. 2d 525, the Court held that Capital punishment is excessive when " it does not fulfill two distinct social purposes served by the death penalty (retribution and deterrence). It's a widely known fact that the death penalty does not deter crime, and in Fields' case Dr. Richard Coons, the psychiatrist that told the jury that if they don't kill Fields he would be A "future danger" was later held to be a fraud in another  case, which leaves retribution standing alone, and retribution without deterrence is nothing more than a "revenge killing", which is also in violation of the United States Constitution and the ban on Cruel and Unusual Punishment. The notion that retribution alone      have turned into revenge is magnified by the recent botched executions where inmates were literally tortured to death for hours on end via lethal injection, and/or the suggestion by a Wyoming

Senator that we regress and that death row inmates should be lined up in front of a firing squad, not unlike the terrorist group ISIS do to those that they consider to have committed crimes against Islam; Or the suggestion by a Ninth Circuit Judge that the Country should regress, get rid of lethal injection and decapitate inmates, again not unlike the terrorist group ISIS. The torture of human beings, homicide via firing squad and/or decapitation is only wrong when terrorist do it? Or is it wrong in any situation? In any event it's not progressive, nor does it comport with the "evolving standards of decency". Trop v. Dulles, (1958) 346 US 86, 2 L.Ed. 2d 630, 78 S.Ct. 590. The Death Penalty is Cruel and Unusual because it places an impossible burden on our future; Just as today we apologize to no end for what slavery did to our future, our kids will spend their future apologizing for what the Death Penalty is doing to the poor, the underprivilege, minorities. For that reason the death penalty is regressive and an exact repitition of history and it violates the ban on Cruel and Unusual Punishment. See Mclamore v. South carolina (1972)-US-, 34 L.Ed. 2d 189, 93 S.Ct. 240; Weems v. United States, (1910) 217 US 349, 54 L.Ed. 793, 30 S.Ct. 544. But here in the instant case the Death penalty is Cruel and Unusual, illegal and Unconstitutional because, (1). Fields is Actually Innocent; (2). Everything that exonerates Fields the prosecution willfully, knowingly, intentionally, deliberately, illegally, with malice aforethought countered with a lie and defrauded the Court; And (3). Fields' Constitutional rights have been knowingly, deliberately, willfully, intentionally, illegally, with malice aforethought, violated and trampled on. The safeguards put in place in Gregg and its progency couldn't foresee the "extraordinary case" like Fields, nor can it protect future defendants from being fatally harmed by prosecutorial misconduct, witness perjury or judicial bias; therefore the death penalty is unconstitutional because there is no way to reign in the open ended violation(s) of the people(s) Constitutional Rights. For those reasons throughout this petition the Death Penalty should be deemed illegal and Unconstitutional.

## CONCLUSION

Fields believes that he has presented this Court a new "challenge" given the facts presented. There is no doubt that prosecutor(s) and bias Judges have constantly ignored the safeguards put in place in Gregg and its progency and "outsmarted" the very nature of Gregg's intentions. It's inescapable that the death penalty "of any kind", premised "on any statute" is, always have, and always will be Unconstitutional. The very idea that the State(s) and/or government kill people in order to teach people that killing is wrong is barbaric within itself and a twisted way of thinking and Congress relying on

the theory that the death penalty is legal and Constitutional because " Our founding fathers allowed it " is just a way to continuously perpetuate the outright evil intentions of the law itself. The facts of Fields not only proves that the safeguards put in place in Gregg v. Georgia is ineffective, it also renders the Antiterrorism and Effective Death penalty Act illegal and Unconstitutional, as well as the Death Penalty. There should be no doubt that this case test the bounds of Constitutional limits, shedding a new light on the Unconstitutionality of the Death penalty. Fields' Constitutional Rights have been deliberately, intentionally, willfully, knowingly, illegally, with malice aforethought egregiously offended and violated. " By the protection of the law, human rights are secured; withdraw that protection and we are at the mercy of wicked rulers, or the clamors of an excited people; Walberg v. Israel, 766 F.2d 1071, 1078 (7th Cir.) (Posner J.), cert denied, 474 U.S. 1031 (1985). If this Court refuse to entertain the claims herein it would result in a fundamental miscarriage of justice; Sawyer v. Whitley, 505 US 333, 120 L.Ed. 2d 269, 112 S.Ct. 2514 (1992). Fields asks this Court to use its Supervisory powers to correct this miscarriage of justice and to deter any further illegal conduct. Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed. 2d 228 (1988).

For the reason(s) stated herein, Fields asks that this Court grant this Extraordinary writ.

Sincerely/Respectfully

Sherman Lamont Fields
#15651-180
USP Terre haute
P.O. Box 33
Terre Haute, Indiana
                47808
                (Pro Se)

10/24/16

44