UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SHERMAN LAMONT FIELDS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 2:16-cv-00418-JMS-MJD |
| | ) | |
| WARDEN, USP TERRE HAUTE, | ) | |
| | ) | |
| Respondent. | ) | |

## RETURN TO ORDER TO SHOW CAUSE, MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION TO STAY

Petitioner Sherman Lamont Fields asks this court to vacate his death sentence and two terms of imprisonment pursuant to 28 U.S.C. § 2241. This court should deny his request because he has failed to satisfy the gatekeeping requirements applicable to § 2241 petitions. In the alternative, the United States seeks to stay the case pending the Supreme Court's decision in *Sessions v. Dimaya*.

## I. ISSUES

1. Sherman Lamont Fields escaped from jail and murdered Suncerey Coleman. A jury convicted him of violating 18 U.S.C. § 924(c), using a firearm during a crime of violence. Fields asks this court to vacate his conviction because of the holding in *United States v. Johnson*, 135 S. Ct. 2551 (2015). The Fifth Circuit rejected this same argument when Fields sought authorization to file a successive 28 U.S.C. § 2255 petition. Should this court dismiss Fields's § 2241 petition?

2.     Fields, impermissibly, seeks hybrid representation in the instant case. In his *pro se* petition, Fields (1) asserts trial court arguments about witness credibility and the weight of the evidence; (2) alleges that the Fifth Circuit impermissibly refused to consider his *pro se* filings in that forum; and (3) challenges the constitutionality of AEDPA and the death penalty. Has he shown that § 2255 is an inadequate remedy for consideration of these claims or should this court dismiss his petition?

## II. BACKGROUND

On September 26, 2001, authorities arrested Fields for being a felon in possession of a firearm. *United States v. Fields*, 483 F.3d 313, 323 (2007), *cert. denied,* 552 U.S. 1144. As a result, Fields was in federal custody at the McClennan County Detention Center in Waco, Texas. *Id.* While in custody, Fields bribed a guard, offering him $5000 in exchange for a key to the fire escape. *Id.* On November 6, 2001, using that key, Fields escaped. *Id.*

After leaving jail, Fields met his friend, Edward Outley. *Id.* At Field's request, Outley provided Fields with a car and a .32 caliber revolver. *Id*; (T12:1814–15).[1] Then, around 8:00 p.m., Fields visited his girlfriend, Shaylakea Scroggins. (T11:1579). Fields drove Scroggins to a remote area outside Waco, stopped the car, and then told her that whatever he had intended to do "could wait." (T11:1581). Fields later told Scroggins that he had planned to kill her that night, but changed his mind. (T11:1667–68).

---

[1] Trial transcripts are cited a T, followed by the volume number, followed by the page number.

After returning Scroggins to her home around 10:00 p.m, Fields visited another former girlfriend, Suncerey Coleman. *Fields*, 483 F.3d at 323; (T11:1595). Coleman was at the Hillcrest Hospital in Waco, attending to her premature newborn baby. *Fields*, 483 F.3d at 323. Fields was angry with Coleman because she had seen other men while Fields was in custody. *Id.* Indeed, before Fields escaped, two fellow inmates heard him say that he wanted to kill Coleman because of her infidelity. (T10:1207 (saying he would "smoke" her); 1222 (saying he would "spray" her)). After talking to Coleman "for some time," Fields convinced her to leave the hospital with him. *Fields*, 483 F.3d at 323. It was the last time anyone, other than Fields, saw Coleman alive.

Fields drove Coleman to a remote area outside Waco, where he raped her. *Id*; (T10:1427). Fields then shot Coleman twice in the head and dragged her body from the road. *Fields*, 483 F.3d at 324. Coleman's body was found two weeks later, surrounded by brush and garbage. *Id* at 324, 354. The body had been "subject[ed] to animal predation." *Id.* at 354.

After killing Coleman, Fields returned to Scroggins's home around 2:30 a.m. (T11:1596). The following morning, he asked Scroggins to "get rid of" the clothing that he had worn the previous night, including his shoes. (T11:1602). Three days later, Scroggins learned that Coleman was missing. (T11:1599). When Scroggins asked Fields if he had killed Coleman, he admitted to shooting her twice and dragging her body from the road. (T11:1600). He also told Scroggins that he needed her to dispose of his clothes

because Coleman's blood was on them. (T11:1603). While confessing to the murder, Fields had no "emotions" or "remorse." (T11:1600).

Shortly after Coleman's murder, Fields also disposed of the gun he had used to kill her. Fields handed a .32 caliber handgun to his cousin, Alvin Fields, while they were driving across the Herring Street Bridge in Waco. (T12:1762–68). Alvin Fields threw the gun out the car window and into the Brazos River. (*Id.* at 1768; *see also* T11:1477 (explaining to a cell-mate that he had disposed of the murder weapon in "a river")).

Several days later, Fields approached a woman at a hospital as she was getting out of her car. *Id.* at 324. Fields, brandishing a handgun, grabbed the woman by the throat and demanded that she get back in the car. *Id.* The woman was able to free herself from Fields, who drove away in her car. *Id.*

Authorities arrested Fields on November 24, 2001. *Id.* Before the arrest, Fields admitted to at least four people that he had killed Coleman. (T10:1826 (Outley); T10:1773 (Christian Walker); T10:1380 (Kevin Burton); T11:1600 (Scroggins)). Once back in custody, Fields continued to talk about murdering Coleman. Fellow inmate John Mercer overheard Fields telling other prisoners that "he got [a girl] from Hillcrest Hospital and took her out and busted a cap on her." (T11:1477). Fields introduced himself to fellow inmate Jerry Reed in early 2003 by stating, "I'm Sherman Fields. I'm the one that killed my girlfriend." (T10:1365). Similarly, Fields told fellow inmate Homero DeLeon that he had raped "the bitch," shot her in the head, and "[d]ragged her up under a tree." (T10:1425–27).

A jury convicted Fields of seven charges stemming from his escape and the resulting crime spree: conspiring to escape from federal custody, in violation of 18 U.S.C. § 371 (Count 1); escaping from federal custody, in violation of 18 U.S.C. § 751 (Count 2); **using and carrying a firearm during and in relation to his escape from federal custody, resulting in intentional murder, in violation of 18 U.S.C. §§ 924(c)(1) & (j) (Count 3)**; carjacking, in violation of 18 U.S.C. § 2119 (Count 4); **using and carrying a firearm during and in relation to the carjacking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 5)**; possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 6); and **using and carrying a Ruger .22 caliber firearm during and in relation to his escape, in violation of 18 U.S.C. § 924(c)(1) (Count 7)**. *Id.* The counts in bold are the counts at issue in the pending petition. With regard to Count Three, the jury recommended the death penalty, and the district court sentenced Fields to death. *Id.*

As to the noncapital counts, the court sentenced Fields as follows: 60 months' imprisonment on Counts One and Two, to run concurrently with each other; 115 months' imprisonment on Count Four, to run concurrently with Counts One, Two and Six; 300 months' imprisonment on Count Five, to run consecutively to Counts One, Two, Four, Six, and Seven; 115 months' imprisonment on Count Six, to run concurrently with Counts One, Two, and Four; and 300 months' imprisonment on Count Seven, to run consecutive to Counts One, Two, Three, Four, Five, and Six. (ROA.114). This amounts to 715 months' imprisonment. *Fields*, 483 F.3d at 324 n.3.

Without the challenged counts, Fields, absent resentencing, will have only a 115-month sentence.

## III. PROCEDURAL HISTORY

At trial the guilt/innocence phase of the trial, Fields represented himself. *Id.* at 324. The district court advised him against it, but he insisted. *Id.* Two previously-appointed attorneys acted as standby counsel, advising Fields throughout the trial. *Id*; (*see e.g.*, T11:1632). During the punishment phase of the trial, Fields waived his right to proceed *pro se* and accepted the representation of counsel. *Id.*

On direct appeal, the Fifth Circuit affirmed Fields's conviction and sentence. *Id.* at 323. Fields subsequently sought relief under 28 U.S.C. § 2255, which the district court denied in a 137-page order. (*See* Appendix A).[2] The Fifth Circuit refused Fields's request for Certificates of Appealability of that decision. *United States v. Fields*, 761 F.3d 443, 450 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2803.

Last year, Fields sought permission to file a second habeas corpus petition. He sought to vacate his death sentence and two terms of imprisonment because of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Specifically, he argued that *Johnson*'s vagueness holding applied to the crime of violence provision in 18 U.S.C. § 924(c)(3)(B), the provision supporting Counts Three, Five, and Seven of his conviction. The Fifth Circuit rejected the request in a published opinion, *In re Fields*,

---

[2] An index listing each Appendix in this response is included after the response's conclusion.

826 F.3d 785 (5th Cir. 2016). The Supreme Court subsequently denied Fields's request for review of that decision. *In re Fields*, 137 S.Ct. 1326 (Mem.), Nos. 16-293, 16-294, (denied Mar. 20, 2017).

On October 26, 2016, Fields filed a *pro se* petition for relief under 28 U.S.C. § 2241 with this court. On April 26, 2017, Fields, now represented by counsel, filed an amended § 2241 petition, which states that it "incorporates and reasserts in their entirety the arguments set forth" in the *pro se* petition. (Amended Petition, p. 3 at n.2). The amended petition again asserts that *Johnson*'s vagueness holding applies to the crime of violence provision in 18 U.S.C. § 924(c)(3)(B).

## IV. DISCUSSION

### I. This court should dismiss the *Johnson* claims in Fields's § 2241 petition because the Fifth Circuit already rejected them.

A § 2255 motion is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *Davis v. United States*, 417 U.S. 333, 343 (1974). Indeed, 28 U.S.C. § 2244(a) specifically states that no "district judge shall be required to entertain an application for a writ of habeas corpus . . . if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus."

It is possible, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under 28 U.S.C. § 2241. The "savings clause" in 28 U.S.C. § 2255(e) authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." *Poe v. LaRiva*,

834 F.3d 770, 772 (7th Cir. 2016). A remedy via § 2255 is "inadequate" when the structure of § 2255 "'forecloses even one round of effective collateral review.'" *Id.* (quoting *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002)). "The prisoner has the burden of establishing that his remedy under § 2255 was inadequate or ineffective." *Hernandez v. Gilkey*, 242 F. Supp. 2d 549, 553 (S.D. Ill. 2001) (citing *Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999)).

The Seventh Circuit has held that § 2255 is inadequate or ineffective when the petitioner (1) relies on a statutory-interpretation case rather than a constitutional case; (2) that case is a retroactive decision that he could not have invoked in his first § 2255 motion; and (3) the alleged error is "grave enough" that failure to remedy it would create "a miscarriage of justice." *Id.* at 773 (citing *In re Davenport*, 147 F.3d 605, 610–12 (7th Cir. 1998)). A difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated is not a sufficient ground for § 2241 relief. *In re Davenport*, 147 F.3d at 612.

In *Webster v. Daniels*, a death penalty case, the Seventh Circuit made clear that while there is no absolute bar to the use of the § 2255(e) savings clause for *new evidence*, the obstacle in the petitioner's path to earlier relief must have been a "structural problem with section 2255." *Webster v. Daniels*, 784 F.3d 1123, 1125 (7th Cir. 2015). "In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Id.* at 1136. The test remains "whether [§ 2255] allows the petitioner a reasonable opportunity to obtain a reliable judicial

determination of the fundamental legality of his conviction and sentence." *Id.* (internal quotation marks and citation omitted).

If a federal prisoner brings a § 2241 petition that does not fall within the scope of the "savings clause," then the district court must dismiss the petition for lack of jurisdiction. *Hernandez*, 242 F. Supp. 2d at 555; *see also* 28 U.S.C. § 2255(e).

**A. Fields cannot show a structural problem with § 2255 that prevents him from seeking relief. Indeed, the Fifth Circuit already reviewed the *Johnson* issue he now raises.**

In *Johnson v. United States*, the Supreme Court held that the imposition of "an increased sentence under the residual clause of the Armed Career Criminal Act ["ACCA"] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Court held that *Johnson* announced a new substantive rule with retroactive effect on collateral review because a misapplication of the ACCA subjects a defendant to a minimum of five extra years of imprisonment. *Compare* 18 U.S.C. § 924(e) (ACCA mandates minimum 15-year sentence) *with* 18 U.S.C. § 924(a)(2) (unenhanced statutory maximum is 10 years' imprisonment). Fields now asserts that he is entitled to relief under *Johnson*, as the language in 18 U.S.C. § 924(c)(3)(B) is "materially indistinguishable" to the ACCA residual clause. (Amended Petition, p. 2).

Fields made this same argument to the Fifth Circuit when he sought authorization to file a successive § 2255 motion. *In re Fields*, 826 F.3d at 786. The Fifth Circuit rejected that argument holding that "*Johnson* did not address section

9

924(c)(3)(B)" and that "the Supreme Court ha[d] not taken a position on whether *Johnson* applies to section 924(c)(3)." *Id.* at 786–87. As such, the Fifth Circuit has already examined "the legality" of Fields's detention, and this court should dismiss the pending § 2241 petition. *See* 28 U.S.C. § 2244(a).

Moreover, because Fields's legal theories regarding *Johnson* were considered by the Fifth Circuit, § 2255 was an adequate and effective vehicle for consideration of his claims. He had an unobstructed procedural opportunity and took advantage of that opportunity. *Garza v. Lappin*, 253 F.3d 918, 992 (7th Cir. 2001) ("The mere fact that [the] petition would be barred as a successive petition under § 2255 . . . is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing."). As such, the savings clause is not available to Fields. *See* 28 U.S.C. § 2255(e).

Finally, Fields has failed to show that *Johnson* is a "statutory interpretation" case, made retroactive by the Supreme Court. Therefore, under *Johnson*, even absent the Fifth Circuit's previous decision, this court should dismiss the pending § 2241 petition. *See In re Davenport*, 147 F.3d at 610–12.

**B. *Cardena* does not bar application of gatekeeping functions surrounding § 2241.**

As detailed by Fields, the Seventh Circuit has held that § 924(c)(3)(B)'s "residual clause" is unconstitutionally vague. *United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016) (applying *Johnson*). In contrast, the Fifth Circuit has held that § 924(c)(3)(B) is not unconstitutionally vague. *United States v. Jones*, 854 F.3d 737, 740 (5th Cir. 2017) ("[T]he

definition of 'crime of violence' under § 924(c)(3)(B) is not unconstitutionally vague."); *United States v. Davis*, __ F. App'x __, 2017 WL 436037, *2 (5th Cir. 2017) (holding *Johnson* does not apply to § 924(c)(3)(B) and recognizing that the Second, Sixth, and Eighth Circuits reached the same conclusion). This circuit split, however, does not serve to bypass the savings clause. "When there is a circuit split, there is no presumption that the law in the circuit that favors the prisoner is correct, and hence there is no basis for supposing him unjustly convicted merely because he happens to have been convicted in the other circuit." *In re Davenport*, 147 F.3d at 612.

Moreover, the United States Supreme Court is considering a similar issue that could affect the circuit split over § 924(c)(3)(B). In *Sessions v. Dimaya*, No. 15-1498, the Supreme Court has been asked whether *Johnson* applies to the residual clause in 18 U.S.C. § 16. *See Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015) (holding § 16 is unconstitutionally vague). The Court has already heard argument in *Dimaya*, meaning an opinion is forthcoming. The language of the § 16 residual clause is identical to the residual clause in 18 U.S.C. § 924(c)(3)(B).[3] As such, if this court does not dismiss Fields's petition based on the application of the savings clause, the Respondent asks for

---

[3] Section 16 states: "The term 'crime of violence' means— . . . . (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

Section 924(c)(3)(B) states: "For purposes of this subsection the term 'crime of violence' means an offense that is a felony and— . . . . (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

a stay of these proceedings pending the outcome of *Dimaya*. If such a stay is granted, the Respondent also asks for sufficient time for supplemental briefing to address how *Dimaya* applies to § 924(c)(3)(B).

## II. This court should dismiss the claims raised in Fields's *pro se* petition.

In his *pro se* petition, Fields raises several claims of error, each of which fails to satisfy the gatekeeping functions surrounding § 2241. As a starting point, the Respondent notes that Fields is not entitled to "hybrid representation," whereby he acts as co-counsel along with his own attorney. *United States v. Gwiazdzinski*, 1141 F.3d 784, 787 (7th Cir. 1998) ("A defendant does not have an affirmative right to submit a *pro se* brief when represented by counsel."); *Lee v. Alabama*, 406 F.2d 466, 469 (5th Cir. 1968) (holding petitioner in habeas corpus proceeding "had a right to represent himself or to be represented by counsel, but he had no right to a hybrid representation partly by himself and partly by counsel"). By responding to Fields's *pro se* petition and the amended petition filed by counsel, the Respondent in no way agrees to allow Fields to proceed in a hybrid arrangement.

### A. Fields reasserts his trial arguments, framing them in terms of "bias" and/or criminal wrongdoing by the prosecutors and the courts. These assertions do not satisfy the gatekeeping functions surrounding § 2241.

For the majority of his 44-page petition, Fields reasserts trial court arguments the jury rejected, repeatedly asking this court to make impermissible credibility determinations and to reweigh the evidence. He claims two prosecution witnesses,

Shalaykea Scroggins and Edward Outley, were responsible for Coleman's murder.[4] (*Pro se* petition at 9–10, 17). He complains about testimony concerning the condition of a vehicle he drove the night of Coleman's murder. (*Id.* at 15). He also highlights inconsistent statements about the color of a Jaguar that Scroggins and Outley drove the night of the murder. (*Id.* at 20). At other times, he describes evidence outside the record. (*See id.* at 31–32). The crux of his argument is that every witness lied—law enforcement officers, Scoggins, Outley, his cell mates, his carjacking victim.

In light of his view of the evidence, Fields argues the jury only convicted him because trial prosecutors and the trial judge committed misconduct. (*Id.* at 2). Such an argument does not fit within the narrow confines of § 2241, because he has not shown that § 2255 is "inadequate." Fields raised an actual innocence claim in his § 2255 motion that raised many of these same arguments. *See Fields*, 761 F.3d at 478. The district court denied him relief, and the Fifth Circuit denied him a Certificate of Appealability on the actual innocence claim. *Id.* at 478–82.

Indeed, a review of previous court orders and opinions in this case show that many of Fields's claims have already been adjudicated.

---

[4] The record shows Fields wrote a letter to Scroggins asking her to accept responsibility for killing Coleman. (T11:1605). Moreover, Fields told at least two people that he intended to blame Scroggins for the murder. (T14:1427 (DeLeon testified that Fields "was going to try to drag [Scroggins] or one of his home friends into the murder scene"); T10:1368 (Reed testified that Fields said he would claim Scroggins killed Coleman)). Fields's attempt to blame Scroggins and Outley for the murder is thoroughly undermined by these independent sources and his multiple confessions to the crime.

- Claim: The trial court "forced Fields to represent himself at trial." Adjudicated by: *Fields*, 483 F.3d at 350 (direct appeal); *Fields*, 761 F.3d at 480 (denial of COA).

- Claim: The trial court made erroneous evidentiary rulings. Adjudicated by: *Fields*, 483 F.3d at 354–55 (direct appeal discussing admission of photographs of Coleman's body).

- Claim: Prosecutors made "baseless objections." Adjudicated by: *Fields*, 483 F.3d at 359–60 (direct appeal discussing prosecutor's "goading" objections).

- Claim: The trial court erred in describing the grand jury's decision to indict Fields. Adjudicated by: *Fields*, 483 F.3d at 353–54 (direct appeal discussing alleged jury instruction error).

- Claim: Fields's appointed counsel had a conflict of interest that required the court to grant him new counsel. Adjudicated by: *Fields*, 483 F.3d at 350–51 (direct appeal discussing alleged conflict of interest).

- Claim: Outley failed to truthfully testify about promises made to him by the prosecutors. Adjudicated by: *Fields*, 761 F.3d at 475–76 (denial of COA discussing the immunity deal).

- Claim: Prosecutors allowed Outley to give false testimony about his immunity. Adjudicated by: *Fields*, 761 F.3d at 476–77 (denial of COA discussing Outley's trial testimony).

- Claim: Evidence surrounding the forensic examination of a Grand Am, which Fields drove on the night of the murder, showed he did not kill Coleman. Adjudicated by: *Fields*, 761 F.3d at 480 (denial of COA discussing the Grand Am).

- Claim: Inconsistent testimony about the color of the Jaguar undermined the credibility of Scroggins and Outley. Adjudicated by: *Fields*, 761 F.3d at 480 (denial of COA discussing the color of the Jaguar).

- Claim: Scroggins and Outley provided false testimony. Adjudicated by: Order denying § 2255 relief, Appendix A, p. 65 (rejecting actual innocence claim).

- Claim: Jail-house informants gave false testimony. Adjudicated by: Order denying § 2255 relief, Appendix A, p. 65 (rejecting actual innocence claim).

Moreover, on direct appeal, Fields did not challenge the sufficiency of the evidence against him. *See Fields*, 483 F.3d at 347–62 (discussing alleged trial court errors). Therefore, many of the issues he now raises are procedurally barred.

The only claims Fields has not previously raised appear to be (1) that the trial judge was somehow biased because of his relationship with an attorney who represented the Coleman family in a civil suit against the company providing security at the McClennan County Detention Center and (2) that the government failed to disclose photographs of the Grand Am. (*Pro se* Petition at 7, 16). Neither of these claims suggest § 2255 is an inadequate remedy. The civil suit was a public record at the time of Fields's trial and the existence of undisclosed "photographs" is conjecture based on a motion for discovery filed prior to trial. Nothing in the record suggests "undisclosed" photographs exist. As such, Fields cannot show that he is entitled to relief under § 2241, and this court should dismiss his petition.

**B. This court should reject Fields's claims relating to his previous *pro se* filings.**

Fields claims several issues remain "unadjudicated" because the Fifth Circuit Court of Appeals did not consider his *pro se* filings. (*Pro se* petition at 1). Specifically, he claims the following issues were never decided by a court: "Judicial Bias issues," "brady violations," "Actual Innocence claim," "criminal act(s) perpetrated against Fields by the prosecution," "The Criminal Act of Fraud On the Court(s)," "Fields' conviction and

Death sentence was influenced by passion prejudice and other arbitrary factors," "the Legality and Constitutionality of the Antiterrorism and Effective Death Penalty Act," and "the Legality and Constitutionality of the Death Penalty." (*Pro se* petition p. 5–6). As detailed above, many of the issues he raises have, in fact, been adjudicated.

In addition, the procedural history shows Fields's claim lacks merit. Fields never filed a *pro se* § 2255 petition in the district court. (*See* Appendix B, Docket Sheet, 6:01-CR-164-WSS). When the district court denied Fields's § 2255 petition, Fields informed the district court that he wanted to proceed *pro se* in the Fifth Circuit. (*See* Appendix C, Letter to District Court). Once in the Fifth Circuit, Fields filed a motion to proceed *pro se*. (*See* Appendix D, Motion to Proceed *Pro Se*). Shortly thereafter, Fields's counsel filed a response to the motion stating that Fields "does not wish to proceed *pro se* in this Court." (*See* Appendix E, Response to *Pro se* Motion). Instead, he stated that Fields wanted to file a *pro se* supplemental brief. (*Id.*). The response also questioned whether Fields had the mental capacity to waive counsel. (*Id.*). The Fifth Circuit denied Fields's request to proceed *pro se*, "relying on the representation of counsel that appellant does not wish this court to remove counsel." (*See* Appendix F, Order Denying Motion).

In subsequent filings, Fields informed the court that he wanted the Fifth Circuit to consider his "freestanding" actual innocence brief. (*See* Appendix G, Response to Notice). Fields told the Court that if he had to choose between having counsel and having the Court review his freestanding motion, he would choose the latter. (*Id.*). He then filed a Motion for Reconsideration of his Motion to Proceed *Pro Se*. (*See* Appendix

H, Motion for Reconsideration). The Fifth Circuit denied that motion. (*See* Appendix I, Order Denying Motion to Reconsider).

The above-described history shows that the Fifth Circuit considered Fields's request to proceed *pro se* and, within its discretion, denied the request. *See Lee*, 406 F.2d at 469 (holding petitioner in habeas corpus proceeding had a right to represent himself or to be represented by counsel, but not both). Importantly, by the time Fields sought to represent himself at the appellate court, the only vehicle available to him was to seek review of the district court's denial of his § 2255 petition. *See* 28 U.S.C. § 2253. His "freestanding" actual innocence brief did not seek Certificates of Appealability as contemplated by § 2253. In short, Fields should have first presented those arguments in the district court as part of his original § 2255 petition. As such, even if he could show the Fifth Circuit erred by denying the Motion to Proceed *Pro Se*, he could not show harm. Section 2253 only allowed him to seek Certificates of Appealability, and his "freestanding" brief did not seek to do so.

### C. This court should reject Fields's broad challenges to AEDPA and the Death Penalty.

Fields's final claims of error relate broadly to the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the death penalty. (*Pro se* petition at 36–44). He alleges both are unconstitutional. (*Id.*). Fields cannot show that § 2255 is an "inadequate or ineffective" remedy for testing the constitutionality of AEDPA or the death penalty. *Poe*, 834 F.3d at 772. Nothing in § 2255 foreclosed Fields from making these arguments

in his original § 2255 petition. Indeed, Fields's § 2255 challenged the constitutionality of the federal death penalty. (*See* Appendix A, p. 11).

Moreover, the Supreme Court has rejected constitutional challenges to both AEDPA and the death penalty. *See Felker v. Turpin*, 518 U.S. 651 (1997); *Gregg v. Georgia*, 428 U.S. 153 (1976). Indeed, the Supreme Court recently chose not to hear a case that asked the Court to consider the constitutionality of the death penalty. *Reed v. Louisiana*, 137 S. Ct. 787 (Mem) (Feb. 27, 2017) (Breyer, J., dissenting from denial of certiorari). Therefore, Fields cannot proceed with these claims under 28 U.S.C. § 2241.

## IV. CONCLUSION

For the foregoing reasons, the Respondent respectfully urges the Court to dismiss Fields's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, with prejudice, for lack of jurisdiction. In the alternative, the United States seeks to stay these proceedings pending the outcome of *Sessions v. Dimaya*, which is currently pending in the United States Supreme Court.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By     s/ Jennifer S. Freel
Jennifer S. Freel
Special Assistant United States Attorney
Southern District of Indiana
816 Congress Avenue, Suite 1000
Austin, TX 78701
Tel: 512/916-5858
Email: jennifer.freel@usdoj.gov
Texas State Bar No. 24051327

INDEX

Appendix A: District Court Order Denying § 2255 Relief

Appendix B: Docket Sheet, 6:01-CR-164-WSS

Appendix C: Letter to District Court

Appendix D: Motion to Proceed *Pro Se*

Appendix E: Response to *Pro se* Motion

Appendix F: Order Denying *Pro se* Motion

Appendix G: Response to Notice

Appendix H: Motion for Reconsideration

Appendix I: Order Denying Motion to Reconsider

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of May 2017, a true and correct copy of the forgoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to the following CM/ECF participants:

Jeffrey E. Ellis
Oregon Capital Resource Center
621 SW Morrison St.
Suite 1025
Portland, OR 97205
(206) 218-7076
Email: jeffreyerwinellis@gmail.com

Peter J. Isajiw
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
212 556-2235
Fax: 212-556-2222
Email: pisajiw@kslaw.com

In addition, I certify that a copy was mailed, by first class U.S. Mail, postage prepaid and properly address to the following:

Sherman Lamont Fields
Reg. No. 15651-180
Terre Haute U.S. Penitentiary
P.O. Box 33
Terre Haute, IN 47808

 s/ Jennifer S. Freel
JENNIFER S. FREEL
Special Assistant United States Attorney