**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| SHERMAN LAMONT FIELDS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 2:16-cv-00418-JMS-MJD |
| | ) | |
| v. | ) | |
| | ) | **THIS IS A CAPITAL CASE** |
| WARDEN, USP TERRE HAUTE, | ) | |
| | ) | |
| Respondent. | ) | |

**REPLY IN SUPPORT OF AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

JEFFREY ELLIS
OREGON CAPITAL RESOURCE CTR
Oregon Bar Number 102990
621 SW Morrison St., Suite 1025
Portland, OR 97205
(206) 218-7076
jeffreyerwinellis@gmail.com

PETER J. ISAJIW
KING & SPALDING LLP
New York Bar Number 4151239
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100
pisajiw@kslaw.com

*Attorneys for Petitioner Sherman Lamont Fields*

**INTRODUCTION**

Petitioner Sherman Lamont Fields has moved this Court to set aside the judgment in his case and vacate his death sentence and two terms of imprisonment pursuant to 28 U.S.C. § 2241. Fields's convictions and sentences are unconstitutional under binding Seventh Circuit precedent. *See United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016) (holding the § 924(c)(3)(B) residual clause under which Fields was sentenced to be unconstitutionally vague). Fields demonstrated this point in his amended petition ("Pet.") and, in its opposition ("Opp."), the Government does not challenge this argument. Opp. at 10. The Government argues only that Fields's motion is procedurally deficient because § 2241 is foreclosed to him. This argument fails because Fields has fully satisfied the gatekeeping requirements of § 2241 by showing that a motion to challenge his sentence under 28 U.S.C. § 2255 is inadequate to test the legality of his conviction. *See* 28 U.S.C. § 2255(e); *Robinson v. Lariva*, No. 2:15-cv-00322-JMS-MJD (S.D. Ind. Dec. 28, 2016) (Dkt. #22). For the reasons set forth below, as well as those set forth in Fields's attached Reply in Support of Petitioner's § 2241, this Court should grant Fields the relief he seeks.[1]

**ARGUMENT**

**I.  THE GOVERNMENT DOES NOT CONTEST THAT FIELDS'S § 924(c) CONVICTIONS ARE INVALID IN LIGHT OF *CARDENA*.**

As demonstrated in the amended petition, Fields's § 924(c) and (j) convictions and the sentences that flow therefrom cannot stand. The predicate crimes of escape and carjacking on which these convictions rest can no longer be deemed "crimes of violence" under § 924(c)'s residual clause, which the Seventh Circuit has invalidated on constitutional grounds. Nor can

---

[1] Fields's Reply in Support of Petitioner's § 2241 is attached as Exhibit A, pursuant to the Court's May 31, 2017 Order.

2

these predicate crimes be deemed "crimes of violence" under the alternative definition found in § 924(c)'s "force" or "elements" clause. The Government's opposition brief does not contest the illegality of Fields's § 924(c) convictions and resulting sentences—including the death sentence—in light of *Cardena*. *See* Opp. at 10 ("[T]he Seventh Circuit has held that § 924(c)(3)(B)'s 'residual clause' is unconstitutionally vague."). Because the Government's opposition entirely sidesteps, and effectively concedes, the merits of Fields's arguments, the Court should grant relief on these conceded issues.[2]

## II.     FIELDS SATISFIES THE GATEKEEPING REQUIREMENTS OF § 2241.

As demonstrated in the amended petition, Fields properly invoked the jurisdiction of this Court under 28 U.S.C. § 2241. *See* Pet. at 12–13. A federal prisoner may seek relief pursuant to § 2241 when § 2255 has proved "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *Collins v. Holinka*, 510 F.3d 666, 667–68 (7th Cir. 2007) (a district court must entertain a § 2241 action on its merits where § 2255 is inadequate). As this Court held in *Robinson*, the summary denial of authorization to file a successive § 2255 petition in order to bring a cognizable *Johnson* claim renders § 2255 inadequate or ineffective, and thus confers § 2241 jurisdiction on this Court. *Robinson*, No. 2:15-cv-00322-JMS-MJD (Dkt. #22).

Fields featured *Robinson* in the very beginning of his amended petition, because the case is squarely on point here. *See* Pet. at 3. Yet the Government completely ignores *Robinson* in arguing that Fields "has failed to satisfy the gatekeeping requirements applicable to § 2241 petitions." Opp. at 1. Specifically, it claims that "Fields's legal theories regarding *Johnson* were

---

[2] Because Fields is incarcerated on death row at USP Terre Haute, venue is appropriate in this Court. *See* 28 U.S.C. § 2241; *Garza v. Lappin*, 253 F. 3d 918, 920 (7th Cir. 2001). The Government makes no argument to the contrary.

considered by the Fifth Circuit," and its denial of authorization to file a successive § 2255 petition was sufficient to obviate the savings clause of § 2255(e). Opp. at 9–10.

The Government is wrong. Fields has established that § 2255 does not provide an effective avenue by which to challenge his illegal convictions and sentences. *See* Pet. at 12–13. Fields timely sought leave to mount a successive § 2255 challenge to his convictions and death sentence under § 924(c) following the Supreme Court's decisions in *Johnson* and *Welch*. *See id.* However, despite the nearly identical language in the ACCA residual clause and the § 924(c) residual clause, the Fifth Circuit refused to allow Fields to file a successive § 2255 petition permitting the district court to consider whether § 924(c)(3)(B) is, like the ACCA residual clause, unconstitutionally vague—and thus whether Fields's death sentence, which rests entirely on § 924(c), is illegal. *In re Fields*, 826 F.3d 785, 787 (5th Cir. 2016); *see* Pet. at 12–13. On a motion to determine whether to allow a successive § 2255 petition, a U.S. Court of Appeals provides a gatekeeping function to determine whether a petitioner has made a prima facia case— they are not to review the merits of the claim. *See e.g.*, *In re Wood*, 648 F. App'x 388, 390 (5th Cir. 2016) (per curiam) ("In other words, this court should not, at this [§ 2244(b)] stage, rule on the merits, but merely determine whether Wood's claim deserves further exploration by the district court."). Thus, the Fifth Circuit did not address the merits of Fields's claims in making a tentative determination of whether his application satisfied the requirements of § 2244(b). And because the denial of authorization to file a successive § 2255 petition is not appealable in the ordinary course, *see* 28 U.S.C. § 2244(b)(3)(E), the Fifth Circuit's decision means that the merits of Fields's *Johnson* challenge will not be reached via § 2255 review despite his having made a prima facie showing for relief under *Johnson*.

4

This Court's decision in *Robinson* is directly on point. In *Robinson*, a prisoner convicted and sentenced in the Northern District of Mississippi, but incarcerated in the Southern District of Indiana, brought a habeas action pursuant to § 2241 in this Court. *Robinson*, No. 2:15-cv-322-JMS-MJD (Dkt. #1). Robinson, like Fields, sought to mount a *Johnson* challenge to his enhanced sentence. *See id.* The Government argued that "[t]his Court lack[ed] jurisdiction" over Robinson's § 2241 claim because it should have been brought as a successive § 2255 petition in the district where Robinson was convicted and sentenced. *See id.* (Dkt. #17). But when Robinson attempted to do so, the Fifth Circuit summarily denied Robinson's request to file a successive § 2255 petition, "without any exploration of the merits of his claim and without the benefit of the adversarial process." *Id.* (Dkt. #21). This Court rejected the Government's jurisdictional argument: "The Court has jurisdiction over petitioner Robinson's claim pursuant to 28 U.S.C. § 2241(c)(3). The United States' contrary contention [dkt 17] is rejected." *Id.* (Dkt. # 22). This Court noted that "Robinson's effort in the Fifth Circuit to present a second or successive 28 U.S.C. § 2255 action has been denied." *Id.*

By failing to address *Robinson*, the Government has forfeited any argument that the case is distinguishable from the matter at hand. There is simply no reason why the Fifth Circuit's denial of successive § 2255 authorization in *Robinson* merits a different result than the Fifth Circuit's denial of successive § 2255 authorization to Fields. The same result is appropriate here.[3]

---

[3] The Government's assertion that the existence of a circuit split in the application of *Johnson* to § 924(c)(3)(B) "does not serve to bypass the savings clause" is misplaced. Opp. at 11. Fields's § 2241 petition is not based on the existence of a circuit split. As an initial matter, although circuits differed on whether to grant successive § 2255 petitions, there was no controlling Fifth Circuit authority on the ultimate issue when Fields's request to file a successive § 2255 petition was summarily denied. Here, Fields's § 2241 petition is proper because the Fifth Circuit inappropriately denied him the opportunity to pursue his claim,

The Government also contends that, because Fields's petition is based on a constitutional claim, rather than an issue of statutory interpretation, his § 2241 petition is precluded. Opp. at 7–8 (citing *Poe v. LaRiva,* 834 F.3d 770, 772 (7th Cir. 2016)). *Poe* notes that statutory interpretation cases are "[o]ne circumstance in which this court has permitted resort to § 2241" and that a federal prisoner bringing new constitutional claims would *ordinarily* have recourse to a successive petition under § 2255(h). 834 F.3d at 772–73. But for Fields, as for Robinson, the Fifth Circuit's summary denial of permission to file such a petition rendered § 2255 "inadequate or ineffective" by foreclosing any possibility of his claim being heard on the merits through that provision. **Accordingly, and for the reasons set forth in the attached Reply in Support of Petitioner's § 2241 at 9, this Court has jurisdiction to adjudicate Fields's § 2241 claims.**

## III. A STAY OF THESE PROCEEDINGS IS NEITHER NECESSARY NOR APPROPRIATE

Knowing that Fields's convictions cannot stand, the Government seeks a stay of this petition pending a decision by the U.S. Supreme Court in *Sessions v. Dimaya*, No. 15-1498. *See* Opp. 11–12. This request should be denied for several reasons.

First, *Dimaya* addresses a residual clause contained in an immigration statute, 18 U.S.C. § 16, that the Ninth Circuit found unconstitutionally vague under *Johnson. Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). However, the Seventh Circuit has already determined that the exact clause at issue here, 18 U.S.C. § 924(c)(3)(B), is unconstitutional under *Johnson*. *Cardena*, 842 F.3d at 996.

Second, it is not clear when the Supreme Court will issue a decision in *Dimaya.* As of this writing, an oral-argument date in the upcoming October Term 2017 has not yet been set for

---

despite his making a prima facia case, rendering § 2255 "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).

6

*Dimaya*. *See Sessions v. Dimaya*, June 26, 2017 docket entry (available at www.supremecourt.gov/search.aspx?filename=/docketfiles/15-1498.htm).

Third, it is not clear that the decision in *Dimaya* will control or even influence the outcome of this case. The Government's primary argument in *Dimaya* is that immigration removal laws are subject to a less exacting vagueness standard than criminal laws. Brief for Petitioner at 20–25, *Lynch v. Dimaya*, No. 15-1498, 2016 WL 6768940 (Nov. 14, 2016), at \*20–25.

Fourth and finally, even a favorable decision in *Dimaya* may not enable Fields to bring a successor § 2255 petition in the Fifth Circuit, which previously held that it will only authorize a successor when there is a decision striking down the specific statute of conviction and applying that rule retroactively. *See Fields*, 826 F.3d at 787 (denying successor authorization because "the Supreme Court has not taken a position on whether *Johnson* applies to section 924(c)(3)(B) . . . [and] has not addressed whether this arguably new rule of criminal procedure applies retroactively to cases on collateral review.").

For these reasons, the requested stay is neither necessary nor appropriate, and this Court should decide the issues presented in this case.

## CONCLUSION

For the reasons set forth in his amended petition and herein, Fields respectfully asks this Court to (1) vacate his convictions under § 924(c) for Counts Three (using and carrying a firearm causing death during and in relation to escape), Five (using and carrying a firearm during and in relation to federal carjacking), and Seven (using and carrying a firearm during and in relation to escape); (2) vacate the death sentence under § 924(j), imposed on Fields in connection with his conviction under Count Three; (3) vacate the sentences imposed on Fields in connection with his conviction under Counts Five and Seven; (4) grant Fields leave to amend this Motion or to

submit a Memorandum of Law in support of the foregoing conviction and sentencing amendments and/or to schedule a status conference; (5) grant all relief sought in Fields's initial Petition for a Writ of Habeas Corpus originally filed in this case on October 26, 2016; and (6) grant any further relief necessary to effectuate justice.

Respectfully submitted,

/s/ Jeffrey Ellis
JEFFREY ELLIS
OREGON CAPITAL RESOURCE CENTER
Oregon Bar Number 102990
621 SW Morrison St., Suite 1025
Portland, OR 97205
(206) 218-7076
jeffreyerwinellis@gmail.com

PETER J. ISAJIW
KING & SPALDING LLP
New York Bar Number 4151239
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100
pisajiw@kslaw.com

*Counsel for Sherman Lamont Fields*

# EXHIBIT A

SHERMAN LAMONT FIELDS,
                Petitioner,

v.                               No. 2:16-cv-00418-JMS-MJD

WARDEN USP TERRE HAUTE,
                Respondent.

---

## REPLY IN SUPPORT OF PETITIONER'S § 2241

---

Petitioner Sherman Lamont Fields asks this Court to grant his 28 U.S.C. § 2241, vacate his conviction(s) and Death Sentence and find that the Death Penalty and the Antiterrorism and Effective Death Penalty Act is Illegal and Unconstitutional.

The Governments response to Fields' § 2241 exhibits a willingness to turn a blind eye to racism in the Justice system, criminal acts being committed by police, prosecutors and witnesses, and violations of the United States Constitution. But most importantly the governments response shows a willingness to Aid and Abet after the fact, the criminal actions of their colleagues down in Waco, Texas and Defraud this Court themselves.

(A)  THE EVIDENCE PRESENTED IN FIELDS' § 2241 UNDOUBTEDLY PROVES THAT FIELDS WAS INTENTIONALLY, DELIBERATELY, KNOWINGLY AND WILLFULLY FRAMED FOR THE CRIME(S) OF CONVICTION, AND IT WAS DONE WITH MALICE AFORETHOUGHT.

After Suncerey Coleman's death police and prosecutors assumed that Fields was the culprit of the crime and they immediately went in search of evidence to support that assumption. When the evidence wasn't "adding up" both the police and the prosecutors stepped out of bounds of the law, ignoring evidence that incriminate and proves that Edward Lee "Treyboy" Outley and Shalaykea "Lakie" Scroggins committed the murder, while seeking false facts/evidence in order to make Fields guilty, in Violation of the United States Constitution and several Criminal Statutes.

1

(1). The police and prosecutor(s), knowing that inmates will say anything " For a deal ", went " Seeking jailhouse testimony ". ( See § 2241 pg. 23 and App. 58 ).

(2). Then they sought to get Scroggins and/or Outley to lie and say that they witnessed Coleman's murder. ( See § 2241 pg. 23 and App. 46 ).

(3). Next they tried, first successfully and then ultimately unsuccessfully to recruit an inmate Chance Alexander to lie and say that Fields confessed to him. ( See § 2241 pg. 23 and App. 59 ).

(4). When the government sought to indict Fields for Coleman's murder the prosecution, A Mr. Greg Gloff procured Sheriff Detective Johnny Spillman and U.S. Marshal Chris Casson to lie and defraud the Grand Jury, telling them that the victim's cousin whom was with her at the hospital that night ( Tanesha Hilliard ) said that when Fields came into contact with the victim he became " Angry " and/or " Irate ". ( See § 2241 pgs. 19 & 20 and App's 51 and 52 ).

(5). However Tanesha Hilliard had always maintained that Fields was never "Angry" and/or "Irate" and Fields have never been violent towards the victim. ( See § 2241 pg. 20 and App. 53 ). And as a matter of fact Fields and the victim, Ms. Coleman were " Hugging and Kissing." ( See Trial Trans. pg. 1361 )

(6). The night that Coleman was murdered Fields was driving a red two door Grand Am. Extensive forensics testing was done on the Grand Am in search of blood and other physical evidence. ( See § 2241 pg. 14 and App. 37 ).

(7). The government, in an effort to defraud the Court and "make Fields look guilty", procured a Sheriff Detective Morris "Bubba" Colyer to lie and say that there was no blood found in the Grand Am because the car " looked wiped down or detailed ". (NOTE: Detective Colyer isn't a forensics expert ).

However the forensics report ( That the jury never seen ) show that the car was not "clean". ( See § 2241 pg. 10 and App. 37 )

That same report show that there are pre and post forensic 35mm photos that the government did not give to the defense; Photo's that will undoubtedly show that the car "was not clean", like Detective Colyer defrauded the Court to believe.

(8). On the other hand the Government not only ignored the fact that Edward Lee "Treyboy" Outley and Shalaykea "Lakie" Scroggins, whom was in a GOLD Jaguar on the night of the murder, conspired to hide the car so the vehicle wouldn't be subjected to the same forensics testing that the Grand Am was subjected to because they knew that had the GOLD Jaguar been tested in the forensics lab forensics would have not only found the victim's blood in the GOLD jaguar, forensics would have also found Outley and Scroggins blood intertwined with the victim's blood where the huge thorns at the crime scene undoubtedly cut them.

In an effort to hide the GOLD jaguar Outley lied to investigators and told them

that he was in a <u>BLUE</u> Jaguar on the night of the murder. ( See § 2241 pg. 20 and App. 54.) Scroggins also lied and said that the Jaguar was <u>BLUE</u> in a knowing and willful effort to hide the <u>GOLD Jaguar</u>. ( See § 2241 pg. 20 and App. 55)

(9). Knowingly, willfully, intentionally and deliberately joining in this seditious conspiracy the government, with malice aforethought attempted to Defraud the Courts themselves and make the jury believe that Outley and Scroggins was indeed in a <u>BLUE</u> Jaguar that the government already knew, or should have known didn't even exist at the time of Coleman's murder. ( See § 2241 pg. 20, and App. 56 ). The government knew at the time that they were attempting to Defraud the Court that Outley and Scroggins was in a <u>GOLD</u> Jaguar on the night of the murder. ( See § 2241 pg. 21 and App. 57 ). And that Outley and Scroggins were conspiring to hide the <u>GOLD</u> Jaguar.

(10) The evidence show that Coleman could have been shot with two different guns. ( See Trial Trans. pgs. 1467-1469; Cross exam. of Dr. Jill Urban.) Which could mean that after Scroggins shot Coleman, Outley pulled his gun and shot her a second time.

However Outley claims that he gave Fields a .32 caliber on the night of the murder and it was that .32 that is the murder weapon. But again, it's Outley that's trying to conspire with another to frame Fields.

Outley wrote his childhood friend Christian Chae Walker a letter and told walker to lie and say that he gave Outley the .32 pistol to give to Fields. ( See § 2241 pg. 11 and App. 39 ).

(11). Walker didn't even know what the gun look like until he was "coached" by Sheriff Detective Morris "Bubba" Colyer. ( See § 2241 pg. 11 and App. 40 ).

(12). Walker then joined the Conspiracy by lying and claiming that he gave the gun to Outley "for protection." ( See § 2241 pg. 11 and App. 41.)

(13). Outley on the other hand claimed that Walker gave him the gun "to give to Fields". ( See § 2241 pg. 11 and App. 42 )

(14). There is no doubt that Sheriff Detective Johnny Spillman and U.S. Marshal Chris Casson blatantly lied when they claimed that Tanesha Hilliard said that Fields became angry and/or Irate when he came into contact with Coleman at the hospital that night, and it was done with the intent to defraud and to make the case into something that it wasn't.

And where Tanesha Hilliard admits that Fields have <u>never</u> been violent towards Coleman, and in fact Fields actions were contrary to what law enforcement claim ( Fields and Coleman were hugging and kissing ). And Coleman <u>Willingly</u> left with Fields to go to a hotel. ( See App. A in this petition/Reply brief ). On the other hand, four months prior to Coleman's murder, Scroggins wrote two letters expounding upon her obsession for Fields; She wrote about how she'd lost Fields to Coleman once and vowed, " I will not let it happen again." And if she were to lose Fields again, she would be " Killing

3

Bitches." ( See § 2241 pgs. 9 & 10 and App. 33 ).

(15). Then a week before the murder Scroggins approached the victim and they got into a very heated argument. ( See § 2241 pg. 10 and App. 34 ).

(16). Scroggins then went and got a phone turned on in Fields' name and she immediately started calling the victim, threatening her. The day before the murder Fields and the victim together called the phone company and the victim Suncerey Coleman told the phone company that Scroggins illegally got the phone turned on in Fields' name and that she was calling Coleman threatening her. ( See § 2241 pg. 10 and App. 35 ).

The next day is when Fields said that Scroggins killed Coleman.

(17). After the murder Scroggins gave several different "alibi's" for the time of the murder. In one "alibi" she claimed that prior to the murder Fields dropped her off at home, but she left her house and went straight to her sister's house and went to sleep, while Edward Lee "Treyboy" Outley went home. ( See § 2241 pg. 8 and App. 26 ).

(18). In another "alibi" Scroggins claimed that Fields dropped her off and she walked to the store, while Outley went looking for Fields. ( See § 2241 pg. 8 and App. 27.)

(19). Outley claimed that he neither " went home", nor did he "go looking for Fields", Outley claims that he was out " selling drugs ". ( See § 2241 pg. 8 and App. 28 )

(20). The government calls Outley and Scroggins lies "inconsistencies", but we all know that these are indeed lies. For example:

On 11/26/01 Scroggins wrote a statement claiming that an "unknown person" knocked on her door and told her to meet Fields down the street. Scroggins claim that she met Fields and as they sat in the car together she asked him about Ms. Coleman and Fields said, " I messed up, she's gone." Then on 11/15/01, which was the day that Scroggins was arrested, she claimed that Fields called her at 8:00 and told her in very explicit details what's alleged to be the details of the crime.

(21). Two months later, on 2/26/02 Scroggins went to the Grand Jury, she told the Grand Jury that she and Fields were in her house at or about 11/8/01 and it was then that she asked Fields about Coleman and Fields told her that he killed Coleman and at that time went into very explicit details about how.

(22). The only way to prove that Scroggins was lying besides the obvious fact that she told two different stories was for Fields to obtain her phone records to show that the alleged 8:00 phone call on 11/15/01 don't exist. So Fields presented the phone records and proved that Scroggins was lying.

(23). In closing the prosecutor took that time to defraud the Court and mislead the jury, telling them that the reason the phone records don't show the call is because " Phone records only show calls to cell phones." ( See § 2241 pg. 21 and Trial Trans. pg. 2033.)

4

(24). Edward Lee "Treyboy" Outley's testimonial in regards to Fields' alleged "confession" is just as troubling. Outley alleged that Fields admitted to killing Coleman, but before Fields could tell him any details about the murder he stopped Fields and said that he don't want to know. ( See § 2241 pg. 24 and App. 60 ).

(25). Prior to trial a William "Skeeter" Young contacted authorities while he was in Beaumont Federal Prison with Outley and told them that Outley said that he was present at the crime scene when Coleman was murdered and that Fields " Shot her in the head two times." ( See § 2241 pgs. 24 & 25 and App. 61 ).

(26). At trial Mr. Young retracted his statement about Outley being at the crime scene, but testified that Outley did tell him that the victim was shot in the head two times. ( See § 2241 pg. 25 and App. 62 ).

> If Outley was telling the truth when he claimed that Fields confessed to him, but didn't tell him no details then Outley wasn't supposed to know that Coleman was " shot in the head two times." The only way he could know that is if he did indeed help Scroggins kill Coleman like Fields said.

(27). The government knew that so they panicked and scrambled to counter Young's testimony, the government procured ATF Agent Douglas Kunze to lie and say that he met with Young the day before and Young told him that he don't know Outley. ( See § 2241 pg. 25 and App. 63 ).

(28). That was a blatant lie that was meant to defraud the Court. Outley used to sell drugs for Mr. Young and Young admits that he do indeed know Outley. ( See § 2241 pg. 25 and App. 64.)

(29). Outley also admits that he do know William "Skeeter" Young. ( See § 2241 pg. 25 and App. 65 ).

(30). But there is an even bigger issue than the perjury and the subornation of perjury. Fields subpoenaed Mr. Young in an ex parte hearing and had it sealed. The Judge even assured Fields that no one knew who his witnesses were, especially the prosecution, ( See Trial Trans. pg. 1552 ). So there is no way ATF Agent Kunze could have " talked to William Young the day before ", like he claimed unless Judge Smith or someone working for Judge Smith was giving the government confidential information.

(31). There is no doubt that the government violated Fields' constitutional rights in the most egregious way as they engaged in a criminal conspiracy to Frame Mr. Fields. Even in the alleged carjacking, the government blatantly lied and said that there was " no fingerprints or nothing ". ( See § 2241 pg. 26 and App. 69 ).

5

(32). However the government knew all along that there were fingerprints all of AFIS quality. ( See § 2241 pg. 26 and App. 70 ).

(33). The government also knew that those prints were checked against Fields' prints and there was no match. ( See § 2241 pg. 26 and App. 71 ).

> Knowing the facts presented above it's beyond ludicrous that the government is still trying to claim that Fields is indeed guilty and he was not framed.

In the United States v. Roger LaPage, 23, F.3d 488 (2000) the Court held that " All perjury pollutes a trial, making it hard for jurors to see the truth. No lawyer, prosecutor, or defense counsel, civil or criminal may knowingly present lies to a jury and then sit idly by while opposing counsel struggle to contain this pollution of the trial.

The jury understands defense counsel's duty of advocacy and frequently listens to defense counsel with skepticism, a prosecutor has a special duty commensurate with a prosecutor's unique power, to assure that defendants receive fair trials. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate method to bring about one."

> The government here in Fields polluted the trial and made it sick with numerous acts of perjury calculated to bring about Fields' wrongful conviction and Death Sentence, and once the trial have been polluted and infected with a sickness such as this it's impossible to "make it well again".
>
> And while the Courts recognize that jurors view defense attorney's with skepticism, then one can only imagine how they viewed Fields, standing alone, trying to conquer the pollution of perjury, while the prosecutors sat idly by watching this innocent man flounder.

Now the government is asking this Court to ignore the fact that they lied and said that there were no fingerprints; They want this Court to ignore the fact that they lied and said that no blood was found in the Grand Am because the car "looked detailed or wiped down", while knowing that forensics have technology that still would have found blood, and also while withholding the photographs that will show

6

that the car was not "clean".

The government is asking this Court to just ignore the fact that it appears as if Outley and Scroggins both shot Coleman, then they conspired to hide the car that they were in, gave several different "alibi's" for the time of the murder, and can't get their stories straight about how, why, when and where Fields allegedly confessed to them.

The government is asking this Court to just ignore the fact that after Fields proved that there was no 8:00 phone call and Scroggins was lying, the prosecutor blatantly lied, defrauded the Court and misled the jury by claiming that the phone records only show calls to cell phones.

The government is asking this Court to just ignore the fact that the government deliberately tried to defraud the Court by allegeing that Outley and Scroggins was indeed in a BLUE Jaguar that they knew all along didn't exist.

The government is asking this Court to just ignore the fact that Outley told his friend Christian Chae Walker to lie and say that he gave him a gun to give to Fields.

With all due respect what the government is asking this Court to do is outright criminal, they want this Court to ignore these true facts and allow the law to hinge on false facts. In re Davis, No. CV-409-130 (8/24/10), the Court held that " the lowest degree of confidence in a jury verdict would presumably occur when the jury has heard a corrupted body of evidence. Because the procedural protections in place to protect the innocent from conviction have been breached, confidence in the result of the trial is generally undermined."

The government is asking this Court to ignore the fact that four months prior to the murder Scroggins wrote letter(s) stating that she'd lost Fields to the victim once and if it happened again she would be " killing bitches."

The government want this Court to ignore the fact that Scroggins and the victim got into a verbal altercation that almost turned physical a week before the murder.

The government want this Court to just ignore the fact that just one day prior to the murder the victim called the phone company and told them that Scroggins keep calling her threatening to kill her.

The government want this Court to just ignore the fact that Sheriff Detective Johnny Spillman and U.S. Marshal Chris Casson blatantly lied and said that Fields became "angry" and/or "Irate" when he came into contact with the victim in an attempt to make the case into something that it's not.

The government is asking this Court to just ignore the fact that they went "seeking jailhouse testimony", tried to get Outley and/or Scroggins to lie and say that they were " with Fields ", and attempted to get Chance Alexander to lie and say that Fields confessed to him, and then ultimately ended their case with nothing but

7

" jailhouse testimony ", inmates whose stories are so far fetched the jury didn't even believe them. ( See § 2241 pg. 34 & 35 and App. 86.)

The government is asking this Court to just ignore the fact that they committed criminal act(s) themselves, framed Fields for the murder that they've known all along that he didn't commit, and just step back and let them murder Fields via lethal injection.

The government is asking this Court to ignore the fact that they violated Fields' due process and Civil rights, they want this Court to ignore the fact that they violated and continues to violate the United States Constitution and is now attempting to Defraud the 7th Circuit District Court of Indiana.

## THE GOVERNMENT IS ATTEMPTING TO DEFRAUD THE 7TH CIRCUIT DISTRICT COURT OF INDIANA

In the governments opposition brief to Fields' § 2241 the government, on page 15 claims that " the existence of undisclosed photographs is conjecture " and " nothing in the records suggests "undisclosed" photographs exist."

The forensics report in § 2241, App. 37 show that the existence of the photo's is not "conjecture" as the prosecution so boldly claim and that they do indeed exist. The report states " 35mm photographs were taken of the outside and the inside of the vehicle. This 35mm film will also be turned in to the photo lab for processing if needed at a later date."

Now the government is asking this Court to just ignore the fact that the government withheld the photographs and that they're now trying to defraud your Court by claiming that the existence of the photographs is just "conjecture" and the photo's don't exist.

The Courts have held that " the supervisory powers of the Courts is reserved to protect the integrity of the Federal Courts; United States v. Chiavola, 744 F.2d 1271, 1274 (7th Cir. 1984). The policy is concerned with the extent to which Fraud on the Courts converts the Courts into an instrument of the party's deception."

The government seems to think that the same deceptive practices that have propelled their criminal actions to the forefront thus far will prevail here as well and they can just put anything down as a response, facts lacking, and defraud this Court as well. The governments response in regards to those photographs tells us two very interesting things about the governments case; (1). They would rather blatantly lie and defraud this Court than to produce those photographs. This Court cannot and should not fall victim to the prosecution(s) ongoing deception; And (2). The forensics report in Fields' § 2241 App. 37, and the governments response in their opposition brief leaves no doubt

8

that the prosecution violated Fields' due process and Constitutional rights in regards to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963); That violation alone warrants vacatur.

## § 2241 DO APPLY

Fields' case is a matter of Constitutional interest. Under § 2241 (c)(3) any District Judge withing their respective jurisdiction has the power to grant the writ if a prisoner is in custody in violation of the Constitution or laws or treaties of the United States. And under § 2241 (d) " the application may be filed in the District Court for the district wherein such person is in custody."

Fields' case meets the threshold of the "extraordinary case" in a different light, Petitioner is Actually and Factually innocent, his conviction(s) and Death Sentence is due to criminal act(s) committed by the prosecution in violation of the United States Constitution, and petitioner's appeals were illegally and Unconstitutionally exhausted by District Judge Walter Smith and 5th Circuit Court of appeals Judge Edith Jones, both Judges that the evidence proves was effectively bias.

The government, in their opposition brief asks this Court to dismiss Fields' § 2241 even though it's obvious that it would result in Fields's illegal and unconstitutional Murder via lethal injection and it would result in a fundamental miscarriage of Justice. Sawyer v. Whitley, 505 US 333, 120 L.Ed. 2d 269, 112 S.Ct. 2514 (1992). In the United States v. Ornelas-Rodriguez, 12 F.3d 1339, 1349 (5th Cir. 1994) the Court held that " A Court can exercise supervisory power to " deter further illegal conduct." The Court observed that the " underlying purpose(s) of its inherent supervisory powers " include (1) Remedying a violation of a recognized right, and (2). Preserving Judicial integrity by insuring that the conviction rests on appropriate evidence validly before the jury. Both of those purposes would be served by exercising that authority here. Mr. Fields is innocent and his conviction(s) and Death Sentence is the direct result of a criminal conspiracy in which the government intentionally, deliberately, willingly and knowingly with malice aforethought chose to join in and/or to Aid and Abet.    Schiro v. Summerlin, 124 S.Ct. 2519, 2528 (2004) (Breyer, J., joined by Stevens, Souter and Ginsburg, JJ, dissenting) ("Great writs basic objectives "include" protecting the innocent against erroneous conviction"). The government cannot, in good  faith say that § 2255 was adequate to test the legality of Fields' conviction(s) and Death Sentence when the District Judge's friend was the attorney for the Victims family and that same Judge refused to assist in an investigation of said friend for withholding evidence in another case; The government cannot honestly say that § 2255 was adequate to test the legality of Fields' conviction(s) and Death

Sentence when the District Judge told a Juror that the prosecutor(s) that went "seeking jailhouse testimony", committed criminal act(s), framed Fields for crimes that the evidence proves he didn't commit, and violated Fields' Constitutional rights would " dismiss the charges if they thought Fields' rights were being violated." ( See § 2241 pgs. 7-9 ).

The government cannot honestly say that § 2255 was adequate to test the legality of Fields' conviction(s) and Death Sentence when 5th Circuit Court of appeals Judge Edith Jones said that " No one is innocent, they just get off on technicalities " and Black males commit most violent crimes ", when in fact Fields is innocent and a Black Male and the facts prove that Fields' appeals were illegally and Unconstitutionally denied.

It's clear that Judge Smith should have recused himself from the very beginning. " The Supreme Court has held that Actual bias and the appearance of bias violate due process principles." Bracy v. Schoming, 286 F.3d at 410-11; See Bracy, 520 U.S. at 905 (Actual Bias).

As for Judge Jones, " The law cannot directly or indirectly give Judge Jones' personal bias effect." Liljeberg v. Health Service Acquisition Corp. (1988) 486 U.S. 847, 100 L.Ed. 2d 855, 108 S.Ct. 2194. ( See § 2241 pgs. 13-15 ).

The government cannot honestly say that § 2255 was adequate to test the legality of Fields' conviction(s) and Death Sentence when the safeguards put in place in Gregg v. Georgia, and its progeny to protect against wrongful conviction failed to protect Fields.

The governments assertion that Fields " did not challenge the sufficiency of the evidence against him on direct appeal " and " Therefore many of the issues he now raise are procedurally barred ", ( Governments opposition brief, pg 15 ) is, again ludicrous. There is no greater challenge to the sufficiency of the evidence than a defendant that has maintained his innocence from day one and continues to maintain his innocence. The evidence that Fields presented in his § 2241 proves that Fields is Actually and factually innocent of the crime(s) that he has been Unconstitutionally and wrongfully convicted of, the evidence proves that Field(s) Constitutional rights have been, and still are being egregiously violated and therefore any alleged or perceived procedural defaults are excused as a matter of course under the fundamental miscarriage of Justice exception." Mize v. Hall, 532 F.3d 1184, 1195 n.9 (11th Cir. 2008), and any cause for the default is attributed to the actions of the government.

Thus the governments request for this Court to ignore what is a fundamental miscarriage of Justice and dismiss Fields' § 2241 Petition should not be granted. The governments claim that Fields' petition doesn't bypass § 2241's gatekeeping

10

is again, ludicrous, every Judge takes an oath to uphold the United States Constitution and no law made by an act of Congress can supercede that. See Marbury v. Madison; Supra. Violation of due process, Criminal violations committed in violation of the Constitution and the attempted Murder of someone who's actually and factually innocent is a direct violation of the Oath that all public officials take and the government cannot, implore, coerce or lie their way to their end result, nor can no law enacted by an act of congress impede a judge from sticking to the Oath that they made to uphold the Constitution.

THE AUTHOR(S) OF THE GOVERNMENT'S OPPOSITION
BRIEF IS AIDING AND ABETTING THE PROSECUTOR(S)
CRIMINAL ACT(S) DOWN IN WACO, TEXAS, OR IN
THE ALTERNATIVE IS GUILTY OF MISPRISION OF
FELONY.

Fields, in his § 2241 have presented extensive evidence that Police, Prosecutors and "witnesses" down in Waco, Texas engaged in a criminal conspiracy, solicited Fields' murder via lethal injection. committed perjury, suborned perjury and Defrauded the Courts, while in the process of violating Fields' Civil and Constitutional Rights. Conspiracy, Solicitation of Murder, Perjury, Suborning Perjury and Fraud on the Court alone and in pursuit of taking someone's life are all felonie(s).

Upon receipt of Fields' § 2241 the author's of the governments opposition brief was effectively notified of the crime(s) committed, and it was the prosecutor's duty to inform the Judge rather than to Aid and Abet the criminal act(s); " Whoever, having knowledge of the Actual commission of a felony cognizable by a Court of the United States, conceals and does not as soon as possible make known the same to some Judge or other person in Civil or Military authority under the United States, is guilty of the Federal crime of Misprision of felony. 18 U.S.C.A § 4 " and anyone who " help, assist, or facilitate the commission of a crime, promote the accomplishment thereof, help in advancing or bringing it about, or encourage, counsel, or incite as to its commission is guilty of Aiding and Abetting." State v. Fetters, Iowa, 202 N.W. 2d 84,90. It comprehends all assistance rendered by words, acts, encouragement, support, or presence, actual or constructive, to render assistance if necessary."
The governments opposition brief proves undoubtedly that the safeguards put in place in Gregg v. Georgia  and its progency to protect against wrongful conviction failed to protect Fields and continues to fail to protect Fields from criminal act(s) perpetrated against him by the United States government.

> ( Fields isn't making a request that criminal charges be
> filed against the perpetrator(s) of these criminal act(s)
> (Fields understands that the Court don't have that
> authority.) However the Court do have the authority to
> put a stop to the violation of Fields' rights, vacate
> his sentence in recognition that a conviction can't be
> sustained up under these circumstances.)

12

The government is diluting the facts in a veiled attempt to misdirect the Court, their claim that " Fields never filed a Pro Se § 2255 in the district Court " is obviously a thinly disguised diversion from the letter in Fields' § 2241 (App. 1) where Fields informed the Court that Counsel's § 2255 was incomplete. Fields waited for the District Court to respond so that he could file the issues in his "freestanding actual innocence brief" to no avail, instead the biased Judge Walter Smith ignored Fields' letter and rushed to deny petition filed by counsel, then Judge Smith informed Fields that he wouldn't be allowed to proceed pro se effectively making sure that § 2255 would be inadequate to expose the conspiracy to murder Fields via lethal injection. In that vein the government cannot now claim that § 2255 was adequate to test the legality of Fields' conviction(s) and death sentence.

The government also claim that the 5th Circuit considered and denied Fields' request to proceed Pro Se "within its discretion" and " relying on the representation of counsel that appellant does not wish this Court to remove counsel." The government quotes, Lee, 406 F.2d at 469 (holding that petitioner in habeas corpus proceeding had a right to represent himself or to be represented by counsel, but not both ). However, Fields believes the government is mistaken for a couple of reasons; (1). In Price v. Johnson, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed 1356 (1948) the Court held that " a prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate Court " foreclosed any right of a pro se defendant to act pro se. But this did not foreclose the right of a defendant to present a pro se brief." Given the language in Price v. Johnson, it appears that hybrid representation in capital cases where a defendant wish to proceed pro se is inexcapable, because where a defendant is allowed to file a pro se brief, counsel is still warranted to "argue the appeal" and to make court appearances; And (2). This Court seems to agree because this Court just recently allowed Fields to respond to the governments opposition brief through counsel.

Also the evidence clearly show that Fields filed his Brief and Motion(s) to the 5th Circuit Pro se and had no control over Counsel filing to attach. Fields also had no control over what decision a Judge choose to make, but just because Counsel attach of their own volition and a Judge decides to accept that attachment and refuse to hear Petitioner(s) Pro Se issue(s) the government cannot now blame Fields for that, nor can the government now claim that some of Fields' issues were adjudicated when in fact it's very clear that if Counsel did "mention" certain similarities to Fields' Pro Se issues, the intent on behalf of the governments actions differ from the way that the issues were intended to be filed by Fields. The government even indirectly acknowledges that, stating " Fields reasserts trial arguments, framing them in terms of "bias" and/or criminal wrongdoing..." (See Governments opposition brief, pg.12). Yet the government knows that Fields' objections, in part, to what Counsel filed on his behalf was the lack of the criminal element. ( See § 2241, App. 1 ). Which in terms

13

placed a lighter burden on the government and allowed them to continue to defraud the Court(s). It was Fields' right to have his issues framed according to the evidence, and it was also his right to have his Pro se brief entertained. This combined with the fact that Judge Smith and Judge Jones was both effectively biased proves that § 2255 was inadequate and since the aforementioned isn't appealable in the ordinary course, an original petition pursuant to § 2241 represents one of the last available methods by which this Court may resolve this gross miscarriage of Justice by using its supervisory powers. Furthermore, the governments effort(s) to block Fields' from proceeding while knowing that if the Court refuses his § 2241 it would result in a gross miscarriage of Justice only highlights why the Death penalty and the AEDPA is illegal and Unconstitutional as well. " Sensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations." Schlup, 513 U.S., at 324, 115 S.Ct. 851, 130 L.Ed. 2d 808. The evidence presented proves that Fields is innocent, he was willfully and intentionally framed with malice aforethought which is criminal in nature, Judge Smith and Judge Jones were both bias, refused to allow petitioner to file the issues that he wanted to file and rendered § 2255 inadequate, refusing Fields the opportunity to present his claims. " There is general agreement amongst the Circuits that access to § 2241 via the savings clause turns on whether the petitioner has had an opportunity to present his claim. Prost v. Anderson, 636 F.3d 578, 589-94 (10th Cir. 1997). See also In re Dorsainvil, 119 F.3d 245, 248 (3d Cir. 1997) ( holding that the unavailability of collateral review to a party claiming innocence would raise a "thorny constitutional issue.) Triestman v. United States, 124 F.3d 361, 377 (2d Cir. 1997) ( holding that the savings clause is available when failure to provide collateral review would raise " serious constitutional questions"). This case cross Constitutional limits, requiring the Courts intervention and formulation of objective standards. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 846-847, 118 S.Ct. 1708, 140 L.Ed. 2d 1043 (1998) (reiterating the due process prohibition on "executive abuse of power...which shocks the conscience"). There isn't a greater due process violation that "shocks the conscience" than the fabrication of evidence by government officials and the willful, deliberate, intentional and knowing commission of obstructing Justice so that they can murder via lethal injection a man that they know to be innocent. Having said that, § 2255 was undoubtedly inadequate and Fields asks this Court to reject the governments criminally negligent request to dismiss this § 2241 and let a fundamental miscarriage of Justice prevail.

14

It's interesting that the government would now try to manipulate this Court into dismissing Fields' § 2241 stating " Fields reasserts trial Court arguments the jury rejected, repeatedly asking this Court to make impermissible credibility determinations and to reweigh the evidence." ( Governments brief in opposition, pg 12. ) When in fact that's exactly what the government is doing; The government is quoting the exact same false testimony that the jury rejected. In closing arguments at trial the government referenced every single one of the inmates that they're referencing here in their opposition brief and asked the jury to find that their testimony means premeditation. ( See Trial Trans. Governments closing argument ). The Jury found that it was not premeditated, effectively ruling that they didn't believe the inmates. ( See § 2241 pgs. 34-36 and App. 86 ), lending credence to the fact that Fields' conviction(s) and Death Sentence was influenced by Passion, Prejudice and other arbitrary factors as described in Fields' § 2241.

Another major factor that the government is trying to just "gloss over" is the fact that in <u>every wrongful conviction</u> the jury had rejected the innocent persons trial Court argument for one reason or another. Had the government not lied and said that there were no fingerprints; Had the government not lied and said that they didn't find blood in the Grand Am because the car " looked wiped down "; had the government not lied and said that phone records " only show calls to cell phones "; Had the government not lied and said that Fields became "angry" and/or "irate" when he came into contact with the victim; Had the government not aided and abetted Outley and Scroggins in hiding that GOLD jaguar; Had the government not went "seeking jailhouse testimony"; I could go on and on; Had the government not defrauded the Court(s) on a range of different issues the end result would have been different; The government can't use perjury to counter every one of the defendant's factual issues and then implore the Court to disregard their criminal actions and Constitutional violations. That's why the Court in the U.S. v. Roger LaPage, Supra recognize that " all perjury pollutes a trial, making it hard for jurors to see the truth."
All the Court have to do is look at how the government interpret the "evidence" in their opposition brief; The government said, " Fields drove Coleman to a remote area outside Waco, where he raped her." ( Brief in opposition, page 3.) This is the testimony of Inmate Homero Deleon, an inmate that Fields had never even seen before until he got up on the witness stand and lied; An inmate whom claimed at one point that he was Fields' "cell mate", when it's a proven fact that he never was; An inmate whom claimed that he saw Fields at a store in May or June of 2000 when Fields was actually in State prison. ( See Trial Transcripts, pgs. 1430-1433; ) An inmate that claimed that Fields

15

told him the names of the people that went to the Grand Jury and then named five people that didn't go to the Grand Jury on Fields, five people that DeLeon knows personally. ( See § 2241 pgs. 27-28 and Appendix's 77, 78, 79, 80, 81 & 82 ). Deleon is the same inmate that the prosecution asked the jury to believe that he was telling the truth and to find premeditation, and the jury did not believe him. Now the government is trying to use Deleon's false testimony to Defraud this Court. The government's own expert, Ms. katherine Long ( See Trial Trans. Testimony of Katherine Long ), testified, and I quote: " However, I saw no signs of sexual assault." Furthermore the medical examiner(s) report say, " The external genitalia, anus, perineum, and extremities are free of appreciable lesions; The remaining body cavities are free of adhesions or fluid collections."

In what " Justice System " do a prosecutor give an inmate's word precedent over their own expert(s)? An inmate that they paid via a time reduction ( After "seeking jailhouse testimony"); An inmate whom the jury didn't even believe.

Not only do this show the prosecutor's incompetence and negligence, but it should show this Court the prosecutions willingness to distort the facts in order to meet their end result. This is a Death Penalty case where a man's life is on the line, the only way to assure that these police and prosecutors won't do this again to someone else is for this Court to make a factual determination and the prosecution knows that so they seek to deter this Court. See U.S. v. Ornelas-Rodriguez, Supra. " Court can exercise supervisory power to "deter further illegal conduct". And " Preserve Judicial integrity." When the victim's cousin, Tanesha Hilliard told law enforcement that Fields and Coleman had left together to "go to a hotel" the government assumed that Fields and Coleman were going to have sex, and they were going to use that to allege rape after Scroggins murdered Coleman, but when the forensics didn't support a rape allegation, the government just procured inmate Homero Deleon to lie and say that Fields confessed that to him. But it's duly noted that the jury did not believe that, yet the government is still trying to use this false testimony to defraud the Court.

The errors here in Fields was made by the prosecution willingly and deliberately with malice aforethought and are "grave enough" that failure to remedy [them] would create a "miscarriage of justice". Id. at 773 (citing In re Davenport, 147 F.3d 605, 610-12 (7th Cir. 1998).

16

. The government claim that two of Fields'
cellmates heard him say that he wanted to
kill Coleman. ( Governments opposition
brief, pg. 3.) Fields counters that false
argument at § 2241 App. 5, pgs. 54-58.) Also
Fields' cellmates claim that they heard Fields
threaten the victim on the phone, and although
the Federal jail records phone calls there are
no calls to support these inmates stories.
But most importantly, like previously stated,
the jury did not believe their testimony.

. The government attempts to make the argument
that something nefarious was going on because
Scroggins "got rid of" Fields' clothing.
( Governments opposition brief, pg. 3 ).
(1). Fields had just walked away from a jail
wearing green JAIL pants that were cutoff into
shorts, with the letters J-A-I still on one
leg, an old holey T-Shirt and old holey shoes,
the shirt and shoes he'd wore one year straight,
playing basketball in them. The governments "logic"
is that Fields should have kept his jail clothes
on the entire time that he was out.
(2). Scroggins said that she left the clothes and
shoes in the trash can inside the motel room. That
same morning the police came and forensics took
"everything in the room." ( See Trial Transcripts,
pgs. 1408-1413.) So the government got the clothes
and shoes. But most importantly there was no blood
found nowhere in the room, not on the carpeted floor,
not in the trashcan where Scroggins said that she
put the clothes and shoes, there was no blood nowhere,
yet the government continues to perpetuate this
perjury.

17

. The government still attempts to make the
argument that Fields "represented himself "
at trial. ( Governments opposition brief,
pg. 6 ) At the time that Judge Smith FORCED
Fields to proceed pro se Fields knew nothing
about the law, he didn't even know what "case
law" or anything else dealing with a trial was,
his prior experience was limited to standing
beside an attorney in Court and saying " Guilty
or not guilty ", and Fields let the Judge know
that, stating " Your Honor, I can't do this, I'm
not learned in the law." ( See § 2241 pg. 7 and
App. 24 ).


. The government claim that Fields wrote Scroggins
a letter asking her to accept responsibility for
Killing Coleman. ( see Governments opposition brief,
pg. 13.) Scroggins said that Fields was "in custody"
when he asked her to take responsibility via a letter.
She claimed that she tore the letter up, but kept the
envelope. ( See Trial Transcripts, pg. 1609 ). Yet
authorities were intercepting all of Fields' mail,
incoming and outgoing. ( See Trial Transcripts, pg.
1807 ). So the government know that Scroggins lied,
yet they keep using this false narrative to defraud
the court(s).


. The government claim that Fields admitted to at least
four people that he killed Coleman. ( See Governments
opposition brief, pg. 4 ). The government names Outley
and Scroggins, the two people whom Fields said really
committed the murder; The government names Chris Walker,
the guy that changed his story on the very day that he
was to testify after Walker had started corresponding
with both Outley and Scroggins. ( See § 2241 pgs. 26-27).
The government also names Kevin Burton, a guy that
"came forward" two years after the fact when he was in
Federal Prison with Christian Walker. ( See § 2241 pg. 27).
But most importantly, just like the other inmates the
jury did not believe them.

18

Fields counters every other argument that the government attemptss to make in their opposition brief. ( See § 2241.) The governments attept to continue defrauding the Courts and desecrating the United States Constitution is an affront to the Justice system and the honest Judges and prosecutors that adhere to their duty of honesty to the Courts and it should not be tolerated.

The prosecution have a mistaken belief that just because the Supreme Court passed on a challenge to the Death Penalty and the AEDPA in the past it forever forecloses any future challenges. The facts and circumstances of every case is different and oftentimes the Court(s) doesn't realize that a particular law is Unconstitutional until the law(s) do harm, in violation of the United States Constitution, just as the law(s) are doing here in Fields's case. So against the backdrop of Gregg v. Georgia, 428 U.S.

153, 49 L.Ed. 2d 859, 96 S.Ct. 2909 (1976) and Gregg's companion cases, and up under Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 176, 2 L.Ed 60 (1803), this Court absolutely have the right to strike down both laws.

When we view the facts of Fields's case through the lens of Ring v. Arizona, 536 U.S. 584, 614, 122 S.Ct. 2428, 153 L.Ed. 2d 556 (2002) (Breyer, J., concurring in Judgement) ( Explaining that without adequate safeguards, " the Constitutional prohibition against ' Cruel and Unusual punishments ' would forbid [the] use " of the Death Penalty ); The Death penalty is absolutely Unconstitutional. No safeguard(s) would have prevented and/or could protect against intentional, deliberate and willful human error; No safeguard(s) would have prevented Sheriff Detective Morris "Bubba" Colyer from knowingly and willfully lying and saying that there was no blood in the Grand Am because the car "looked wiped down"; No safeguard(s) would have prevented Sheriff Detective Morris "Bubba" Colyer from intentionally and knowingly coaching Christian Chae Walker and telling him what kind of gun it was that Edward Lee "Treyboy" Outley wanted him to lie about; No safeguard(s) would have prevented the prosecution from intentionally, deliberately and knowingly withholding photographs and Defrauding the jury; No safeguard(s) would have prevented the government from lying and Defrauding the jury when they lied and said that there were no fingerprints; No safeguard(s) would have prevented the government from joining and/or Aiding and Abetting Outley and Scroggins conspiracy to hide the Gold Jaguar that they were in on the night of the murder; No safeguard(s) would have prevented the government from "seeking jailhouse testimony" and hiring those inmates to fabricate evidence against Fields...or any other innocent person; No safeguard(s) would have prevented those inmates from joining the conspiracy to use lies/perjury to murder Fields via lethal injection; No safeguard(s) would have prevented the government from lying and saying that the phone records only show calls to cell phones; No safe- guard(s) would have protected Fields from Judicial Bias, at trial and on appeal; No safeguard(s) would have prevented the police, the prosecutor(s) and their "witnesses" from framing Fields, just as no safeguard(s) could have protected Larry Ruffin (5th Cir.)

20

(Posthumous pardon); Carlos DeLuna (5th Cir.) (Posthumous Pardon); Cameron Todd Willingham (5th Cir) (Posthumous Pardon). Thus the Death penalty is illegal and Unconstitutional. The Constitution doesn't allow anyone to commit criminal homicide/ murder, yet the Death Penalty allows prosecutor(s) to commit murder simply by "making it look like" an American Citizen is guilty of a crime that they're actually innocent of. How many innocent people do they have to murder before the Court(s) realize the sheer evil and destructive nature of this law and intervene? When the Supreme Court decision in 1976 upholding the Constitutionality of the Death Penalty was handed down it " relied heavily on the belief that adequate procedures were in place that would avoid the danger of discriminatory application identified by Justice Douglas' opinion in Furman, id., at 240-257, 92 S.Ct. 2726, 33 L.Ed. 2d 346 (concurring opinion), of arbitrary application identified by Justice Stewart, id., at 306, 92 S.Ct. 2726, 33 L.Ed 2d 346 (same), and of excessiveness identified by Justices Brennan and Marshall. It's frightening being a black male in America; The police are murdering us in the streets... And getting away with it; Police and Prosecutors are murdering us via lethal injection in the Justice system...And getting away with it. Jurors have preconceived bias's about Black males..." Black males commit most violent crimes ", according to the majority of Fields' jurors; Judges have preconceived Bias's about Black Males.... " Black Males commit most violent crimes ", according to 5th Circuit Judge Edith Jones. " The disgraceful distorting effects of racial discrimination and poverty continue to be painfully visible in the imposition of death sentences "; Godfrey v. Georgia, 64 L.Ed. 2d 398, 446 U.S. 420.

There is no doubt that Fields' sentence was arbitrarily imposed, in violation of Furman v. Georgia, (1972) 408 US 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726. In a concurring opinion by Mr. Justice Douglas, it was stated that a penalty should be considered unusually imposed if it is administered arbitrarily or discriminatorily. Fields' case is extreme, and " it is true that extreme cases often test the bounds of established legal principles, and sometimes no administrable standard may be available to address the perceived wrong. But it is also true that extreme cases are more likely to cross Constitutional limits, requiring the Courts intervention and formulation of objective standards. This is particularly true when due process is violated. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 846-847, 118 S.Ct. 1708, 140 L.Ed. 2d 1043 (1998) (reiterating the due process prohibition on "executive abuse of power...which shocks the conscience"). In this case, Fields is seeking relief from a sentence of death. The Supreme Court has long acknowledged that a death penalty case is fundamentally different from a non-capital proceeding.

> [T]he penalty of death is qualitatively different
> from a sentence of imprisonment, however long.
> Death, in its finality, differs more from life
> imprisonment than a 100-year prison term differs
> from one of only a year or two. Because of that
> qualitative difference, there is a corresponding
> difference in the need for reliability in the
> determination that death is the appropriate
> punishment in a specific case.

Woodson v. North Carolina, 428 U.S. 280, 305 (1976) (plurality opinion) (footnote omitted); See also Lockett v. Ohio, 438 U.S. 586, 605 (1978) ("Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases.") (plurality opinion); Gardner v. Florida, 430 U.S. 349, 357 (1977) (noting that "death is a different kind of punishment from any other that may be imposed in this country") (plurality opinion). This general tenet-that "death is different" -carries through to habeas corpus proceedings. See, e.g., Strickland v. Washington, 466 U.S. 668, 704 (1984) (Brennan, J., concurring in part and dissenting in part) (observing in habeas proceeding pursuant to 28 U.S.C. § 2254 that "we have consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding").

> Ford v. Wainright, 477 U.S. 399, 411 (1986) (opinion of
> Marshall, Brennan, Blackmun, and Stevens, JJ.) (noting
> that factfinding in a capital proceeding requires a
> "heightened standard of reliability" as "a natural
> consequence of the knowledge that execution is the
> most irremediable and unfathomable of penalties; that
> death is different".)

Even with the "death is different" standard, and the standard of "heightened reliability" nothing can protect against the deliberate, intentional, knowing and willful disregard of the safeguards put in place to protect against wrongful conviction. As noted in the evidence presented by Fields in his § 2241 " the heightened standard of reliability " that Courts have insisted on when it comes to factfinding doesn't exist, the governments reliance on unquestionably " false facts " (i.e., There was no fingerprints) (The existence of undisclosed photograps is conjecture) ( Fields became angry and/or Irate when he came into contact with the victim ) ( Scroggins and Outley was in a BLUE Jaguar ) ( There was no blood found in the Grand Am because the car "looked wiped down") proves

22

that just because laws are set with safeguards to protect the innocent, it doesn't mean that police, prosecutors, "experts", and some Courts will abide by it, thus making the Death Penalty Unconstitutional.

As for the AEDPA, Congress enacted the Act in violation of the United States Constitution. ( See § 2241 pgs. 36-39 ). Any law that abridge the rights of the people and violate the Constitution cannot stand. See Marbury v. Madison 5 U.S. 137, 1 Cranch 137, 176, 2 L.Ed 60 (1803). The facts here in Fields, as well as the cases that have received posthumous pardons because they were found to be innocent "after the State murdered them", undoubtedly proves that the AFDPA allows for open ended criminal violation(s) against the people and abridge the rights of said people in violation of the United States Constitution. The AEDPA supports the reckless disregard for human life and do not purport with the "death is different" standard, nor do it square with our Fourteenth Amendment Jurisprudence. The AEDPA restrictions forces the Courts to disregard the violation(s) of the United States Constitution and Aid and Abet criminal homicide in violation of the United States Constitution, and thus abridge the rights of the people. No law can be passed by congress that victimize the innocent, yet that's exactly what the AEDPA do. No matter how meritorious a defendants issues are, the prosecution always apply the AEDPA when attempting to seal a defendants fate, even when that defendant is innocent, just as Fields is; Just as those that were posthumously pardoned was. The Courts can no longer allow this fundamentally flawed and Unconstitutional law continue to harm the people. Judge(s) are better suited to determine at "what stage" a case should be heard without being hampered by the AEDPA'S constricting restrictions. Congress' defiant and negligent decision to take the power out of the hands of Judge(s) have cause fundamental miscarriage(s) of Justice since its inception and is responsible for the death of the innocent. This Court do indeed have the right to strike down this arbitrary and Unconstitutional law; See Marbury v. Madison, Supra. Congress' attempt to put finality on the fast track have caused irrepairable harm to some and will continue to harm the American people unless this Court strike the law down now. Fields' case is unlike any other that have gone before him because Fields is Actually Innocent, and although Fields is harmed this Court have the right and the opportunity to stop wrong from continuing to go wrong, Fields' case proves that the AFDPA's restrictions and Congress's misguided need to kill is Unconstitutional...and illegal. Fields' case also proves that Congress's definition of the "extraordinary case" is Unconstitutionally vague and Unconstitutionally limiting. Considering the facts, this Court should strike down both the AEDPA and the Death penalty. No law enacted by an Act of Congress (AEDPA) can supersede, surpass, annul, eradicate, extinguish and/or annihilate a Judge(s) duty to Uphold the United States Constitution, as the AEDPA do, the prosecution is saying that even though when a defendant can prove that the government committed and/or suborned perjury, even when a defendant can prove that the government withheld

23

exculpatory and/or impeachment evidence in violation of Brady, even when a defendant makes a meritorious case that the trial Judge and an appellate Judge was effectively bias, even when a defendant can show that the prosecution joined in and/or aided and Abetted a criminal Conspiracy, even when the defendant can show that the prosecution solicited his murder via lethal injection, even when the defendant can show that the government defrauded the Courts, even when the defendant can show, as Fields clearly have that his conviction and Death Sentence was due to passion, prejudice and other arbitrary factors, the government wants the Judge to now ignore these very very serious and significant violations of the United States Constitution and allow them to continue on their path to committing criminal homicide; No "gatekeeping" functions should be allowed to force a Judge to abandon, discard and/or desert her duty to uphold the United States Constitution, yet that is what the prosecution is imploring this Court to do via a Law enacted by Congress that this case proves is Unconstitutional. For these reasons and the reasons set forth in Fields' § 2241 and under Marbury v. Madison; Supra, this Court should strike down the AEDPA and the Death penalty.

24

CONCLUSION

Fields have presented voluminous (physical documents) proving that the governments (word of mouth) case that was strung together by perjured testimony was meant to not only harm Fields at the highest degree, but to mislead and defraud the Court into aiding and abetting the Unconstitutional murder of Fields. The "evidence" presented by the government is false, the government always knew that it was false and they still know that it's false, yet they keep asking the Court to rely on this false "evidence" to sustain and allow the murder of Fields via lethal injection. There is no doubt that the jury DID NOT believe the inmate testimony presented by the government; There is no doubt that the prosecution suborned perjury; There is no doubt that the prosecution engaged in a criminal conspiracy to use false testimony to convict and murder Fields via lethal injection; There is no doubt that the government violated Section 201 (c)(2) of Title 18.by promising leniency to a witness in return for his testimony. In the United States v. Sonya Evette Singleton, 144 F.3d 1343 (1998) Singleton's conviction was reversed because the government promised a witness leniency to testify against her. However, on rehearing en banc, United States v. Sonya Evette Singleton, 165 F.3d 1297 (1999), Circuit Judge Porfilio held that " within the statute penalizing whoever gives, offers or promises anything of value for or because of his testimony, the word "whoever" does not include the United States acting as alter ego of the United States and offering an accomplice leniency in exchange for truthful testimony.

In Fields' case the key word isn't "whoever" like Singleton argued, but rather the operative word in Fields is "truthful". There is no doubt that perjury was the dominant factor in Fields' case. The governments promises and/or suggestions of leniency and time reductions in exchange for testimony that's undoubtedly false turned their witnesses into "paid 'occurence' witnesses ", and criminal "hitmen", thus employed by a fraudulent and deceptive sovereign, and testimony from those of such ilk is contrary to fundamental precepts of American Justice.

The government violated Napue v. Illinois, 360 U.S. 264, 269, 3L. Ed. 2d 1217, 79 S.Ct. 1173 (1959) and Giglio v. United States, 405, 150, 92 S.Ct. 763, 766, 31 L.Ed. 2d 104 (1972) by using and allowing the use of perjury.

The government violated Brady v. Maryland, 373, U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) and violated Fields' due process rights by withholding the forensic photo's; The prosecution violated Fields' Constitutional rights by Soliciting Fields murder via lethal injection; The government violated Pfizer Inc. v. Int.L Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976), cert. denied, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.

25

2d 751 (1977); Allen v. Chicago Transit Auth., <u>317 F.3d 696</u>, 703 (7th Cir. 2003); Thomas v. Gen. Motors Acceptance Corp., <u>288 F.3d 305</u>, 306-07 (7th Cir. 2000) by committing perjury in the course of legal proceedings and defrauding the Court(s); The government violated Sawyer v. Collins, 986 F.2d 1493, 1497 (5th Cir. 1993); citing Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed. 2d 1090 (1983) by violating their duty of honesty to the Court; The prosecution violated criminal Code 18 U.S.C. 371 Conspiracy; 18 U.S.C. 373(a) Solicitation of murder; 18 U.S.C. 1621 Perjury; 18 U.S.C. 1622 Suborning perjury; 18 U.S.C 4 Misprision of felony; Aiding and Abetting and Fraud on the Court all in violation of the laws of this Country and the United States Constitution.

The government violated Wedra v. Thomas, <u>671 F.2d 713</u>, 717 n.1 (2d 1982); Curran v. Delaware, 259 F.2d 707, 712-713 (3d Cir. 1958)(citing Pyle v. Kansas, 317 U.S. 213, 87 L.Ed  214, 63 S.Ct. 177 (1942) for using false and misleading testimony by law enforcement; The government violated Kyles v. Whitley, 514 U.S. 419, 435, 131 L.Ed. 2d 490, 115 S.Ct. 155 (1995) by violating Fields due process rights; Judge Walter Smith and Judge Edith Jones violated Withrow v. Larkin, 421 U.S. 35, 47 (1975); See Williams v. Pennsylvania, 579 U.S. ___, ___(2016) because they should have recused themselves knowing that being a "bias decisionmaker" in a Death Penalty case is Constitutionally intolerable; Judge Jones violated Fields' Civil rights by using his race as a determining factor in his guilt/innocence; The Death penalty is Unconstitutional in violation of Furman v. Georgia, (1972) 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 and Gregg v. Georgia, 428 U.S. 153, 49 L.Ed. 2d 859, 96 S.Ct. 2909 (1976) and it's companion cases; The AEDPA is Unconstitutional in violation of the United States Constitution and Marbury v. Madison, supra.

Fields respectfully asks this Court to vacate his conviction(s) and Death Sentence in order to "deter" any further illegal conduct; Protect the rights of American Citizens under the United States Constitution, and preserve the integrity of the Justice system. Also the facts of Fields' case warrants vacatur. Fields further asks that this Court strike down the Death penalty and the AEDPA as being Unconstitutional.

Respectfully submitted

Sherman Lamont Fields
#15651-180
USP Terre Haute
P.O. Box 33
Terre Haute, Indiana
47808

26



# REPORT OF INVESTIGATION

Page 1 of 1

| 1. CASE # (WIN) | 2. DATE(S) OF INVESTIGATION 11/07/01 | 3. REPORTED BY: CASSON, Christian J. 254-750-1570 |
|---|---|---|
| 4. CASE TITLE FIELDS, Sherman | | AT: W/TX - Waco |
| 5. OTHER PERSONNEL DUSM Quinn, MCSO Deputies | | |
| 6. TYPE OF REPORT | | |

On 11/07/01 at approximately 0230-0300 hours, DUSMs Casson and Quinn and MCSO Deputies went to 1034 Delano, Waco, TX, residence of Suncerey COLEMAN for the purpose of locating Sherman FIELDS. The residence was locked and repeated attempts to gain entry were futile. Neighbors were questioned with negative results.

DUSMs Casson and Quinn and MCSO Deputies then returned to the USMS Waco office to develop a new plan of action. All then (0300 hrs.) went to the residence of Alice Fields (2106 Lyle), mother of FIELDS. There, DUSMs determined phone call(s) were made to Ms. Fields from the *Hillcrest Baptist Medical Center* (Waco, TX). DUSMs and MCSO Deputies went to Hillcrest Hospital and determined Suncerey COLEMAN and her infant were listed in a special hospital room for neo-natal ICU children (#261).

Upon entering the room, DUSMs Casson and Quinn found a female, Tanesha HILLIARD, and the infant child of Coleman. Ms. HILLIARD admitted to being a Civigenics employee and having seen FIELDS two times (2x) the previous night at the hospital. Ms. HILLIARD indicated FIELDS initially made telephonic contact with COLEMAN at approximately 2000 hours and subsequently arrived at the hospital. The second encounter was at approximately 2200 hours. This was the last time HILLIARD saw COLEMAN with FIELDS. HILLIARD indicated FIELDS was driving a red/maroon Pontiac Grand-Am and had left with Coleman and they had gone to a local hotel.

DUSMs and MCSO Deputies then sent personnel to check for a matching vehicle at local hotels and left some

| 7. SIGNATURE | 8. DATE 1/30/02 | 11. DISTRIBUTION: File |
|---|---|---|
| 9. APPROVED (Name & Title) | 10. DATE 1-30-02 | |

FORM USM-11 (REV: 2/99)

THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE.
NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.


## CONTINUATION PAGE

| Case Title: | Case # (WIN): | Date(s) of Investigation: |
|---|---|---|
| FIELDS, Sherman | | 11/07/01 |

at the hospital to wait for Coleman to return to pick up her infant who was being discharged that morning.

DUSMs established surveillance on the hospital until approximately 1200 hours on 11/07/01.

*THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE.*
*NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.*



**U.S. Department of Justice**
United States Marshals Service

# REPORT OF INVESTIGATION

Page 1 of 1

| 1. CASE # (WIN) W-01-110M | 2. DATE(S) OF INVESTIGATION 12/11/01 | 3. REPORTED BY: CASSON, Christian J. 254-750-1570 |
|---|---|---|
| 4. CASE TITLE FIELDS, Sherman Lamont | | AT: W/TX - Waco |
| 5. OTHER PERSONNEL AUSA Gegg Gloff | | |
| 6. TYPE OF REPORT | | |

On 12/10/01, DUSM Casson and AUSA Gregg Gloff interviewed Tanesha Hilliard at the U.S. Attorney's Office, Waco, TX. The meeting was initiated by Ms. Hilliard and her mother, Ms. Bowers.

Ms. Hilliard stated the following:

- The night of the escape, after Fields came to Hillcrest Hospital to leave with Suncerey Coleman, Hilliard realized Coleman had her money; Hilliard subsequently "caught up with" Coleman and Fields to get money Coleman had that belonged to Hilliard
- Fields was wearing "cut-off" shorts, white t-shirt
- Fields first contacted Coleman at the hospital, via telephone, at 2000 hrs. (approximately)
- Fields asked Coleman to come downstairs where he was parked in front of the hospital
- Coleman was wearing black shorts, blue t-shirt, and red shoes
- Edward Outley provided Fields with a cell phone, clothing and a car
- 2-2.5 hrs. after the initial encounter, Fields came to the hospital room (261) and left with Coleman
- Hilliard admitted to making several telephone calls to Civigenics the night/early morning after the escape
- All but one phone call was made to "talk with friends"; the other was made anonymously inquiring as to whether or not Fields had escaped from the jail (all calls made after Fields had made contact with Hilliard)
- Fields told Hilliard he escaped from custody.

| 7. SIGNATURE | 8. DATE 12/11/01 | 11. DISTRIBUTION: |
|---|---|---|
| | | File |
| 9. APPROVED (Name & Title) | 10. DATE 12-12-01 | |

FORM USM-11 (REV: 2/99)

*THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE. NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 17th day of July, 2017, a copy of the foregoing Reply In Support Of Amended Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241 was served via the CM/ECF electronic filing system upon:

Gregory S. Gloff, United States Attorney
Western District of Texas
800 Franklin, Suite 280
Waco, TX  76701
Greg.Gloff@usdoj.gov

Joseph H. Gay, Jr., United States Attorney
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, TX  78216
Joseph.Gay@usdoj.gov

Jennifer Sheffield Freel, United States Attorney
Southern District of Indiana
816 Congress Avenue, Suite 1000
Austin, TX  78701
jennifer.freel@usdoj.gov

/s/ Jeffrey Ellis
Jeffrey Ellis