UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SHERMAN LAMONT FIELDS,<br>    Petitioner, | §<br>§<br>§ | |
| v. | §<br>§ | No. 2:16-CV-418-JMS-MJD |
| WARDEN, USP TERRE HAUTE,<br>    Respondent. | §<br>§<br>§ | |

## RESPONDENT'S SUPPLEMENTAL BRIEF ON *SESSIONS V. DIMAYA*

The Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), affects this case in two principal ways. First, the decision underscores that Sherman Fields is not entitled to pursue his claim for post-conviction relief under 28 U.S.C. § 2241 because he is pressing a constitutional claim that the savings clause in 28 U.S.C. § 2255(e) does not allow. This ground for dismissal offers a straightforward path to dispose of Fields's petition without wading into the merits of his claim. Second, if this Court were to reach the merits, *Dimaya* would affect how it analyzes Fields's convictions under 18 U.S.C. § 924(c) for using and carrying a firearm during his escape. (*Dimaya* does not implicate Fields's conviction under § 924(c) for using and carrying a firearm during carjacking.) In particular, this Court would assess whether Fields's specific escape, as opposed to escape generally, qualifies as a crime of violence. Under this case-specific approach, Fields's escape still qualifies, so his convictions for using and carrying a firearm during his escape are still valid.

### Argument

As previous briefing in this case has discussed, 18 U.S.C. § 924(c) makes it a federal crime to use or carry a firearm during and in relation to a crime of violence or to possess a firearm in furtherance of a crime of violence. Three of Fields's counts of conviction are under § 924(c):

- Count Three, for using and carrying a firearm during and in relation to escape from federal custody, a crime of violence, resulting in intentional murder;

- Count Five, for using and carrying a firearm during and in relation to carjacking, a crime of violence; and

- Count Seven, for using and carrying a firearm (different from the one he used to commit murder) during and in relation to escape from federal custody.

*See United States v. Fields*, 483 F.3d 313, 324 (5th Cir. 2007).

Fields has argued that his convictions under § 924(c) are invalid because carjacking and escape are not "crimes of violence." A "crime of violence" is a federal offense that is a felony and meets either of two alternative definitions. Under § 924(c)(3)(A), an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." And under § 924(c)(3)(B), an offense is a crime of violence if it, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

The definition of crime of violence in § 924(c)(3)(B) is nearly identical to the definition of crime of violence in a different statute, 18 U.S.C. § 16(b). In *Dimaya*, the Supreme Court held that § 16(b) is unconstitutionally vague. 138 S. Ct. at 1210. The Court explained that § 16(b) shared two features with a part of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), that it had previously invalidated as vague. *See Dimaya*, 138 S. Ct. at 1213-16; *Johnson v. United States*, 135 S. Ct. 2551, 2557-58 (2015). First, § 16(b) used a "categorical approach" by "call[ing] for a court to identify a crime's 'ordinary case' in order to measure the crime's risk." *Dimaya*, 138 S. Ct. at 1215. Second, § 16(b) measured this idealized "ordinary case" against a "substantial risk" standard that, when combined with the

Respondent's Supplemental Brief on *Sessions v. Dimaya*                                    2

"categorical approach," left "uncertainty about the level of risk that makes a crime 'violent.'" *Id.*

Because of the similarities between § 16(b) and § 924(c)(3)(B), this Court directed the parties to brief the effect of *Dimaya* on this case. Briefly put, *Dimaya* changes some aspects of the analysis but not the ultimate result: Fields's petition should be dismissed with prejudice or, barring that, denied on the merits.

## I. The Supreme Court's decision in *Dimaya* underscores the impropriety of Fields's post-conviction petition under 28 U.S.C. § 2241.

Fields's supplemental briefing does not address at all a threshold obstacle to considering his petition under § 2241. As this Court has recently reiterated, "[a] motion pursuant to 28 U.S.C. § 2255" — not a habeas petition under § 2241 — "is the presumptive means by which a federal prisoner can collaterally challenge his conviction or sentence." *Cano v. Warden USP-Terre Haute*, No. 2:17cv441-JMS-MJD, 2018 WL 3389746, at *2 (S.D. Ind. July 12, 2018), *appeal docketed*, No. 18-2722 (7th Cir. Aug. 8, 2018); *see also Camacho v. English*, 872 F.3d 811, 813 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 2028 (2018). A habeas petition under § 2241 "shall not be entertained" unless a motion under § 2255 "is inadequate or ineffective to test the legality of [a prisoner's] detention." 28 U.S.C. § 2255(e). This exception for situations in which § 2255 is inadequate or ineffective is often called the "savings clause." *Camacho*, 872 F.3d at 813.[1]

As the petitioner, Fields bears the burden of "affirmatively showing the inadequacy or ineffectiveness of the § 2255 remedy." *Cano*, 2018 WL 3389746, at *2 (internal quotation marks omitted); *accord Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001). When a petitioner fails to carry this burden, the savings clause does not apply, and a petition under § 2241 must be dismissed with prejudice. *Prevatte v.*

---

[1] Some courts use the term "saving clause" instead. *See McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1081-82 (11th Cir.) (en banc), *cert. denied*, 138 S. Ct. 502 (2017).

*Merlak*, 865 F.3d 894, 900-01 (7th Cir. 2017). The Supreme Court's decision in *Dimaya* and Fields's analysis of it underscore why § 2255(e)'s savings clause does not permit him to pursue a petition under § 2241.[2]

> **A.   Under the Seventh Circuit's view of the savings clause, *Dimaya* does not change Fields's ineligibility to pursue a § 2241 petition.**

In its motion to dismiss, the government laid out the Seventh Circuit's test, first developed in *In re Davenport*, 147 F.3d 605, 608-12 (7th Cir. 1998), for determining whether § 2255 is so inadequate or ineffective as to trigger the savings clause. *See* Return, Mot. To Dismiss & Mot. To Stay 7-9, ECF No. 21. A showing that § 2255 is ineffective or inadequate "generally requires a structural problem in § 2255 that forecloses even one round of effective collateral review, unrelated to the petitioner's own mistakes." *Camacho*, 872 F.3d at 813. A petitioner must demonstrate three things:

> (1) that he relies on not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion;
>
> (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding; and
>
> (3) that the error is grave enough . . . to be deemed a miscarriage of justice . . . such as one resulting in a conviction for a crime of which he was innocent.

*Id.* (brackets in *Camacho*, internal quotation marks omitted).

---

[2] In arguing that he could invoke the savings clause, Fields has previously "featured" this Court's one-page entry directing further briefing on a different inmate's petition under § 2241. *See, e.g.*, Fields Reply 2-5, ECF No. 25 (citing Entry Directing Further Proceedings, *Robinson v. LaRiva*, No. 2:15cv322 (S.D. Ind. Dec. 28, 2016), ECF No. 22). This Court has since concluded that Robinson, the petitioner in that case, may not invoke the savings clause and has dismissed his habeas petition with prejudice. *See* Entry Denying Petition for Writ of Habeas Corpus 5-6, *Robinson v. LaRiva*, No. 2:15cv322 (S.D. Ind. June 25, 2018), ECF No. 40.

The government has already pointed out that Fields fails to meet the first requirement because he relies on a constitutional case rather than a statutory-interpretation case. *See* Return, Mot. To Dismiss & Mot. To Stay 10 (ECF No. 21). Fields's reliance on *Dimaya* highlights that failure. *Dimaya* invalidated § 16(b) based on *Johnson*. *See Dimaya*, 138 S. Ct. at 1213-16, 1223. And the rule announced in *Johnson* was a constitutional one. *See Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016).

This distinction between constitutional cases and statutory-interpretation cases is important because § 2255 has provisions designed to address new constitutional holdings, and thus cannot be deemed inadequate to address them. *See Poe v. LaRiva*, 834 F.3d 770, 773 (7th Cir. 2016). Under § 2255, even an inmate who has previously filed a post-conviction motion may present claims based on new, retroactive, constitutional rules. *See* § 2255(h)(2). In contrast, § 2255 does not allow successive motions raising new rules of statutory interpretation. *Poe*, 834 F.3d at 773. The Seventh Circuit in *Davenport* found § 2255 inadequate to address the "small class of situations" involving new statutory holdings because it thought Congress "may have overlooked" the absence of a provision in § 2255 to address such holdings. *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *see also Poe*, 834 F.3d at 773.

Fields's claim is not implicated by the perceived oversight identified in *Davenport*. Indeed, he *already* had an opportunity to present his constitutional challenge to § 924(c)(3)(B) to the Fifth Circuit, which rejected it. *See In re Fields*, 826 F.3d 785 (5th Cir. 2016) (per curiam). Fields's argument that the Fifth Circuit did not reach the merits of his claim, *see* Reply 4, ECF No. 25, misstates the nature of appellate-court review. An appellate court addressing a potential successive § 2255 motion looks for "a sufficient showing of *possible merit*." *Reyes-Requeña v. United States*, 243 F.3d 893, 898-99 (5th Cir. 2001) (quoting *Bennett v. United*

Respondent's Supplemental Brief on *Sessions v. Dimaya*                                    5

*States*, 119 F.3d 468, 469 (7th Cir. 1997)) (emphasis added). Thus, in rejecting Fields's bid to file a successive § 2255 motion, the Fifth Circuit necessarily found his claim without merit. Fields's contention that the Fifth Circuit erred in doing so, *see* Reply 4-5 & n.3, ECF No. 25, is beside the point. "[A] claim of error in addressing the sort of constitutional theory that has long been appropriate for collateral review does not render § 2255 inadequate or ineffective." *Taylor*, 314 F.3d at 835.

Not only has § 2255 already afforded Fields the opportunity to present his constitutional argument about the validity of § 924(c)(3)(B), but he may have another opportunity if the Supreme Court ultimately addresses that question. As noted above, § 2255 allows post-conviction motions that rely on new, retroactive, constitutional rules. *See* § 2255(h)(2). Although no such rule currently invalidates § 924(c)(3)(B), "[i]f § 924(c)(3)(B) is ultimately held to be unconstitutional, that finding may open the door to future collateral challenges to sentences rendered under that statute." *United States v. Williams*, No. 16-20815, 2018 WL 3621979, at *2 (5th Cir. July 30, 2018). Accordingly, Fields has not identified the sort of "structural problem" in § 2255 that the Seventh Circuit has considered necessary to trigger the savings clause.

Fields also fails to meet the Seventh Circuit's third requirement for resort to the savings clause, that the error be so "grave" as "to be deemed a miscarriage of justice . . . such as one resulting in a conviction for a crime of which he was innocent," *Camacho*, 872 F.3d at 813 (internal quotation marks omitted). At best, Fields has a claim that a jury, rather than a judge, should have decided that his escape was a crime of violence. *See infra* pp. 11-25. That sort of claim does not trigger the savings clause. *See Prevatte*, 865 F.3d at 899-900 (finding no miscarriage of justice where the evidence overwhelmingly supported the a finding that should have been made by a jury rather than a court). For this additional reason, Fields cannot meet the Seventh Circuit's requirements for resorting to the savings clause.

## B.   A post-conviction petition under § 2241 is unavailable under the government's view of the savings clause as well.

A petition under § 2241 is unavailable to Fields not just under the Seventh Circuit's test, but also under the government's view of the savings clause. The government recognizes that this Court is bound by Seventh Circuit precedent but presents for preservation its view. In the government's view, the savings clause does not permit a habeas petition under § 2241 simply because a post-conviction claim would not have been *successful* if presented in a motion under § 2255. Rather, to use the savings clause, a petitioner must show that his claim would not have been *cognizable* if presented in a motion under § 2255. *See McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1085-1100 (11th Cir.) (en banc), *cert. denied*, 138 S. Ct. 502 (2017); *Prost v. Anderson*, 636 F.3d 578, 582-98 (10th Cir. 2011) (Gorsuch, J.); *see also Camacho*, 872 F.3d at 815 (Easterbrook, J., concurring); *Webster v. Daniels*, 784 F.3d 1123, 1152-54 (7th Cir. 2015) (en banc) (Easterbrook, J., concurring); *Brown v. Caraway*, 719 F.3d 583, 596-601 (7th Cir. 2013) (statement of Easterbrook, C.J., concerning Rule 40 circulation).[3]

The text of the savings clause requires this interpretation. *See McCarthan*, 851 F.3d at 1085-90; *Prost*, 636 F.3d at 584-85. The text juxtaposes the terms "inadequate or ineffective" with the phrase "to test the legality of [a prisoner's] detention." § 2255(e). "'To test' means 'to try,'" and "[t]he opportunity to test or try a claim . . . neither guarantees any relief nor requires any particular probability of success; it guarantees access to a procedure." *McCarthan*, 851 F.3d at 1086. This

---

[3] The government's current view is a return to its original understanding of the savings clause. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limited the availability of successive motions under § 2255 to cases involving new evidence or new, retroactive rules of constitutional law. *See* 28 U.S.C. § 2255(h). Inmates presenting successive requests for post-conviction relief based on new statutory decisions then sought to use § 2241. The government argued that § 2241 was not available in that circumstance, but relented after several circuits took a different stance in cases like *Davenport*, 147 F.3d at 608-12. Following the Eleventh Circuit's en banc ruling in *McCarthan*, 851 F.3d 1076, the government revisited the issue and reverted to its original understanding.

juxtaposition therefore indicates that the clause "is concerned with process — ensuring the petitioner an *opportunity* to bring his argument" and "guarantee[s] nothing about what the *opportunity* promised will ultimately yield in terms of relief." *Prost*, 636 F.3d 578; *see also Brown*, 719 F.3d at 597 (statement of Easterbrook, J.).

The surrounding statutory context further supports this reading. Provisions surrounding the savings clause limit bids for post-conviction relief. *See, e.g.*, § 2255(f)(3) (setting time limits); § 2255(h) (restricting availability of second and successive motions). Allowing an inmate to use § 2241 to circumvent those provisions would undercut them entirely. *See McCarthan*, 851 F.3d at 1090-92; *Prost*, 636 F.3d at 585-87; *Brown*, 719 F.3d at 599 (statement of Easterbrook, J.); *Taylor*, 314 F.3d at 835. Section 2255 also channels post-conviction challenges to courts of conviction to avoid overburdening courts (like this one) that happen to be located in areas with federal prisons. *See Prost*, 636 F.3d at 587-88; *Davenport*, 147 F.3d at 608-09. An expansive view of when prisoners may pursue post-conviction claims under § 2241, which must be filed in the district of incarceration, disrupts that system. *See McCarthan*, 851 F.3d at 1092.

This view of the savings clause does not render it meaningless. The savings clause still allows challenges to how the Bureau of Prisons carries out a sentence (for instance, through calculation of good-time credits). *See McCarthan*, 851 F.3d at 1092-93. The savings clause also still applies when a prisoner cannot file a § 2255 motion in the court of conviction because the court no longer exists. *See Prost*, 636 F.3d at 588. Confining the savings clause to these situations raises no constitutional concerns. *See McCarthan*, 851 F.3d at 1094-95; *Morales v. Bezy*, 499 F.3d 668, 670 (7th Cir. 2007) (calling concern that the savings clause was necessary to make § 2255 compatible with the Suspension Clause "misplaced").

Respondent's Supplemental Brief on *Sessions v. Dimaya* 8

Properly construed, therefore, the savings clause does not permit a § 2241 petition unless the inmate's claim would not have been cognizable in a proper motion under § 2255. Fields cannot meet this standard. Whether or not his constitutional argument about § 924(c)(3)(B) would have been successful, a court certainly could have addressed that argument had Fields presented it in a timely motion under § 2255. Section 2241 is therefore unavailable to him.

## II.   The Supreme Court's decision in *Dimaya* does not entitle Fields to invalidation of his convictions under 18 U.S.C. § 924(c).

If this Court reaches the merits of Fields's petition, then it must address whether *Dimaya* implicates Fields's convictions under § 924(c). *Dimaya* is irrelevant to Fields's § 924(c) conviction for using and carrying a firearm during *carjacking*. Federal carjacking has as an element the use, attempted use, or threatened use of force, and is therefore a crime of violence under § 924(c)(3)(A), a clause wholly unaffected by *Dimaya*. *Dimaya* does require a new, case-specific approach to Fields's convictions for using and carrying firearms during his *escape*, which depend on the definition of crime of violence in § 924(c)(3)(B). Nevertheless, under that case-specific approach, Fields's convictions for using and carrying a firearm during his escape remain valid.

### A.   *Dimaya* is irrelevant to Fields's conviction for using and carrying a firearm during carjacking.

*Dimaya* did not affect § 924(c)(3)(A), which makes an offense a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Nor did *Dimaya* affect the propriety of a categorical approach to determining what constitutes a crime of violence under § 924(c)(3)(A). In *Dimaya*, it was the overlay of two features of § 16(b) — the categorical approach *and* the substantial-risk standard — that rendered the provision unconstitutionally vague. 138 S. Ct. at 1213-16. Section 924(c)(3)(A) does not look to substantial risk, but to the "element[s]" of an offense,

Respondent's Supplemental Brief on *Sessions v. Dimaya*                                    9

and those elements are always necessarily the same for any given statute of conviction. Accordingly, even those circuits that have found § 924(c)(3)(B) unconstitutionally vague have held that § 924(c)(3)(A) remains viable and requires a categorical approach. *See, e.g., United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016).

Fields's carjacking offense qualified as a crime of violence under § 924(c)(3)(A) because the federal carjacking statute, 18 U.S.C. § 2119, has as an element the use, attempted use, or threatened use of physical force against the person or property of another. Section 2119 provides that a person commits carjacking when, "with the intent to cause death or serious bodily harm," he takes a motor vehicle "by force and violence or by intimidation." Every circuit to address the issue (including the Fifth Circuit, whose precedent controls Fields's petition, *see Cano*, 2018 WL 3389746, at *3) has held that a threat of violent force is inherent in the term "intimidation." *See United States v. Kundo*, No. 16-4128, 2018 WL 3613211, at *2-3 (10th Cir. July 27, 2018); *United States v. Gutierrez*, 876 F.3d 1254, 1255 (9th Cir. 2017) (per curiam), *cert. denied*, 138 S. Ct. 1602 (2018); *United States v. Jones*, 854 F.3d 737, 740-41 (5th Cir.), *cert. denied*, 138 S. Ct. 242 (2017); *United States v. Evans*, 848 F.3d 242, 244 (4th Cir.), *cert. denied*, 137 S. Ct. 2253 (2017). Accordingly, federal carjacking is categorically a crime of violence under § 924(c)(3)(A), and Fields's conviction for using and carrying a firearm during a carjacking must stand.[4]

---

[4] Fields's supplemental briefing refers back to his previous argument that because a defendant can commit carjacking by intimidation, the Seventh Circuit might hold that it is not categorically a crime of violence under § 924(c)(3)(A). *See* Pet'r Suppl. Br. 3 n.1, ECF No. 42 (referring to Am. Pet. 11, ECF No. 16). After Fields made that argument, the Seventh Circuit addressed a federal bank-robbery statute with a reference to intimidation identical to that in the carjacking statute. *See United States v. Williams*, 864 F.3d 826 (7th Cir.), *cert. denied*, 138 S. Ct. 272 (2017). The Seventh Circuit held that "[t]he explicit or implicit threat of violent force is inherent in the intimidation element" and that federal bank robbery is therefore a crime of violence under § 924(c)(3)(A). *Williams*, 864 F.3d at 830. Thus, the Seventh Circuit would likely hold that carjacking is a crime of violence under § 924(c)(3)(A) as well.

### B. *Dimaya* does not require invalidating Fields's convictions for using and carrying firearms during his escape.

As noted above, the Supreme Court in *Dimaya* invalidated § 16(b) based on the overlay of two features: a "categorical approach" and a "substantial risk" standard. *Dimaya*, 138 S. Ct. at 1213-16. The Court emphasized, however, that a substantial-risk standard would raise constitutional concerns only when combined with a categorical approach. *Id.* at 1215-16. Indeed, the Court explicitly rejected the view that basing a definition on "substantial risk" would be "alone problematic." *Id.* at 1215. And the Court "'d[id] not doubt' the constitutionality of applying" a "substantial risk [standard] to real-world conduct." *Id.* (quoting *Johnson*, 135 S. Ct. at 2561).

Applying a substantial-risk standard to real-world conduct, rather than an imaginary "ordinary case," therefore represents a way, consistent with *Dimaya*, to construe § 924(c)(3)(B) so as to save the statute, as courts are "obligated" to do whenever "fairly possible," *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001). A conduct-based approach to § 924(c)(3)(B) is not just fairly possible, but makes particular sense for a statute that employs the term "crime of violence" exclusively to describe conduct with which a defendant is *presently* charged. Under this conduct-based, case-specific approach, Fields's convictions are still valid.

### 1. Section 924(c)(3)(B) requires a case-specific approach.

The focus in § 924(c) on *present* offense conduct, rather than *prior* convictions, makes it fundamentally different from statutes like those addressed in *Dimaya* and *Johnson*. The statutes at issue in *Dimaya* and *Johnson* required a classification of prior convictions based on specific facts about those convictions that may or may not have been available years later. In contrast, a conviction under § 924(c) requires a jury to find, or the defendant to admit in a plea, (1) that the defendant "committed all the acts necessary to be subject to punishment for" a federal offense qualifying as a "crime of violence" and (2) that the commission of that offense had a sufficient

Respondent's Supplemental Brief on *Sessions v. Dimaya*                                       11

nexus to use, carrying, or possession of a firearm. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). A prosecution under § 924(c), therefore, will necessarily involve a "developed factual record" about the crime of violence. *United States v. St. Hubert*, 883 F.3d 1319, 1335 (11th Cir. 2018). And a jury in a § 924(c) prosecution can apply the definition of "crime of violence" in a case-specific manner that that considers the particular conduct proved at trial. Construing § 924(c) to require this case-specific approach "makes good sense," *id.* at 1334, and is consistent with the statute's text and context.

### a. The text of § 924(c)(3)(B) calls for a case-specific approach.

An offense is a crime of violence under § 924(c)(3)(B) if it, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." That language comports with a case-specific approach that relies on the conduct at issue in a particular prosecution.

As the Supreme Court recognized in *Nijhawan v. Holder*, 557 U.S. 29, 33-34 (2009), "in ordinary speech words such as 'crime,' 'felony,' 'offense,' and the like . . . sometimes refer to the specific acts in which an offender engaged on a specific occasion." Accordingly, the Court interpreted a provision that used the term "offense" to "call[] for a circumstance-specific,' not a 'categorical,' interpretation." *Id.* at 36 (construing 8 U.S.C. § 1101(a)(43)(M)(i)). Likewise, the Court has construed a reference to "an offense . . . committed by a current or former spouse" as contemplating a factual, rather than categorical, inquiry. *United States v. Hayes*, 555 U.S. 415, 421-29 (2009) (construing 18 U.S.C. § 921(a)(33)(A)). This reference, the Court later explained, was exactly the sort of language Congress would employ as an instruction "to look into the facts" of a crime. *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016). The reference in § 924(c)(3)(B) to "committing the offense" can thus reasona-

bly be understood to refer to the specific criminal conduct at issue in a prosecution under § 924(c). *See also Johnson*, 135 S. Ct. at 2562 (reiterating contrast between reference to "conviction" for offense and "committ[ing] an offense").

Section 924(c)(3)(B) also uses the term "involves." In other provisions of the enactment that contained the original "crime of violence" definition for § 924(c), Congress repeatedly used the term "involves" to direct courts to consider a defendant's underlying conduct. *See* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837.[5] Although the rule is not invariable, it is a basic canon of statutory construction that "'identical words used in different parts of the same statute' carry 'the same meaning.'" *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)). That inference of common meaning is particularly strong when Congress enacted the same words in the same statute at the same time. *See, e.g., Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 570-71 (2012). And application of that canon makes particular sense in this context because the Supreme Court has previously relied on the *absence* of the word "involves" as indicating that a categorical approach is required. *See Taylor v. United States*, 495 U.S. 575, 600 (1990).[6]

A jury can readily determine whether a defendant's underlying offense "by its nature, involves" a substantial risk of the use of physical force without needing to

---

[5] *See, e.g., id.* § 4243, 98 Stat. at 2059 (elevating the burden of proof for the release of "a person found not guilty only by reason of insanity of an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage"); *id.* § 502, 98 Stat. at 2068 (establishing the sentence for drug offenses "involving" specific quantities and types of drugs); *id.* § 1952B, 98 Stat. at 2137 (defining violent crimes in aid of racketeering to include "attempting or conspiring to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury").

[6] The plurality opinion in *Dimaya* noted that ACCA's residual clause and § 16(b) also use the word "involves." *See* 138 S. Ct. at 1216-17. But the Supreme Court has never explicitly focused on that term in applying a categorical approach to that clause, and *Taylor*'s discussion of the term's implications remains sound even if other factors may sometimes override those implications.

Respondent's Supplemental Brief on *Sessions v. Dimaya*                              13

consider what the "ordinary case" of that offense might be. The term "nature" refers to "the basic or inherent features, character, or qualities of something." Oxford Dictionary of English 1183 (3d ed. 2010). That "something" can be the defendant's own crime, rather than a stylized "ordinary case," the borders of which are uncertain. Congress has, for example, instructed sentencing courts to consider "the *nature* and circumstances of the offense" — naturally understood as the defendant's own conduct — in determining the appropriate sentence in a federal criminal case. 18 U.S.C. § 3553(a)(1); *see also Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 242-43 (1957) (describing "the nature of the offense" of a bar applicant as "recruiting persons to go overseas to aid the Loyalists in the Spanish Civil War"); *Dimaya*, 138 S. Ct. at 1254 n.7 (Thomas, J., dissenting) (collecting other examples). Similarly, in § 924(c)(3)(B), the phrase "by its nature" can reasonably be read to "mean only that an offender who engages in risky conduct cannot benefit from the fortuitous fact that physical force was not actually used during his offense." *Dimaya*, 138 S. Ct. at 1254 (Thomas, J., dissenting).

The direction to assess "substantial risk" is also consistent with a case-specific approach. The customary way to apply a "qualitative standard such as 'substantial risk'" is by looking to "real-world conduct," not hypothetical legal constructs. *Johnson*, 135 S. Ct. at 2561. "[D]ozens of federal and state criminal laws" use such terms, and "almost all" of them "require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*." *Id.* (emphasis added). A categorical approach is therefore an anomaly, not the norm. In contrast, a "substantial risk" inquiry can readily be understood as a mixed question of law and fact of the sort juries routinely determine. *See United States v. Gaudin*, 515 U.S. 506, 509-10 (1995).

### b. The statutory context of § 924(c)(3)(B) supports a case-specific approach.

The position and function of § 924(c)(3)(B) within the larger statute provide additional support for a case-specific approach that goes beyond the legal definition of an offense. Section 924(c)(3)(B) operates in tandem with § 924(c)(3)(A), under which an offense qualifies as a crime of violence based on its elements. By focusing solely on the elements of a crime, § 924(c)(3)(A) requires analysis of a crime's statutory definition by a court, rather than consideration by a jury of the specific means by which the defendant committed the crime. *See Jones*, 854 F.3d at 740; *Evans*, 848 F.3d at 245-46; *Cardena*, 842 F.3d at 996. Section 924(c)(3)(B), however, must cover offenses other than those already covered by § 924(c)(3)(A). *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining the "basic interpretive canon[]" that different provisions of a statute should be interpreted to mean different things). Because § 924(c)(3)(A) already covers all offenses that have the legal element of physical force, § 924(c)(3)(B) naturally invites a separate inquiry that goes beyond the four corners of an offense's legal definition. Under this structure, some federal crimes — those with certain elements — are always "crimes of violence," and hence not subject to jury factfinding. Other crimes are sometimes "crimes of violence," and in those cases the jury must make a finding about the defendant's particular conduct.

### c. The reasons given in prior cases for applying a categorical approach to other statutes do not require that approach for § 924(c)(3)(B).

Although the Supreme Court has required a categorical approach only in the context of statutes that are applied to classify prior convictions, those reasons do not extend to § 924(c)(3)(B), which applies only to the conduct giving rise to a current prosecution. The Supreme Court first endorsed a categorical approach in *Taylor v. United States*, 495 U.S. 575 (1990), for reasons largely specific to ACCA's focus on prior convictions and without direct analog in § 924(c)(3)(B). At the "heart

of the decision" in *Taylor* was a limit on the amount of evidence about the circumstances underlying prior convictions that the parties might be able to introduce at sentencing. *Shepard v. United States*, 544 U.S. 13, 23 (2005); *Taylor*, 495 U.S. at 601 (explaining why "the practical difficulties and potential unfairness of a factual approach are daunting" when attempting to categorize prior convictions in other courts). Prior convictions that might trigger an enhanced sentence under ACCA "are often adjudicated by different courts in proceedings that occurred long before the defendant's sentencing." *United States v. Robinson*, 844 F.3d 137, 142 (3d Cir. 2016); *see, e.g., Taylor*, 495 U.S. at 578 & n.1 (addressing, in 1990, state burglary convictions from 1963 and 1971). When a statute looks to prior convictions, a categorical approach serves the "practical purpose[]" of "promot[ing] judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." *Moncrieffe v. Holder*, 569 U.S. 184, 200-01 (2013) (internal quotation marks and citations omitted); *see also Dimaya*, 138 S. Ct. at 1218 (plurality opinion) (focusing on the "utter impracticability" and "associated inequities" of a fact-based approach to categorizing prior convictions).[7]

As cases following *Taylor* explained, a categorical approach to assessing prior convictions also answers Sixth Amendment concerns. A judge's resolution of disputed facts underlying a prior conviction would be "too much like" the sort of factfinding the Sixth Amendment requires juries to conduct before a defendant may be eligible for a longer maximum sentence. *Shepard*, 544 U.S. at 25 (plurality opinion) (referring to *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Construing sentence-enhancement provisions to require a categorical approach, rather than factfinding about prior convictions, avoided these constitutional concerns. *Id.*

---

[7] The Court in *Taylor* also rested its selection of a categorical approach on ACCA's "refer[ence] to 'a person who . . . has three previous *convictions*' for — not a person who has committed — three previous violent felonies or drug offenses." 495 U.S. at 600 (quoting 18 U.S.C. § 924(e)). That language is absent from § 924(c)(3)(B).

For these practical and constitutional reasons, "[t]he categorical approach serves a purpose when evaluating prior state convictions committed long ago in fifty state jurisdictions" — as well as federal and military jurisdictions — "with divergent laws." *St. Hubert*, 883 F.3d at 1336. But the categorical approach does not serve that purpose in prosecutions under § 924(c)(3)(B), where a jury has the factual record of the underlying offense before it and must determine whether the defendant committed that offense before determining whether the defendant's use, carrying, or possession of a gun violated § 924(c). *See Robinson*, 844 F.3d at 143. Nor is a categorical approach necessary to resolve any Sixth Amendment concerns with prosecutions under § 924(c). Under a context-specific approach to § 924(c)(3)(B), a jury would find (or a defendant would admit) that the conduct charged was a crime of violence. And that finding (or admission) would satisfy the Sixth Amendment. *See Apprendi*, 530 U.S. at 490; *Robinson*, 844 F.3d at 143.[8]

### d.    Principles of constitutional avoidance support construing § 924(c)(3)(B) to require a case-specific approach.

The principle that a court should construe a statute to avoid constitutional concerns also counsels in favor of a case-specific approach to § 924(c)(3)(B). A court is obligated to construe a statute to avoid constitutional problems if it is "fairly possible" to do so. *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018); *St. Cyr*, 533 U.S. at 299-300. That obligation requires courts to adopt a reasonable limiting construction of a statute that otherwise would be void for vagueness. *See United States ex rel. Att'y Gen. v. Del. & Hudson Co.*, 213 U.S. 366, 407 (1909); *cf. Clark v. Martinez*, 543 U.S. 371, 381 (2005) (explaining that the constitutional-avoidance cannon "is a tool for choosing between competing plausible interpretations of a

---

[8] Fields argues that the Supreme Court's assessment of § 16(b) in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), dictates a categorical approach to § 924(c)(3)(B). *See* Pet'r Suppl. Br. 12, ECF No. 42. In *Dimaya*, however, the Court "largely overrule[d]" *Leocal*'s analysis of § 16(b). *See Dimaya*, 138 S. Ct. at 1258 (Thomas, J., dissenting).

statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts"). A court should not, therefore, lightly conclude that Congress intended § 924(c)(3)(B) to be applied in a manner that would render the statute unconstitutionally vague. Instead, the better interpretation is that § 924(c)(3)(B) permits a jury to consider the defendant's real-world conduct in determining whether that conduct created a substantial risk that physical force would be used.

> **e.   Neither *Dimaya* nor circuit precedent requires a categorical approach to whether an offense is a crime of violence under § 924(c)(3)(B).**

Fields argues that § 924(c)(3)(B) must require a categorical approach because § 16(b) does. *See* Pet'r Suppl. Br. 5, ECF No. 42. But the Supreme Court did not hold in *Dimaya* that language like that in § 16(b) invariably mandates a categorical approach under which a court must disregard real-world conduct in favor of attempting to identify the "ordinary case" of a particular crime. Although a plurality of the Court viewed § 16(b), which is usually applied to classify prior convictions in unrelated proceedings, as "[b]est read" to require a categorical approach, the plurality also observed that the government had not argued otherwise. 138 S. Ct. 1216-18 (plurality opinion). Justice Gorsuch, concurring in part and concurring in the judgment, similarly stressed that the government had conceded in *Dimaya* that a categorical approach applied to § 16(b). *Id.* at 1232-33 (opinion of Gorsuch, J.). He expressed his willingness to consider "in another case" whether "precedent and the proper reading of language" in fact requires a categorical approach. *Id.* In dissent, the Chief Justice explained that § 16(b) was constitutional even under a categorical approach, and thus had no need to address whether the statute required that

Respondent's Supplemental Brief on *Sessions v. Dimaya*                    18

approach. *Id.* at 1234 (opinion of Roberts, C.J.).[9] And Justice Thomas, joined by Justices Kennedy and Alito, filed a dissenting opinion urging the Court to "abandon" the categorical approach to § 16(b). *Id.* at 1252 (opinion of Thomas, J.). Because *Dimaya* did not include any holding by a majority of the Court that § 16(b) requires a categorical approach, it leaves open a non-categorical approach for § 924(c)(3)(B) as well.

A non-categorical approach is also open under relevant circuit precedent. Courts considering petitions under § 2241 apply the law of the circuit of conviction—here, the Fifth Circuit. *See Cano*, 2018 WL 3389746, at *3; *Salazar v. Sherrod*, No. 09cv619, 2012 WL 3779075, at *4-5 (S.D. Ill. Aug. 31, 2012) (collecting cases). As the Fifth Circuit has recognized, the Supreme Court has instructed circuit courts to reconsider their approaches to § 924(c)(3)(B) in light of *Dimaya*, and "that instruction does not amount to a determination that the provision is unconstitutional." *Williams*, 2018 WL 3621979, at *2 (citing the Supreme Court's instructions to the Seventh Circuit to reconsider *United States v. Jackson*, 865 F.3d 946 (7th Cir. 2017), *vacated and remanded*, 138 S. Ct. 1983 (2018)). That circuit courts would reassess their prior cases stands to reason, since most circuits' cases, including the Fifth Circuit's, were premised on the understanding that a categorical approach to the substantial-risk inquiry in § 16(b) would be valid. *See, e.g.*, *Jones*, 854 F.3d at 740. By rejecting that understanding, *Dimaya* necessitated a re-examination of circuit precedent on § 924(c)(3)(B). *See United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (allowing departure from prior circuit precedent overruled "expressly or implicitly" by the Supreme Court); *cf. Castellanos v. Holder*, 652 F.3d 762, 765 (7th Cir. 2011) (allowing departure from prior circuit precedent

---

[9] The Chief Justice "express[ed] no view on whether § 924(c) can be distinguished from" § 16(b). *Id.* at 1241 (Roberts, C.J., dissenting). In noting the Chief Justice's concern about § 924(c)(3)(B), Fields leaves out this important caveat. *See* Pet'r Suppl. Br. 14 n.10, ECF No. 42.

for "compelling circumstances, or an intervening on-point Supreme Court decision").[10]

### f.    The legislative history of § 924(c)(3)(B) does not preclude a case-specific approach.

Relying mainly on a passing use of the phrase "categorical approach" in *Taylor*, 495 U.S. at 589, Fields argues that the legislative history of § 924 supports his position. Pet'r Suppl. Br. 11, ECF No. 42. The Supreme Court in *Taylor* focused on the history of ACCA's use of the term "burglary." *See* 495 U.S. at 581-90. The Court did not endorse Fields's theory that Congress in 1984 envisioned applying to § 924(c)(3)(B) the particular categorical approach developed by courts years later in other statutory contexts. *See id.* When § 924(c) was drafted, Congress had not yet enacted ACCA, the Supreme Court had not developed the categorical approach, and the Court had not yet recognized constitutional limits on judicial factfinding that influenced the categorical approach's development. *See Chambers v. United States*, 555 U.S. 122, 1333 (2009) (Alito, J., concurring in judgment); *United States v. Chapman*, 866 F.3d 129, 138 (3d Cir. 2017) (Jordan, J., concurring) (recognizing the categorical approach as a "purely judge-made doctrine").

If anything, the legislative history of § 924 supports a construction that allows courts to account for the pernicious role of firearms in violent crime. "Congress's

---

[10] For this reason, Fields's reliance on circuit cases preceding *Dimaya* is misplaced. The circuit courts are rapidly reassessing their approaches to § 924(c)(3)(B) in light of *Dimaya*. *See* Pet'r Suppl. Br. 10 & n.6. Two circuits have decided sua sponte to reconsider § 924(c)(3)(B) en banc. *See* Order, *United States v. Simms*, (continued) No. 15-4640 (4th Cir. June 15, 2018); Order, *Ovalles v. United States*, No. 17-10172 (11th Cir. May 15, 2018) (same). And a number of circuits and judges have cast doubt on the categorical approach to § 924(c)(3)(B). *See, e.g., St. Hubert*, 883 F.3d at 1334-36; *United States v. Eshetu*, 863 F.3d 946, 960-61 (D.C. Cir. 2017) (Millet, J., concurring); *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017); *Robinson*, 844 F.3d at 141-44; *United States v. Prickett*, 830 F.3d 760, 761, *overruled on reh'g*, 839 F.3d 697, 698 (8th Cir. 2016) (per curiam); *Shuti v. Lynch*, 828 F.3d 440, 449-50 (6th Cir. 2016). Panels in two circuits have adhered to their prior approaches, *see United States v. Eshetu*, No. 15-3020, 2018 WL 3673907 (D.C. Cir. Aug. 3, 2018) (per curiam); *United States v. Salas*, 889 F.3d 681, 684-86 (10th Cir. 2018), but the time to seek further review has not expired in either case.

Respondent's Supplemental Brief on *Sessions v. Dimaya*                                20

'overriding purpose' in passing Section 924(c) 'was to combat the increasing use of guns to commit federal felonies.'" *United States v. Walker*, 473 F.3d 71, 78 (3d Cir. 2007) (quoting *Simpson v. United States*, 435 U.S. 6, 10 (1978)). The provision's chief legislative sponsor "explained that the provision seeks 'to persuade the man who is tempted to commit a Federal felony to leave his gun at home.'" *Muscarello v. United States*, 524 U.S. 125, 132 (1998) (quoting 114 Cong. Rec. 22,231 (1968) (Rep. Poff)); *see also Simpson*, 435 U.S. at 13-14 (deeming Representative Poff's comments "clearly probative" and "certainly entitled to weight"). Ruling out a case-specific approach to § 924(c)(3)(B) would subvert that purpose by requiring juries and courts to ignore obviously violent conduct, proven in a contemporaneous proceeding, that the presence of a firearm made more dangerous.

### g. The government has not waived its arguments for a case-specific approach.

Although Fields is correct that the government has previously argued, in other cases, for a categorical approach to § 924(c)(3)(B), Fields is mistaken in asserting that the government's position in those pre-*Dimaya* cases resulted in a waiver of its argument for a case-specific approach in this case, *see* Pet'r Suppl. Br. 9-10 & n.4, ECF No. 42. "[W]aiver in the true sense occurs when a party intentionally relinquishes a known right." *Lewis v. Sternes*, 390 F.3d 1019, 1029 (7th Cir. 2004); *cf. Wood v. Milyard*, 566 U.S. 463, 474 (2012) (finding waiver where habeas respondent explicitly declined not to assert an affirmative defense). The government in this case never disclaimed a case-specific approach. Instead, starting with its earliest substantive briefing in this case, the government has consistently flagged the potential effect of *Dimaya* and invited further consideration after that decision. *See* Return, Mot. To Dismiss & Mot. To Stay 11-12, ECF No. 21; Opp'n to Mot. for Immediate Relief 4-8, ECF No. 29. This Court agreed and directed supplemental briefing for exactly that reason. *See* Entry Denying Mot. for Immediate Relief 1-2,

Respondent's Supplemental Brief on *Sessions v. Dimaya*                          21

ECF No. 33. In light of this Court's direction and the posture of this case, it is odd for Fields to contend that the government is now precluded from making arguments based on the effect of *Dimaya*.

Nor was the government bound to outline a case-specific approach earlier in this case to preserve the argument. A return to a writ of habeas corpus "may be amended, by leave of court, before or after being filed." 28 U.S.C. § 2243. And this Court is free to treat this briefing as a request to amend a return, if it deems such a request necessary. *See United States ex rel. Blackwell v. Franzen*, 688 F.2d 496, 502 (7th Cir. 1982) (treating motion for reconsideration as request to amend return). Even aside from formal amendments, a district court may consider arguments against granting a petition raised after the initial return. *See, e.g.*, *Lewis*, 390 F.3d at 1029 (allowing consideration of belatedly raised procedural-default defense); *Chambers v. Johnson*, 197 F.3d 732, 735 (5th Cir. 1999) (holding that a district court abused its discretion in declining to address a belatedly-raised laches defense). Accordingly, the government's arguments for a case-specific approach are properly before this Court.[11]

> **2.   Under a case-specific approach, Fields's convictions and sentences for using and carrying a firearm during escape remain valid because the lack of a case-specific jury finding in this case was harmless.**

Under the case-specific approach, a jury would have been instructed to determine whether Fields's escape, "by its nature, involve[d] a substantial risk that physical force against the person or property of another may [have] be[en] used." 18 U.S.C. § 924(c)(3)(B). The jury would have been instructed that a risk is "substantial" if it was "[o]f ample or considerable amount," as opposed to unlikely,

---

[11] None of the cases Fields cites, *see* Pet'r Suppl. Br. 9-10 n.4, supports his contention that a stance taken by the government in one case permanently forecloses the government from changing its position in future cases in response to developments in the law.

small, or negligible. *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 740 (2017) (internal quotation marks omitted). And the jury would have been instructed that "physical force" means "'force capable of causing physical pain or injury'" to a person or property. *Dimaya*, 138 S. Ct. at 1220 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).

The lack of that instruction does not necessarily entitle Fields to habeas relief, however. *See Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015). Errors in jury instructions, including a failure to instruct on an element of a crime, are subject to review for harmlessness. *See Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (per curiam); *Neder v. United States*, 527 U.S. 1, 9-10 (1999). Habeas petitioners cannot show an error was harmful "unless they can establish that it resulted in 'actual prejudice,'" a standard that requires "more than a 'reasonable possibility' that the error was harmful." *Davis*, 135 S. Ct. at 2197 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). To find actual prejudice, the habeas court "must find that the error, in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (per curiam). Errors "are often found harmless where the record is replete with overwhelming evidence of the defendant's guilt." *Brown v. Rednour*, 637 F.3d 761, 766 (7th Cir. 2011).

The trial record is replete with overwhelming evidence that Fields's escape, by its nature, involved a substantial risk of physical force. From its very inception, Fields's escape involved a substantial risk that he would use physical force against Suncerey "Shining Star" Coleman. As Fields repeatedly stated to others, the purpose of his escape was to shoot Coleman to punish her for seeing other men. *See, e.g., Fields*, 483 F.3d at 323; Tr. 10:1206-07 (testimony by cellmate that Fields became upset because he believed Coleman was unfaithful and then told Coleman he was going to "smoke her" when he got out); Tr. 10:1222-24, 1226 (testimony by

Respondent's Supplemental Brief on *Sessions v. Dimaya*                    23

cellmate that Fields became visibly angry and said he would "spray" and "bust a cap" in Coleman when he found out she was with other men); Tr. 10:1380-81 (testimony that Fields admitted to shooting Coleman because she had a baby with another man).[12] Ultimately, that substantial risk was realized: As the jury found beyond a reasonable doubt, Fields acquired a firearm and used it to murder Coleman during his escape. *See Fields*, 483 F.3d at 323-25 & n.5.

Fields's escape continued to involve a substantial risk that he would use physical force to evade or resist apprehension even after he murdered Coleman. That risk came to fruition when he used violent physical force in a carjacking by grabbing his victim by the throat and attempting to point a gun at her. *See Fields*, 483 F.3d at 324; Tr. 12:1733-36 (testimony by carjacking victim); Tr. 12:1770-71 (testimony that Fields admitted to a carjacking at gunpoint); Tr. 14:2044-45 (jury verdict necessarily rejecting Fields's only defense, that the victim had misidentified him). That risk came to fruition again when Fields, sensing that law enforcement was closing in, grabbed another woman in an effort to convince her not to leave him alone in the apartment where he was hiding. *See* Tr. 11:1538. Even though Fields ultimately surrendered, his access to a firearm until the moment he stepped out of the apartment to face law enforcement gave rise to a serious risk that he would use physical force to resist apprehension. *See* Tr. 10:1312-14, 11:1513-14, 11:1556-57.

Fields attempts to sidestep this record by observing that he obtained the means to escape by bribing a guard. *See* Pet'r Suppl. Br. 8-9, ECF No. 42. But escape in violation of 18 U.S.C. § 751(a) is a continuing offense that does not end until the defendant turns himself in or is apprehended. *United States v. Bailey*, 444 U.S. 394, 413 (1980). The relevant question, therefore, is not the particular means

---

[12] Full transcripts from Fields's trial have been filed manually with the clerk's office as an attachment to this supplemental brief. The first number following "Tr." represents the transcript volume, and the second number represents the page number in the upper right-hand corner.

Respondent's Supplemental Brief on *Sessions v. Dimaya*                                    24

by which Fields initially left the detention facility, but whether his escape, by its nature, involved a substantial risk of physical force at any time from the moment he left custody to the time law enforcement apprehended him. The record leaves no doubt that a properly instructed jury would answer this question by finding that Fields's escape involved a substantial risk that he would use physical force, as indeed he repeatedly did. Any instructional error was therefore harmless, and Fields's convictions remain valid.[13]

## Conclusion

Fields's petition should be dismissed without prejudice or, barring that, denied on the merits.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:   *s/ Zachary C. Richter*
ZACHARY C. RICHTER
Special Assistant United States Attorney
816 Congress Avenue, Suite 1000
Austin, Texas 78701
(512) 916-5858 (phone)
(512) 916-5854 (fax)
Zachary.C.Richter@usdoj.gov

*Attorneys for Respondent*

---

[13] If this Court were to uphold § 924(c)(3)(B) but determine that the jury finding was not harmless, then the appropriate relief would be a conditional order vacating the sentences on Counts 3 and 7 but allowing the government a reasonable period in which to determine whether to retry Fields. *See Herrera v. Collins*, 506 U.S. 390, 403 (1993); *Woodfox v. Cain*, 805 F.3d 639, 644-45 (5th Cir. 2015); *Webster*, 784 F.3d at 1146. If this Court were to hold § 924(c)(3)(B) unconstitutional, the appropriate result would be resentencing in the district of conviction. *See Webster*, 784 F.3d at 1146; *United States v. Smith*, 103 F.3d 531, 534 (7th Cir. 1996).

## Certificate of Service

I certify that on August 13, 2018, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification to

Jeffrey E. Ellis
jeffreyerwinellis@gmail.com

Peter J. Isajiw
pisajiw@kslaw.com

*Attorneys for Petitioner.*


 s/ Zachary C. Richter
ZACHARY C. RICHTER
Special Assistant United States Attorney

Respondent's Supplemental Brief on *Sessions v. Dimaya*                    26