UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

SHERMAN LAMONT FIELDS,  )
                        )
        Petitioner,      )
                        )
    v.                  )                    2:16-cv-00418-JPH-MJD
                        )
                        )
WARDEN, USP TERRE HAUTE,  )
                        )
        Respondent.      )


**SUPPLEMENTAL BRIEF ON THE IMPACT OF *UNITED STATES V. DAVIS*
ON PETITIONER SHERMAN FIELDS'S § 2241 PROCEEDINGS**

**Introduction**

On January 19, 2021, in proceedings pursuant to 28 U.S.C. § 2255 and

*United States v. Davis*, 139 S. Ct. 2319 (2019), and following a joint

recommendation by the parties, the United States District Court for the Western

District of Texas vacated Sherman Fields's convictions on Counts Three and Seven

and accompanying sentences, including Fields's death sentence. On April 7, 2021,

also following the parties' joint recommendation, the Western District of Texas

resentenced Fields to life imprisonment on the remaining counts. This resolution of

Fields's successive § 2255 motion moots any *Davis* claims that are pending in this

Court.[1] However, the successive § 2255 proceedings addressed only the impact of

---

[1] Specifically, it moots the claims first raised in the Amended § 2241 petition, *see*
Doc. 16, but not the claims Fields filed in his initial pro se petition, *see* Doc. 1.

1

*Davis* on Fields's convictions and sentences, not the claims Fields raised in these § 2241 proceedings that are unrelated to *Davis*.[2]

Fields's Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, alleged four claims unrelated to *Davis*: 1) That his case is "'Extraordinary' not only because the prosecution conspired to indict him for a felony, but also because the conspiracy continued throughout the trial and the appellate process with intentions of murdering Fields via lethal injection." 2) That he had "diligently pursue[d] his Right to file a Pro Se brief" but was "thwarted every step of the way to the appeals conclusion." 3) That the district judge who presided over his trial and § 2255 and a circuit court judge who presided over an appeal were biased against him. 4) That his case "exposes the debilitating flaws in the Antiterrorism and Effective Death Penalty Act, and the Death Penalty itself and proves that the safeguards put in place in Gregg v. Georgia and its progen[]y are inadequate to protect against wrongful conviction." Doc. 1 at 1-2.[3]

---

[2] *See* WDTX Doc. 409 at 4 n.1 (Parties' Joint Advisory to the court, noting that, "The parties agree that the resolution proposed in this joint advisory should result in the dismissal of claims Fields pursued in his habeas petition in Indiana that were based on the argument that § 924(c)(3)(B) is unconstitutionally vague. The parties disagree on whether the resolution proposed here would also result in dismissal of the remainder of Fields's petition, but this Court need not resolve that issue in addressing Fields's current § 2255 motion.").

[3] Fields filed his petition pro se. When the Indiana Federal Community Defenders were appointed to replace Fields's prior counsel, IFCD took on the case with the understanding that IFCD would be responsible for litigating both the *Johnson/Davis* issues and the claims Fields initially raised pro se, to avoid the hybrid representation that had become necessary because of a breakdown between Fields and prior counsel. *See* Doc. 22 (Entry for Conference of May 30, 2017); Doc. 75 (Motion for Substitution of Counsel).

## Background

On May 13, 2003, the Government filed a seven-count second superseding indictment in the Western District of Texas. *See* WDTX Doc. 57. On May 23, 2003, the Government filed notice of its intent to seek the death penalty should Fields be convicted on the death-eligible count. WDTX Doc. 63.

Scott Peterson and Robert Swanton were appointed to represent Fields. Fields filed multiple motions seeking to have new counsel appointed. *See* Trial Tr. 6.[4] Peterson had been involved in a juvenile prosecution of Fields. Trial Tr. 9. Trial counsel did not perceive Peterson's involvement in a prior prosecution as a conflict, and noted that "Mr. Peterson has certainly worked diligently on this case and that has never been an issue through the two years of representation." *Id.* Yet Fields had serious concerns about his appointed counsel. Speaking directly to the court, Fields expressed his lack of faith in his attorneys' strategy:

> Your Honor, it just that my court appointed counsel now, their actions are suspicious and I think they're working with the prosecutor instead of working for me and I've asked on several different occasions for documented evidence to no avail. Also there are sure fired ways to prove that several other witnesses are lying and my attorneys refuse to pursue it. They prepared a strategy to lessen the impact in an attempt to try to get me a life sentence when I repeatedly profess my innocence. My view is that when you're innocent, life is no better than death. I've tried to work with my attorneys. I've even tried to compromise, but I can't take no more of their being unfair and completely unreasonable. I like my attorneys both of them, but they put me in a no win situation. Their strategy guarantees me the death penalty. And if I have to go to court with them, I might as well do it myself.

Trial Tr. 13-14.

---

[4] The Government provided this Court with transcripts from the criminal trial by DVD on August 13, 2018. *See* Doc. 51.

3

The court responded:

> If other attorneys were appointed to represent you, there would be a lengthy delay, and as I told you the last time we were here, that's not going to happen. There have been questionnaires mailed out and returned to by -- I don't know.  What? 300 people or more. 400 people who have filled out these 25-page questionnaires. I've spent hours reviewing those. My staff and I have spent hours preparing for this trial, and none of that is important, but these 400 potential jurors are all planning to be here when they're told to be here, and the long and short of it is that this matter has progressed too far to stop at this point and appoint you new lawyers and start over. So your request to have new lawyers is not going to be granted. If you want to represent yourself, as I just said, you have the right to do that . . . .

Trial Tr. 14.

Presented with those options, Fields opted to represent himself during the guilt/innocence phase of his trial. Trial Tr. 15; WDTX Doc. 132.[5] During that phase

---

[5] Years after Fields's trial, the Supreme Court would clarify that "[a]utonomy to decide that the objective of the defense is to assert innocence belongs in this latter category" of decisions "reserved for the client" because "[t]hese are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018).

Moreover, in 2014, a misconduct complaint was filed against the judge who presided over Fields's trial, alleging that "he made inappropriate, unwanted physical and non, physical sexual advances to an employee of the federal judicial system." 5th Cir. Jud. Council Docket No, 05-14-90120, Order, http://www.ca5.uscourts.gov/docs/default-source/default-document-library/complaint-of-judicial-misconduct-against-u-s-district-judge-walter-s-smith-jr-(december-3-2015-order).pdf?sfvrsn=2 Dec. 3, 2015). In 2015, the Fifth Circuit reprimanded Judge Smith for his conduct. *Id.*

The Fifth Circuit additionally noted that Judge Smith failed to avoid conflicts of interest during the misconduct investigation. *Id.* ("The Special Committee having learned in the course of its investigation that Judge Smith did not follow appropriate procedures regarding recusal from cases in which his counsel in this matter was representing parties in his court, the Judicial Council further directs Judge Smith: (1) to recuse sua sponte (subject to remittal) in any future cases involving an attorney who is representing him at the time; (2) to recuse sua sponte in any cases in which his counsel in this matter has entered an appearance, filed during a three-year period following the conclusion of the representation; and (3) to follow the formal procedures mandated by 28 U.S.C. § 455(e) rather than attempting by informal means to obtain waivers of other potential conflicts of interest.").

Fields has alleged that this judge was biased against him, and ruled on Fields's request for new attorneys without investigating the nature of the conflict between Fields and his attorneys. *See* Doc. 1 at 7-9.

4

of the trial, many of the witnesses against Fields were jailhouse informants or other snitches. Representing himself, Fields's trial strategy and cross-examinations did not delve into the well-documented problems with incentivized testimony.[6] Fields was convicted on all counts.

During the penalty phase of his trial, Fields was represented by the counsel whose guilt-phase representation he had rejected because of his suspicion about their loyalty and disagreement with their aims. WDTX Docs. 182; 188. The jury returned a verdict of death, and the court imposed sentences on all counts on April 7, 2004. WDTX Docs. 207; 227; 230. The Fifth Circuit affirmed Fields's convictions and sentences. *See United States v. Fields*, 483 F.3d 313, 362 (5th Cir. 2007).

Fields sought relief in an initial § 2255 motion. WDTX Docs. 297 (1/14/2009 motion); 318 (4/12/2010 amended motion). The district court denied the § 2255 motion, and the Fifth Circuit denied a certificate of appealability (COA). *See United States v. Fields*, 761 F.3d 443, 484 (5th Cir. 2014).[7]

---

[6] *See generally* Katie Zavadski & Moiz Syed, *30 Years of Jailhouse Snitch Scandals*, ProPublica (Dec. 4, 2019), https://projects.propublica.org/graphics/jailhouse-informants-timeline; Alexandra Natapoff, *Beyond Unreliable: How Snitches Contribute to Wrongful Convictions*, 37 Golden Gate L. Rev. 107 (2006); snitching.org (website that "provides educational information about all aspects of criminal informant use, law, and policy" by Harvard Law Professor Alexandra Natapoff).

[7] The opinion denying a COA exemplifies problems with the Fifth Circuit's approach to COAs that the Supreme Court would later criticize in *Buck v. Davis*, 137 S. Ct. 759, 774 (2015).

In addition, around the time Fields's COA was filed, a misconduct complaint was filed against one of the judges who ruled on his application for a COA, who Fields has alleged was biased against him. The complaint, supported by affidavits, alleged that "Judge Jones made certain statements during her lecture [at the University of Pennsylvania Law School on February 20, 2013] that call into question her impartiality and violate the Code of Conduct for United States Judges and the Rules." The complaint described Judge Jones stating that: "'racial groups like African Americans and Hispanics are predisposed to

On October 26, 2016, while still under a sentence of death, Fields filed his pro se § 2241 petition in this Court. *See* Doc. 1. Subsequently, counsel who had represented Fields in his initial § 2255 filed an amended petition in this Court arguing that Fields was entitled to relief under *Johnson*, arguing that *Johnson*'s logic invalidated § 924(c)'s residual clause, thus invalidating Fields's convictions under § 924(c)'s residual clause. *See* Doc 16. While this § 2241 was pending, as a result of irreconcilable differences between Fields and initial § 2255 counsel, the IFCD was appointed to represent Fields. *See* Docs 75; 76. Also while this § 2241 was pending, the Supreme Court held that § 924(c)'s residual clause was void for vagueness. *See Davis*, 139 S. Ct. at 2336.

Fields then, though counsel, moved to stay these proceedings while he sought relief in the Fifth Circuit and Western District of Texas pursuant to *Davis*. *See* Doc. 90 (motion to stay proceedings); Doc. 98 (order staying proceedings). The Fifth Circuit granted Fields's motion for authorization to file a successive § 2255 motion, and the Western District of Texas vacated Fields's convictions and sentences on two

---

crime,'" and "get involved in more violent and 'heinous' crimes than people of other ethnicities"; "[d]efendants' claims of racism, innocence, arbitrariness, and violations of international law and treaties are really nothing more than 'red herrings' used by opponents of capital punishment"; "[t]he imposition of a death sentence provides a positive service to capital-case defendants because the defendants are likely to make peace with God only in the moment before their imminent execution"; and they "also t[ook] issue with various comments Judge Jones allegedly made that purportedly related to the merits of pending cases." Citing a lack of evidence, the complaint was dismissed. *See* D.C. Cir. Jud. Council Docket C.C.D. No. 14-01, https://www.ca5.uscourts.gov/docs/default-source/judicial-council-orders/resolution-of-judicial-misconduct-complaint-against-circuit-judge-edith-h-jones.pdf?sfvrsn=f513c72d_0 (Feb. 19, 2015).

counts, including his death sentence. The Western District of Texas then resentenced Fields to life on the remaining counts.

**The successive § 2255 proceedings in the Western District of Texas did not address the problems with Fields's trial, appeal, or initial § 2255, and those problems should be addressed through habeas in proceedings pursuant to § 2241.**

Fields's successive § 2255 focused exclusively on *Davis*'s impact on his convictions and sentences, and did not address the arguments Fields initially raised in this § 2241 proceeding: that he was treated unfairly by prosecutors and biased judges, and that the procedural safeguards meant to ensure fairness, accuracy, and justice in criminal cases—especially death penalty cases—had completely broken down. Although two of Fields's convictions have been vacated and Fields is no longer under a sentence of death, that does not erase that Fields's trial, appeal, and initial § 2255 proceedings were rife with problems that have never been addressed.

In its brief on the impact of *Davis*, the Government noted that "Fields has asserted various claims pro se, but none hinges on *Davis* or the validity of § 924(c)(3)(B)." Doc. 81 at 9. This is precisely the point—the § 2255 proceedings that addressed the impact of *Davis* on Fields's convictions and sentences did not address or resolve the claims Fields initially raised in his § 2241, which are unrelated to *Davis* (or *Johnson*).

In its recent statement on § 2241, the Seventh Circuit noted that, "[O]ur decisions in *Davenport*, *Garza*, and *Webster* do not 'create rigid categories delineating when the [savings clause] is available.'" *Fulks v. Watson*, -- F.4th --, 2021 WL 3027265, at *3 (7th Cir. July 19, 2021) (alteration in original) (quoting *Purkey v. United States*, 964 F.3d 603, 614 (7th Cir. 2020)). The Seventh Circuit

7

"also underscored that 'the words "inadequate" or "ineffective," taken in context, must mean something more than unsuccessful.' . . . In short, a petitioner must identify 'some kind of structural problem with section 2255 before section 2241 becomes available.'" *Fulks*, 2021 WL 3027265, at *3 (quoting *Purkey*, 964 F.3d at 615; *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015)).

Fields has alleged a number of structural problems, including that AEDPA—the statute that creates limits on the availability of relief under § 2241—is "debilitating[ly] flaw[ed]" and undermines necessary procedural safeguards to protect against not only wrongful imposition of the death penalty, but also wrongful conviction,[8] and that his proceedings were tainted by biased judges.[9] If those structural issues are going to be litigated, they must be litigated in habeas proceedings under § 2241.

---

[8] *Cf.* Emily Bazelon, *The Law That Keeps People on Death Row Despite Flawed Trials*, N.Y. Times (July 17, 2015), https://www.nytimes.com/2015/07/17/magazine/the-law-that-keeps-people-on-death-row-despite-flawed-trials.html; Radley Balko, Opinion, *It's Time to Repeal the Worst Criminal Justice Law of the Past 30 Years*, Wash. Post (Mar 3, 2021), https://www.washingtonpost.com/opinions/2021/03/03/its-time-repeal-worst-criminal-justice-law-past-30-years/.

[9] "Indeed, the Supreme Court has made clear that, when the presiding judge is not impartial, there is *a 'structural defect*[ ] in the constitution of the trial mechanism' . . . ." *Harrison v. McBride*, 428 F.3d 652, 668 (7th Cir. 2005) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)) (alteration in original) (emphasis added).

Respectfully submitted,

DATED: July 30, 2021

Indiana Federal Community Defenders, Inc.

<u>F. Italia Patti</u>
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Telephone: (317) 383-3520
Facsimile: (317) 383-3535
italia_patti@fd.org

*Attorney for Petitioner Sherman Fields*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of July, 2021, this Supplemental Brief on the Impact of *United States v. Davis* on Petitioner Sherman Fields's § 2241 Proceedings was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Counsel for Respondent may access this filing through the court's system.

F. Italia Patti

F. Italia Patti